**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JENNIFER OSSOLA, on behalf of Herself and other similarly situated Plaintiff, | ) ) ) ) |
| v. | ) ) |
| AMERICAN EXPRESS COMPANY, Defendant. | ) )     JURY TRIAL DEMAND ) |

**COMPLAINT-CLASS ACTION**

**INTRODUCTION**

1.      Plaintiff Jennifer Ossola brings this action to secure redress from unlawful credit and collection practices engaged in by Defendant, American Express Company ("Amex").

2.      The Telephone Consumer Protection Act, 47 U.S.C. §227 et seq. prohibits the use of predictive dialers to call cellular telephones. There exists an affirmative defense of "prior express consent," which is available only in circumstances where the autodialed calls concern a specific subject matter for which the call recipient provided her number to the caller.

3.      Amex called plaintiff numerous times on her cellular telephone using predictive dialing equipment and a prerecorded voice. It appears as though Amex is looking to collect a debt from some debtor other than Plaintiff. Calls have persisted even though Plaintiff repeatedly told Amex that it was calling the wrong person and requested that the calls cease.

**VENUE AND JURISDICTION**

4.      This Court has jurisdiction under 28 U.S.C. §§1331 and 1337.

5.      Venue and personal jurisdiction in this District are proper because a substantial portion of the events that led to this cause occurred within this district.

## PARTIES

6.      Plaintiff is a natural person and a resident of this District.

7.      Defendant American Express Company is a corporation organized and existing pursuant to the laws of the State of New York which is primarily engaged in the business of providing charge and credit payment card products and travel-related services worldwide.  Its registered agent is CT Corporation System, 111 Eighth Avenue, New York, NY 10011.

## FACTS

8.      Amex has called Plaintiff's cellular telephone numerous times within the four years immediately preceding the filing of this complaint. For example, Amex called Plaintiff's cell phone on at least the following dates:

   a.   April 12, 2013 at 2:14 p.m. and 2:16 p.m.; April 20, 2013 at 11:07 a.m.; May 10, 2013 at 10:02 a.m.; May 20, 2013 at 5:16 p.m.; June 14, 2013 at 10:12 a.m., 1:26 a.m. and 4:30, p.m.; June 15, 2013 at 10:05 a.m. and 1:11 p.m.; June 17, 2013 at 10:05 a.m., 1:42 p.m. and 5:44 p.m.; June 18, 2013 at 9:16 a.m., 12:17 p.m. and 4:21 p.m.; June 19, 2013 at 9:35 a.m., 1:01 p.m. and 5:12 p.m.; June 21, 2013 at 12:58 p.m. and 6:09 p.m. from a number identified by Plaintiff's caller ID as 866-663-8310;

   b.   June 26, 2013 prior to 2:30 p.m., from a number identified by Plaintiff's caller ID 201-331-6249;

9.      For some or all of the calls, Amex played an artificial or prerecorded voice message.

10.     For some of these calls, Amex's automated system left "blank" voice mails on plaintiff's cell phone voice mail.

11.     As the call recipient, it is difficult for Plaintiff to ascertain the calls' exact purpose, but nature of the incoming calls some of these calls appear to have been attempting to locate

and collect from an alleged debtor other than the Plaintiff. Some calls may have been telemarketing calls, survey calls or other types of calls. Discovery will shed light on the exact nature of the calls.

12.     Plaintiff did not consent to any of these calls.

13.     Plaintiff tried several times to call the number back to ask that the calls stop, but Amex's automated system hung up on her before she was able to do so.

14.     Sometime around the first week of June 2013, Plaintiff finally reached Amex during one of these calls.  Plaintiff told Amex that the person they were trying to reach was not Plaintiff. The Amex representative assured Plaintiff that her number would be blocked from the autodialer system.

15.     Despite this conversation, the day after having been notified that it was calling the wrong number and asked to stop calling, Amex called Plaintiff's cell phone again. Calls have continued since that time up to the filing of this complaint.

16.     Amex knows all about the TCPA's prohibitions against using an autodialer to call cell phones. It has been sued for such violations many times; including lawsuits that challenge calls to non-debtors like Plaintiff. It made the calls in spite of this knowledge.

17.     Plaintiff and the class have been substantially damaged by defendants' calls. Their privacy was improperly invaded, they were charged for the calls and they were annoyed. *Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (stating that unwanted cell phone robocall recipients are damaged because they are charged "out of pocket" cellular airtime minutes).

## COUNT I – TCPA

18.     Plaintiff incorporates all previous paragraphs.

19.     Amex violated the TCPA by placing automated calls to Plaintiff and the class members' cell phones using its predictive dialer and/or prerecorded or artificial voice without the consent of the called party.

20.     Amex has a policy, practice or procedure of placing calls to cell phones regarding the collection of an alleged debt without the prior consent of the called parties.

21.     Amex's violations were negligent, or alternatively, they were willful or knowing. 47 U.S.C. §312(f)(1).

## CLASS ALLEGATIONS

22.     Plaintiff brings this claim on behalf of a class, consisting of:

All persons who, on or after July 3, 2009, defendant called a cell phone number using predictive dialing equipment and/or a prerecorded or artificial voice where defendant did not obtain the phone number called from the called party, with respect to the subject matter of the alleged debt being collected (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call, or defendant was calling a wrong number).

23.     The class is so numerous that joinder of all members is impractical.  Upon information and belief Plaintiff alleges that there are more than 40 members of the class.

24.     There are questions of law and fact common to the class which predominate any questions affecting an individual class member. The predominant common questions include:

        a.      Whether Amex used an automatic telephone dialing system as is used in

        the TCPA and applicable FCC regulations and orders to place the calls at issue;

b.      Whether Amex used an "artificial or prerecorded voice" as used in the TCPA and applicable FCC regulations and orders, during calls to cellular telephones;

a.   Damages, including whether the violations were negligent, willful or knowing.

25.      Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

26.      A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims is small because it is not economically feasible to bring individual actions.

27.      Management of this class action is likely to present significantly fewer difficulties than those presented in many class actions, e.g. for securities fraud.

28.      Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

29.      Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.  Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would

likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against Amex for:

A.    Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

B.    An injunction against further violations;

C.    A declaration that Amex's equipment and messages are regulated by the TCPA;

D.    Costs of suit;

E.    Reasonable attorney's fees as part of a common fund, if any;

F.    Such other or further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury.

/s/  Alexander H. Burke
/s/ Larry P. Smith

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com
Co-Counsel for Plaintiffs

Larry P. Smith
David M. Marco
**SMITHMARCO**, P.C.

205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
(312) 222-9028
(888) 418-1277 (fax)
lsmith@smithmarco.com
dmarco@smithmarco.com
www.SmithMarco.com

### DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or prerecorded calls, emails, recordings, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/ Alexander H. Burke
/s/ Larry P. Smith