UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER OSSOLA AND JOETTA CALLENTINE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY, AMERICA EXPRESS CENTURION BANK, and WEST ASSET MANAGEMENT, INC.,<br><br>Defendants. | Case No. 1:13-CV-4836<br><br>**AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)**<br><br>CLASS ACTION<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jennifer Ossola and Joetta Callentine (hereinafter referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

## NATURE OF ACTION

1. Plaintiffs bring this action for damages, and other legal and equitable remedies, resulting from the illegal actions of American Express Company and American Express Centurion Bank ("American Express," the "Bank," or "Defendant"), and West Asset Management, Inc., ("West Asset Management") in negligently, knowingly, and/or willfully contacting Plaintiffs and Class Members on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA").

2. On March 11, 2005, the Federal Communications Commission ("FCC" or "Commission") issued a citation to American Express for violations of the TCPA, admonishing American Express that "[i]f, after receipt of this citation, you or your company violate the Communications Act or the Commission's rules in any manner described herein, the Commission may impose monetary forfeitures not to exceed $11,000 for each such violation or each day of a continuing violation."

3. Notwithstanding these prior violations of the TCPA and the FCC's citation, American Express has continued to violate the TCPA by contacting Plaintiffs and others similarly situated on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without their prior express consent within the meaning of the TCPA.

4. Plaintiffs bring this action for injunctive relief and statutory damages resulting from the Defendants' illegal actions.

## JURISDICTION AND VENUE

5. This matter in controversy exceeds $5,000,000, as each member of the proposed Class of tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiffs allege a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because: Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced; Defendant's contacts with this District are sufficient to subject it to

personal jurisdiction; and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

7. Plaintiff Jennifer Ossola is and at all times mentioned herein was, an individual citizen of the State of Illinois and resident of this District.

8. Plaintiff Joetta Callentine is and at all times mentioned herein was, an individual citizen of the State of Ohio, who resides in Delaware, Ohio.

9. Defendant American Express Company is a New York corporation doing business in the state of Illinois and this District.

10. Defendant American Express Centurion Bank, a wholly owned subsidiary of American Express Travel Related Services, Inc., is a Utah corporation doing business in the State of Illinois and this District.

11. Defendant West Asset Management is a corporation organized and existing pursuant to the laws of the State of Nebraska which is primarily engaged in the business of the collection of debts, including in the State of Illinois and this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

12. In 1991, Congress enacted the TCPA,[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

13. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

- 2 -

14. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

15. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

## FACTUAL ALLEGATIONS

**Plaintiff Ossola**

16. Plaintiff Ossola is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. "During the transaction that resulted in the debt owed," Plaintiff Ossola did not provide express consent to receive prerecorded calls by American Express on her cellular telephone.[6] In fact, Plaintiff Ossola did not even have an American Express account during the time period that she received calls from American Express.

---

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

[6] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

1136103.8

18. American Express repeatedly called Plaintiff Ossola's cellular telephone. Plaintiff Ossola received repeated, harassing calls at all hours of the day. Because these calls were prerecorded, Plaintiff could not request that the calls end or to voice her complaints to a real person, despite attempts to do so.

19. In early June 2013, Plaintiff Ossola finally reached American Express and informed American Express that she was not the person they were trying to call and requested that they stop calling her. The representative assured Plaintiff Ossola that her cellular telephone number would be blocked from the autodialer system.

20. Despite this conversation, the very next day, American Express called Plaintiff Ossola's cellular telephone phone. These automated phone calls continued until shortly before the commencement of this action.

21. American Express is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39).

22. All telephone contact by American Express to Plaintiff Ossola on her cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

23. The telephone number that American Express used to contact Plaintiff Ossola, with an "artificial or prerecorded voice" and/or made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

24. Plaintiff Ossola did not provide "express consent" allowing American Express to place telephone calls to Plaintiff Ossola's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

1136103.8

25. American Express's telephone calls to Plaintiff Ossola's cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

26. American Express's telephone calls to Plaintiff Ossola's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

27. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on American Express to demonstrate that Plaintiff Ossola provided express consent within the meaning of the statute.[7]

28. Plaintiff Ossola received automated phone calls to her cellular telephone on, at a minimum, the following dates and times from telephone number 866-663-8310, as identified by Plaintiff Ossola's caller identification system:

    a. April 12, 2013 at 2:14 p.m.;

    b. April 12, 2013 at 2:16 p.m.;

    c. April 20, 2013 at 11:07 a.m.;

    d. May 10, 2013 at 10:02 a.m.;

    e. May 20, 2013 at 5:16 p.m.;

    f. June 14, 2013 at 10:12 a.m.;

    g. June 14, 2013 at 1:26 a.m.;

    h. June 14, 2013 at 4:30, p.m.;

    i. June 15, 2013 at 10:05 a.m.

