UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER OSSOLA, JOETTA CALLENTINE, and SCOTT DOLEMBA on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMERICAN EXPRESS COMPANY, AMERICA EXPRESS CENTURION BANK, WEST ASSET MANAGEMENT, INC., and ALORICA INC.,<br><br>    Defendants. | Case No. 1:13-CV-4836<br><br>**PLAINTIFFS' MOTION TO COMPEL DEFENDANT WEST ASSET MANAGEMENT, INC., TO COMPLY WITH PLAINTIFFS' REQUESTS FOR PRODUCTION** |

**Introduction**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.2, Plaintiffs hereby move the Court for an order compelling Defendant West Asset Management, Inc. ("West") to: (1) produce emails and other electronically stored information ("ESI") in response to Plaintiffs' discovery requests; and (2) produce discovery in response to Plaintiffs' requests relating to calls made by West to members of Plaintiffs' proposed class. The Court has ordered – and American Express has produced – emails in response to nearly identical discovery requests to American Express. Discovery in a TCPA case related to calls made to the proposed class is routine and must be produced. Despite Plaintiffs' good-faith efforts to meet and confer, West has refused to produce even a single email or item of discovery related to the calls it made, necessitating this motion to compel.

I.     **Background**

On November 27, 2013, Plaintiffs served West with their First Set of Interrogatories and First Set of Requests for Production. On October 31, 2013, Plaintiffs served West with a Second Set of Interrogatories. West served its responses to Plaintiffs' Interrogatories and Requests for Production on January 6, 2014. The Request for Production responses are attached as Exhibit A. These responses contained, in significant part, objections to the discovery requests rather than full, responsive answers and production.

On April 15, 2014, West served Supplemental Answers to Plaintiffs' Interrogatories. In these supplemental responses, West provided information confirming that it made calls to the named Plaintiffs in the case "us[ing] a Guaranteed Contacts dialer and a Genesys dialer", although nothing whatsoever about calls to all of the other proposed class members. The Supplemental Interrogatory Responses are attached as Exhibit B. West also continued to refuse to provide information regarding the full scope of its automated calling program. Likewise, West refused to produce emails related to its automated call campaigns for debt collection purposes.

On May 5, 2014, West produced certain documents responsive to Plaintiffs' document production requests. These documents concerned some of West's policies and procedures related to making automated calls for debt collection purposes. West continued to refuse to produce documents and/or ESI related to calls made to members of Plaintiffs' proposed class, as well as any relevant and responsive emails.

On July 8, 2014, West filed a Motion to Dismiss for Failure to State a Claim as to Plaintiffs' Joetta Callentine and Jennifer Ossola. [Dkt. No. 134]. On July 10, 2014, West moved to compel arbitration of Plaintiff Callentine's claim. [Dkt. No. 156]. During the pendency of

West's Motion to Dismiss, West maintained that it was not required to respond to Plaintiffs' discovery requests, as it could conceivably be dismissed from the case as a party.

On July 25, 2014, Plaintiffs moved to compel from Defendant American Express the production of emails and other communications between American Express and parties that may have made calls on behalf of American Express (including, explicitly, West). [Dkt. No. 161]. On July 29, 2014, Magistrate Judge Cole granted Plaintiffs' Motion to Compel. [Dkt. No. 166]. Plaintiffs and American Express negotiated an ESI protocol with agreed-upon search terms based upon the Model Standing Order from the Seventh Circuit Electronic Discovery Pilot Program.[1] American Express has made a rolling production of responsive emails and other ESI from a limited number of agreed-upon custodians. West's counsel participated in all Court hearings before Magistrate Judge Cole regarding Plaintiffs motions to compel and American Express's efforts to comply with the Court's orders.

In conjunction with this Court-ordered production of emails and other ESI, Plaintiffs sought from West similar communications between American Express and West, to the extent West was able to supplement or complete the record of the communications between American Express and West. Plaintiffs provided to West a proposed ESI protocol that was nearly identical to the one with American Express.

On February 6, 2015, the Court denied West's Motion to Compel Arbitration. [Dkt. No. 237]. On February 18, 2015, the Court denied West's Motion to Dismiss in its entirety. [Dkt. No. 244].