    j. June 15, 2013 at 1:11 p.m.;

    k. June 17, 2013 at 10:05 a.m.;

    l. June 17, 2013 at 1:42 p.m.;

    m. June 17, 2013 at 5:44 p.m.;

---

[7] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

- 5 -

      n.      June 18, 2013 at 9:16 a.m.;

      o.      June 18, 2013 at 12:17 p.m.;

      p.      June 18, 2013 at 4:21 p.m.;

      q.      June 19, 2013 at 9:35 a.m.;

      r.      June 19, 2013 at 1:01 p.m.;

      s.      June 19, 2013 at 5:12 p.m.;

      t.      June 21, 2013 at 12:58 p.m.;

      u.      June 21, 2013 at 6:09 p.m.

29. On June 26, 2013 at 2:30 p.m., Plaintiff Ossola also received at least one call from telephone number 201-331-6249.

30. When automated phone calls were placed to her cellular telephone, Plaintiff Ossola's caller identification system identified calls from telephone numbers 866-663-8310 and 201-331-6249 as coming from "American Express."

31. When 866-663-8310 or 201-331-6249 is called, a prerecorded voice states "Thank you for calling American Express."

32. Operators that come onto the line after the prerecorded voice messages identify themselves as working for "American Express."

33. Plaintiff Ossola's telephone service provider, in response to a subpoena issued in this action, indicated that telephone number 866-663-8310 is assigned to Defendant West Asset Management.

34. Plaintiff Ossola is still waiting for a response to the subpoena issued to her telephone service provider for information regarding phone calls from telephone number 201-331-6249.

35. Upon information and belief, the subpoena response is correct: 866-663-8310 is assigned to West Asset Management, which made the calls that are the subject of this action associated with that phone number.

- 6 -

36. Upon information and belief, the calls from telephone number 201-331-6249 were also made by West.

37. Plaintiff Ossola was unable to determine the purpose behind American Express's automated calls, but they appear to constitute an attempt to locate and collect monies from someone other than Plaintiff Ossola. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (unwanted cell phone robocall recipients are damaged). Some phone calls may have been telemarketing calls, survey calls or other types of calls.

**Plaintiff Callentine**

38. At all times relevant, Plaintiff Callentine was an individual residing in the State of Ohio. Plaintiff Callentine is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

39. "During the transaction that resulted in the debt owed," Plaintiff Callentine did not provide express consent to receive prerecorded calls by American Express on her cellular telephone. In fact, Plaintiff Callentine has never been an American Express account holder.

40. American Express repeatedly contacted Plaintiff Callentine on her cellular telephone. Because these calls were prerecorded, Plaintiff Callentine had no ability to request that the calls end or to voice her complaints to a real person.

41. All telephone contact by American Express to Plaintiff Callentine on her cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

42. The telephone number that American Express used to contact Plaintiff Callentine, with an "artificial or prerecorded voice" and/or made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

43. Plaintiff Callentine did not provide "express consent" allowing American Express to place telephone calls to Plaintiff Callentine's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

44. American Express's telephone calls to Plaintiff Callentine's cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

45. American Express's telephone calls to Plaintiff Callentine's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff Callentine's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

46. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on American Express to demonstrate that Plaintiff Callentine provided prior express consent within the meaning of the statute.

47. On information and belief, Plaintiff Callentine's cellular telephone number was "associated" by American Express with Plaintiff Callentine's mother's American Express account, who, upon information and belief, was an American Express account holder prior to her death in 2009.

48. On information and belief, the calls made to Plaintiff Callentine were placed by Defendant West Asset Management, and the number that appeared on Plaintiff Callentine's caller identification system – (866) 490-9096 – belonged to Defendant West Asset Management.

49. On information and belief, West Asset Management placed automated calls to Plaintiff Callentine's cellular telephone in order to collect debts to American Express allegedly owed by Plaintiff Callentine's deceased mother.

50. Plaintiff Callentine received automated calls to her cellular telephone on April 12, 2013 at 3:08 p.m. and on April 30, 2013 at 3:11 p.m.

## CLASS ACTION ALLEGATIONS

51. Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated (hereinafter referred to as "the Class").

52. Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> All persons within the United States who, on or after July 3, 2009, received a non-emergency telephone call from American Express and/or its third-party debt collectors, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

Collectively, all these persons will be referred to as "Class members." Plaintiffs represent, and are members of, the Class. Excluded from the Class are American Express and any entities in which American Express has a controlling interest, American Express's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

53. Plaintiffs propose the following Subclass definition, subject amendment as appropriate:

> All persons within the United States who, on or after July 3, 2009, received a non-emergency telephone call from American Express and/or its third-party debt collectors to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent because American Express and/or its third-party debt collectors did not obtain the called party's cellular telephone number from the called party prior to such call(s).