---

[1] *See* http://www.discoverypilot.com/sites/default/files/StandingOrde8_10.pdf.

As such, West no longer has any legitimate objection to producing relevant discovery, including class wide call data and relevant emails. For this reason, Plaintiffs hereby request that the Court order West to produce all of this necessary discovery.

## II. **Legal Standard**

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Federal Rules of Civil Procedure broadened the scope of discovery to include "any matter, not privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The concept of relevance in the context of Fed. R. Civ. P. 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process." *Yahnke v. County of Kane*, No. 12-cv-5151, 2013 U.S. Dist. LEXIS 121573, at *4 (N.D. Ill. Aug. 27, 2013); *see also Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009).

When ruling on a motion to compel, a district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case. *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). The party objecting to the request bears the burden of showing that a particular discovery request is improper. Fed. R. Civ. P. 34(b); *see also, e.g.*, *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of

discovery."). Lack of such a foundation is grounds for dismissing the objections and ordering production. *Id.*

**III.   Discussion**

    **A.  Production of ESI from West is Appropriate.**

This case challenges West's dialer and dialing practices. Plaintiff seeks electronic discovery concerning West's dialers, as they pertain to calls made on behalf of Amex. This includes all of Plaintiffs' document requests, and in particular, requests 3-14 and 16-22. Production of relevant emails is routinely ordered in this District and elsewhere. *See, e.g.*, *Howard v. Securitas Sec. Servs. USA, Inc.*, No. 08-cv-2746, 2011 U.S. Dist. LEXIS 42089, at *3 (N.D. Ill. Apr. 19, 2011) (ordering that "Boolean search of the [defendant's] email accounts would be performed"). Consistent with those holdings, Judge James F. Holderman, founding chair of the Seventh Circuit Electronic Discovery Pilot Program, has authored a Report detailing the efforts of judges in this Circuit "to develop, implement, evaluate, and improve pretrial litigation procedures that would provide fairness and justice to all parties while reducing the cost and burden of electronic discovery consistent with Rule 1 of the Federal Rules of Civil Procedure."[2] The Model Discovery Plan in that Report calls for production of email and other unstructured data in all cases, large and small.

In class action litigation, production of all relevant emails is the norm – even where, unlike here, the defendant has already produced a substantial amount of ESI. For example, in *In re Seroquel Prods. Liab. Litig.*, No. 06-MDL-1769, 2008 WL 508391 (M.D. Fla. Feb. 21, 2008), the Plaintiffs requested that the Defendant run keyword searches and produce documents from certain persons. *Id.* at *2. The Defendant objected, claiming that it had already produced documents from

---

[2] *See* http://www.discoverypilot.com/sites/default/files/phase_three_interim_report.pdf.

over 100 persons, that production may be duplicative of prior production, and that additional searches would be unduly burdensome. *Id.* The Court rejected the defendant's arguments and granted a motion to compel additional searches. The court reasoned that, even if some of the information were cumulative, "[g]iven the scope of this litigation, requiring a limited number (even 100) of known individuals to search for significant information is not an undue burden." *Id.* Production of dialer-related information is particularly important in this case, because West claims that it did not use an ATDS to make the calls to Plaintiffs, and that its violations were not willful. West is, of course, in exclusive possession, custody, and control of the details concerning the dialers it used to make calls, as well as its state of mind. The only way for Plaintiffs to probe these issues is through a document production.

Here, despite the clear instruction from Judge Cole that such email production is appropriate, West has not produced even a single email to date. The requested production is consistent with the Court-ordered production from American Express in response to nearly identical discovery requests, and will complete the picture regarding the relationship between American Express and West.

Rather than meeting their burden, West relies exclusively on boilerplate and vague objections to Plaintiffs' requests based on some unspecified "burden." This is precisely the type of abused and unproductive behavior the Court frowns upon. *See Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) ("This baseless, often abused litany [objections to requests as overbroad or unduly burdensome], which is often combined with the objection that the evidence is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, is an insufficient basis to refuse to comply with discovery. They are tantamount to not making any objection at all."); *United Auto. Ins. v. Veluchamy*, No. 09-cv-5487, 2010 U.S. Dist. LEXIS

1219350.1


19432, at *5 (N.D. Ill. Mar. 4, 2010) (finding that "boilerplate responses" are waived as improper).