Plaintiffs represent, and are members of, the SubClass. Excluded from the SubClass are American Express and any entities in which American Express has a controlling interest, American Express's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful


death and/or emotional distress.

54. Plaintiffs propose the following second Subclass definition, subject amendment as appropriate:

> All persons within the United States who, on or after July 3, 2009, received a non-emergency telephone call from West Asset Management to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

Plaintiffs represent, and are members of, the second SubClass. Excluded from the second SubClass are West Asset Management and any entities in which West Asset Management has a controlling interest, American Express's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

55. Plaintiffs do not know the exact number of members in the Class or the Subclasses, but based upon the representations of Defendants as to their market share, Plaintiffs reasonably believe that Class and Subclass members number at minimum in the hundreds of thousands.

56. Plaintiffs and all members of the Class and Subclasses have been harmed by the acts of Defendants.

57. This Class Action Complaint seeks injunctive relief and money damages.

58. The joinder of all Class and Subclass members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class and Subclasses can be identified easily through records maintained by American Express.

59. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over

questions which may affect individual Class and Subclass members. Those common questions of law and fact include, but are not limited to, the following:

a. Whether non-emergency calls made to Plaintiffs, and Class members', and Subclass members' cellular telephones used an automatic telephone dialing system and/or an artificial or prerecorded voice;

b. Whether such calls were made by or on behalf of Defendants;

c. Whether Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), during the transaction that resulted in the debt owed, to make such calls;

d. Whether Defendants' conduct was knowing and/or willful;

e. Whether Defendants are liable for damages, and the amount of such damages; and

f. Whether Defendants should be enjoined from engaging in such conduct in the future.

60. As people who received numerous and repeated telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without their prior express consent within the meaning of the TCPA and Rules, Plaintiffs assert claims that are typical of each Class and Subclass member. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses, and have no interests which are antagonistic to any member of the Class and/or Subclasses.

61. Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

62. A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel Defendants to comply with the TCPA. The interest of Class and Subclass members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual

action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class and Subclass members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

63. Defendants have acted on grounds generally applicable to the Class and Subclasses, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class and Subclasses as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.**

64. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

65. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

66. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class and Subclasses are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

67. Plaintiffs and all Class and Subclass members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future. Plaintiffs, Class, and Subclass members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

**STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ*.**

68. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

69. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

70. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs, Class, and Subclass members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

71. Plaintiffs, Class, and Subclass members are also entitled to and do seek injunctive relief prohibiting American Express's violation of the TCPA in the future.

72. Plaintiffs, Class, and Subclass members are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class and Subclass members the following relief against Defendants:

A. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

B. As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seeks for themselves and each Class and Subclass member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiffs seeks for themselves and each Class and Subclass member $500.00 in statutory damages for each and every call that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiffs, the Class, and

Subclasses;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class and Subclasses, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class and Subclasses;

F. Such other relief as the Court deems just and proper.


Dated: October 21, 2013         By: _/s/ Alexander H. Burke_____
                                        Alexander H. Burke

                                BURKE LAW OFFICES, LLC
                                Alexander H. Burke
                                Email: ABurke@BurkeLawLLC.com
                                155 N. Michigan Avenue, Suite 9020
                                Chicago, IL  60601
                                Telephone:  (312) 729-5288
                                Facsimile:   (312) 729-5289

                                SMITHMARCO P.C.,
                                Larry P. Smith
                                Email: lsmith@smithmarco.com
                                David M. Marco
                                Email: dmarco@smithmarco.com
                                205 North Michigan Avenue, Suite 2940
                                Chicago, IL 60601
                                (312) 222-9028
                                (888) 418-1277(fax)

1136103.8

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice* to be filed)
Email: jselbin@lchb.com
Douglas I. Cuthbertson (*pro hac vice* to be filed)
Email: dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice* to be filed)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No. 0072925;
admitted to the N.D. Ill. general bar)
Email: mwilson@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
Timothy Sostrin
Email: Tsostrin@Keoghlaw.com
Katherine Bowen
Email: KBowen@Keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Phone: 312-265-3258
Fax: 312-726-1093

*Attorneys for Plaintiffs and the Proposed Class*

1136103.8

**DEMAND FOR JURY TRIAL**

Plaintiffs demands a trial by jury on all counts so triable.

Dated: October 21, 2013 By: /s/ Alexander H. Burke_____

1136103.8