Moreover, West's unfounded claims of burden are belied by the fact that American Express readily produced emails and ESI in response to nearly identical discovery requests. *Cf. Heraeus Kulzer, GmbH*, 633 F.3d at 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery."). West's claim that Plaintiffs' requests would require West to produce "millions of documents" from "[t]housands of different email accounts" is ridiculous. To the contrary, as West knows, Plaintiffs' protocol with American Express listed only a limited number of agreed-upon custodians who produced emails. In response to Plaintiffs' repeated requests, West has simply refused to meet and confer to determine an appropriate list of West custodians.

In addition, Plaintiffs have offered to include a claw back agreement wherein they would return any privileged e-mails in the unlikely event any such e-mails where inadvertently produced. Thus, any burden West may incur for reviewing the e-mails at issue is dramatically lessened. Therefore, Plaintiffs respectfully request that the Court order West to produce emails and any other ESI that is responsive to Plaintiffs' discovery requests.

**B. Production of Calling Data Is Appropriate.**

Plaintiffs seek to compel West to produce information regarding the calls it made on behalf of American Express. More specifically:

- **Interrogatory No. 8:** IDENTIFY all PERSONS to whom YOU, or a THIRD party which YOU have retained, placed an AUTOMATED CALL to a cellular telephone at any time on or after July 3, 2009 by listing the names, cellular telephone numbers, and addresses of such PERSONS.

- **Interrogatory No. 9:** For all PERSONS identified in response to Interrogatory No. 8, IDENTIFY each PERSON for whom YOU obtained his or her cellular telephone.

- **Request for Production No. 12:** All DOCUMENTS and/or ESI identifying or listing the names of PERSONS to whom WEST, or any other THIRD PARTY retained by West, placed an AUTOMATED CALLS to a cellular telephone at any time on or after July 3, 2009.

- **Request for Production No. 13:** All DOCUMENTS and/or ESI that contain any evidence or indication that any proposed class member provided his or her cellular telephone number to YOU or American Express in connection with the original transaction, or otherwise consented to receiving AUTOMATED CALLS on his or her cellular telephone.

- **Request for Production No 14:** All DOCUMENTS and/or ESI relating to and including any and all reports for each outbound dial list to persons that YOU or any THIRD PARTY retained by YOU called or attempted to call, including those outbound dial list generated by any autodialer and/or predictive dialer campaign that YOU engaged in since July 3, 2009. Do not modify or alter the list; each call and attempted call made must be included in these lists.

These requests go to the very heart of the case.

1. <u>Plaintiffs are Entitled to the List of Persons Called by West.</u>

Requesting a list of persons called via automated means is the standard practice in TCPA class litigation. "[A] list of phone numbers may very well bear direct relevance to a violation of the TCPA concerning the dialing of the very phone numbers listed." *Knutson v. Schwan's Home*

*Serv., Inc.*, Civil No. 3:12–cv–0964–GPC–DHB, 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013) (ordering the production of a "dial list" consisting of everyone in the plaintiff's proposed class); *Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500, 503 (N.D. Ill. 2009) (granting plaintiff's pre-certification motion to compel discovery aimed at obtaining a list of calls, identifying all persons to whom defendant made automated calls, and whether such persons provided their cell phone numbers on his or her credit application).

In addition to the standard (and improper) boilerplate objections to this discovery, West asserts that such production is premature and only appropriate after a class is certified. West's offers no TCPA case supporting this remarkable proposition and Plaintiffs are not aware of any. To the contrary, courts frequently order such discovery pre-certification. *See Donnelly*, 263 F.R.D. at 503. In general, discovery is relevant if it speaks "to issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." *Knutson*, 2013 WL 3746118, at *3 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)) (internal quotation marks omitted).

Often, defendants in TCPA class cases assert that plaintiffs cannot meet their burden proving these very elements. For example, in a recent TCPA class case, the defendant argued, and the Court agreed, that plaintiff had not established that the members of the proposed class were sufficiently "ascertainable." *Balschmiter v. TD Auto Finance, LLC,* ___ F.R.D. __, 2014 WL 6611008, at **15-17 (E.D. Wisc. Nov. 20, 2014), *petition to appeal pending,* No. 14-8031 (7th Cir.). To establish ascertainability, under the *Balschmiter* Court's reading, Plaintiffs must demonstrate that they can "identify[ ] and provid[e] notice to the class members as individuals . . . ." *Id.* at *15. Such a showing would be impossible for any plaintiff without discovery from the

defendant regarding the people the defendant called. Defendants in TCPA cases, such as West, cannot have it both ways—either they must provide discovery that allows the plaintiffs to attempt to meet their burden on class certification, or they must stipulate to the elements of class certification; Plaintiffs believe they are safe to presume that the latter will not be forthcoming. *See* Exhibit C, *Gilman et al. v. ER Solutions*, Case No. C11-0806-JCC, Slip Order, Dkt. No. 67, at 4 (W.D.Wa. Feb. 3, 2012) ("[c]lass certification cannot fairly be evaluated without information on whether others received automated calls to which they did not expressly consent, and Plaintiffs have no way to gather this information aside from the discovery requests [defendant] opposes").

The list of persons called by West goes directly to several of the elements necessary to certify a class. First, as discussed above, at least on some courts' readings, the class list is needed to determine what class would be ascertainable. Without a clear picture of the scope of West's automated call program, Plaintiffs will not have sufficient information regarding whether their current proposed definition will satisfy the ascertainability standard, or if some adjustment must be made to the class definition.

Similarly, Plaintiffs need a class list in order to show numerosity. The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Given the size of West's business and the anecdotal evidence already in Plaintiffs' knowledge that would seem to indicate that West has engaged in an extensive program of improperly calling customers on their cell phones, the precise scope of those activities can only be determined via a review of West's records. Only West currently knows how many people it called on behalf of American Express and how many of those calls were

made to cell phones. Plaintiffs are entitled to this information well in advance of when it must brief its motion for class certification.

Additionally, the class list is useful in allowing Plaintiff to address both commonality and predominance, particularly when combined with information on West's likely "prior express consent" defense discussed in Section 2, *infra.* The commonality requirement is met if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), which the Seventh Circuit has explained occurs "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members . . . ." *Suchanek v. Strum Foods, Inc.,* 764 F.3d 750, 756 (7th Cir. 2014). The predominance analysis under Rule 23(b)(3) "requires the court to 'find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Suchanek,* 764 F.3d at 759 (quoting the Rule). Establishing both of these factors would be aided by a complete picture of the nature and scope of the calling program undertaken by West on behalf of American Express, a picture which can only be obtained if West is made to comply with its discovery obligations.

Finally, beyond the requirements of Rule 23 itself, some potential class members may have valuable testimony that could bear on the issues in the case, or could otherwise assist Plaintiff. *See Sanbrook v. Office Depot,* No. C 07–5938 RMW (PVT), 2009 WL 840019, at *1 (N.D. Cal. Mar. 30, 2009) ("Named Plaintiff is entitled to discover this contact information because the customers who purchased repair plans are percipient witnesses of, at a minimum, what representations Defendant made regarding those plans."). Fairness requires Plaintiffs to have at least as ready access to such persons as West.

2. Plaintiffs are Entitled to Evidence Regarding West's Prior Express Consent Defenses.

Plaintiffs also seek information related to the factual basis of West's assertion of the defense of "prior express consent." Alleged "prior express consent" is frequently raised by defendants in TCPA actions, and thus Plaintiffs seek discovery on it in order to flesh it out.

As a preliminary matter, prior express consent is an affirmative defense to a TCPA claim. *Thrasher-Lyon v. Ill. Farmers Ins. Co.,* 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012); 23 FCC Rcd 559, 565 (Dec. 28, 2007). Thus, the burden is on West to put forward evidence in support of the prior express consent defense. To the extent West seeks to introduce the defense in the context of its opposition to Plaintiffs' class certification motion, it must do so at that time. But of course, allowing West to keep secret whatever information it may have regarding its supposed evidence of prior express consent until that time would amount to unfair surprise and put Plaintiffs at a severe disadvantage. Simply put, if West is going to rely on evidence of prior express consent, Plaintiffs are entitled to see (and test, in deposition and otherwise) that evidence *now*, not after West has used it in its class certification opposition.[3]

Moreover, discovery about prior express consent is frequently ordered in TCPA cases. In *Martin v. Bureau of Collection Recovery*, the court held unambiguously that discovery about consent defenses was appropriate, pre-certification. No. 10 C 7725, 2011 WL 2311869 (N.D. Ill. June 13, 2011). "[T]his discovery is not only relevant to the merits of BCR's affirmative defense, but it will demonstrate that each class member is like Plaintiff as to this defense. As such, the Court rejects BCR's argument that this discovery should be postponed until after the disposition of the class certification motion." 2011 WL 2311869, at 5. Thus, West must turn over this information to Plaintiff. *See also Donnelly*, 263 F.R.D. at 504 ("NCO must produce the requested class-wide documents and information relating to its prior express consent defense.

---

[3] Unless, of course, West is willing to stipulate that it will not make any argument with respect to "prior express consent" in opposing class certification. Plaintiffs do not expect West to make any such stipulation.

The court understands that it will take NCO time and effort to produce this material, but the likely benefit outweighs the burden and expense.")

## **Conclusion**

In light of the foregoing, Plaintiffs request that the Court compel West to produce the requested material.

Dated: February 24, 2015　　　　By:　　*/s/ Daniel M. Hutchinson*
　　　　　　　　　　　　　　　　　　　Daniel M. Hutchinson

　　　　　　　　　　　　　　　　LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
　　　　　　　　　　　　　　　　Daniel M. Hutchinson (*pro hac vice*; ; admitted to the N.D. Ill. general bar)
　　　　　　　　　　　　　　　　Email: dhutchinson@lchb.com
　　　　　　　　　　　　　　　　275 Battery Street, 29th Floor
　　　　　　　　　　　　　　　　San Francisco, CA 94111-3339
　　　　　　　　　　　　　　　　Telephone: (415) 956-1000
　　　　　　　　　　　　　　　　Facsimile: (415) 956-1008

　　　　　　　　　　　　　　　　LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
　　　　　　　　　　　　　　　　Jonathan D. Selbin (*pro hac vice*; admitted to the N.D. Ill. general bar)
　　　　　　　　　　　　　　　　Email: jselbin@lchb.com
　　　　　　　　　　　　　　　　Douglas I. Cuthbertson (*pro hac vice*; admitted to the N.D. Ill. general bar)
　　　　　　　　　　　　　　　　Email: dcuthbertson@lchb.com
　　　　　　　　　　　　　　　　250 Hudson Street, 8th Floor
　　　　　　　　　　　　　　　　New York, NY 10013
　　　　　　　　　　　　　　　　Telephone: (212) 355-9500
　　　　　　　　　　　　　　　　Facsimile: (212) 355-9592

BURKE LAW OFFICES, LLC
Alexander H. Burke
Email: ABurke@BurkeLawLLC.com
155 N. Michigan Avenue, Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

SMITHMARCO P.C.,
Larry P. Smith
Email: lsmith@smithmarco.com
David M. Marco
Email: dmarco@smithmarco.com
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
Telephone: (312) 222-9028
Facsimile: (888) 418-1277

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No. 0072925; admitted to the N.D. Ill. general bar)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio State Bar No. 0091162; admitted to the N.D. Ill. general bar)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
Timothy Sostrin
Email: Tsostrin@Keoghlaw.com
Katherine Bowen
Email: KBowen@Keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Phone: 312-265-3258
Fax: 312-726-1093

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

      I hereby certify that on **February 24, 2015,** I electronically filed the foregoing **PLAINTIFFS' MOTION TO COMPEL DEFENDANT WEST ASSET MANAGEMENT, INC., TO COMPLY WITH PLAINTIFFS' REQUESTS FOR PRODUCTION** and documents referenced herein with the Clerk of the U.S. District Court, using the CM/ECF system reflecting service to be served upon all parties of record.

                                                  */s/ Daniel M. Hutchinson*