**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER OSSOLA, JOETTA CALLENTINE, AND SCOTT DOLEMBA, on behalf of themselves and all others similarly situated, ) ) ) ) ) ) Plaintiffs, ) ) v. ) ) AMERICAN EXPRESS COMPANY, ) AMERICAN EXPRESS CENTURION ) BANK, and WEST ASSET ) MANAGEMENT, INC., ) ) Defendants. ) ) | No. 13 C 4836<br><br>Judge Lee<br>Magistrate Judge Cole |

## MEMORANDUM OPINION AND ORDER

This is a case about allegedly improper telephone calls to collect claimed debts and for telemarketing purposes. On June 3, 2015, plaintiffs, Jennifer Ossola ("Ossola"), Joetta Callentine ("Callentine"), and Scott Dolemba ("Dolemba")(collectively, "Plaintiffs"), filed a motion to compel defendants, American Express Company and American Express Centurion Bank (collectively, "Amex"), to comply with Plaintiffs' requests for production. (Dkt. No. 290). The instant motion to compel is Plaintiffs' third since February 2014. (*See* Dkt. Nos. 85, 161). Like its predecessors, this one concerns data related to Amex's own dialing practices, rather than those of Amex's third party vendors, one of which is West Asset Management.

Although the three class representatives allege they were called by one of Amex's third party vendors, not Amex itself, they (and class counsel) nevertheless seek to represent a class that includes individuals called directly by Amex. The rub is that there is no present plaintiff who fits the bill.

Lacking a suitable representative for such a class, Plaintiffs and class counsel essentially want discovery to help them find one. But fishing for a client is not the purpose of discovery; discovery is for uncovering information relevant to an existing claim or defense. *See* Rule 26(b)(1), Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

Although the entire record in this case need not be repeated, some discussion of the case's history – and the core discovery dispute – is essential.

## I.
## THE PLAINTIFFS' FACTUAL ALLEGATIONS

Ms. Ossola filed her initial Complaint ("Complaint") against Amex on July 3, 2013. (Dkt. No. 1). She alleged that between April and June 2013, Amex repeatedly called her cell phone with a recorded message, seeking either to collect a purported debt or to solicit her as a customer—she was not sure of the precise purpose, but either is sufficient to violate the TCPA. (*Id.* ¶¶ 8-11). She also sought to bring a similar TCPA claim on behalf of the following class:

> All persons who, on or after July 3, 2009, defendant called a cell phone number using predictive dialing equipment and/or a prerecorded or artificial voice where defendant did not obtain the phone number called from the called party, with respect to the subject matter of the alleged debt being collected (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call, or defendant was calling a wrong number).

(*Id.* ¶ 22.)

On September 27, 2013, Amex filed a motion to reassign another case, *Dolemba* v. *West Asset Management and American Express Company*, No. 13 C 5278 (N.D. Ill.), based on relatedness. (Dkt. No. 30). Mr. Dolemba filed a Complaint on July 24, 2013 alleging, like Ms. Ossola, that he received an improper phone call from West in an apparent attempt to collect a debt on behalf of

Amex. (*Id.* ¶ 1). Judge Lee granted Amex's motion to reassign the case and requested that the parties be prepared to address the appropriateness of consolidating the two cases at a status hearing set for November 20, 2013. (Dkt. No. 32.)

On October 25, 2013, Ms. Ossola filed an Amended Complaint ("Amended Complaint") (Dkt. No. 34 ("Am. Compl.")) to develop her factual allegations and add Ms. Callentine—but not yet Mr. Dolemba—as a co-plaintiff. Ms. Ossola again alleged that she was repeatedly harassed by phone calls from two separate phone numbers, both of which appeared on her caller ID system as belonging to Amex. (*Id.* ¶¶ 28-30). The operators on the end of each phone call likewise identified themselves as working for Amex. (*Id.* ¶ 32). When Ms. Ossola issued subpoenas to confirm the identity of the callers, however, she discovered that at least one of the harassing phone numbers belonged to defendant, West Asset Management ("West"). (*Id.* ¶ 33).

Although Ms. Ossola had not confirmed the owner of the second number by the time she filed her Amended Complaint, she believed West to be the owner of the second phone number as well. (*Id.* ¶¶ 34, 36). Ms. Callentine's allegations were identical to Ms. Ossola's, except she only received two allegedly improper phone calls—as opposed to Ms. Ossola's "minimum" of 21—and Ms. Callentine believed the callers to be looking for her mother. (*Id.* ¶¶ 47, 50). Like Ms. Ossola, Ms. Callentine alleged that West was the entity that actually "placed" the calls, albeit on behalf of Amex. (*Id.* ¶ 49.)

Notwithstanding the fact that the Amended Complaint alleged that West, not Amex, actually placed all of the phone calls, Ms. Ossola and Ms. Callentine sought to represent a class of individuals who were called either by Amex or by West. Specifically, Ms. Ossloa and Ms. Callentine proposed the following class definition:

3

> All persons within the United States who, on or after July 3, 2009, received a non-emergency telephone call from American Express and/or its third-party debt collectors, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

(Am. Compl. ¶ 52). Ms. Ossola and Ms. Callentine also proposed the following subclass, in which both plaintiffs claimed membership, for individuals who received calls specifically from West:

> All persons within the United States who, on or after July 3, 2009, received a non-emergency telephone call from West Asset Management to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

(*Id.* ¶ 54). The Amended Complaint did not propose a similar subclass for the other side of the "and/or" in the larger proposed class, *i.e.*, individuals called directly by Amex.[1]

On November 21, 2013, Amex filed a motion to reassign a second case, *Ammons* v. *NCO Financial Systems Inc. and American Express Company*, 13 C6731 (N.D. Ill.), again based on relatedness. (Dkt. No. 64). Ammons' Complaint alleged that he received a call to his cell phone, made by a predictive dialer, and for the purpose of collecting a debt on behalf of Amex. (*Id.* ¶ 1). But Ammons alleged that he was called by NCO Financial Systems ("NCO")—not West. (*Id.*). At the hearing on Amex's motion, counsel for NCO (also acting as counsel for West) described NCO as one of "Amex's [debt collection] vendors," "similar to West," and as one of West's competitors. (Dkt. No. 123 at 3:17-23).

Ammons' claim likewise fit within Ossola and Callentine's proposed class of individuals called by "American Express and/or its third-party debt collectors." (Am. Compl. ¶ 52). Judge Lee,

---

[1] The Amended Complaint did propose a second subclass to address purported distinctions in the "consent" provided (or not provided) by the prospective class members. Those distinctions are irrelevant to the pending motion.

4

however, was no doubt aware that neither Ms. Ossloa nor Ms. Callentine claimed to have received calls from Amex or any third-party debt collector other than West, notwithstanding their much broader proposed class. In discussing Amex's motion to reassign, he stated, "while the claims are similar and one of the defendants is similar, the involvement of NCO Financial Systems versus West I think does and may potentially raise other issues that are unique to those cases." (Dkt. No. 123 at 4:18-21). And on that basis, Judge Lee denied the motion to reassign Ammons' case against NCO and Amex. (*Id.* at 4:21-22; Dkt. No. 66.)

On January 24, 2014, Plaintiffs filed their Consolidated Complaint ("Consolidated Complaint") (Dkt. No. 71 ("Cons. Compl.")), uniting the Ossola, Callentine, and Dolemba claims against Amex and West. Ms. Ossloa's initial allegations assert that Amex actually called her cell phone, (Cons. Compl. ¶¶ 20, 24), but she eventually acknowledged in the subsequent paragraphs that her subpoenas revealed West to be the actual caller (*id.* ¶¶ 36-37). Ms. Callentine similarly claimed, at the outset, to have been "repeatedly contacted" by Amex. (*Id.* ¶ 41). But she alleged several paragraphs later that the number she received the "repeated" (two) calls from belonged to West, not Amex, and that West, not Amex, "placed" the calls. (*Id.* ¶¶ 49-50). Mr. Dolemba, unlike Ms. Ossloa and Ms. Callentine, saved the court from having to parse apparently contradictory allegations; he simply alleged that West called him on behalf of Amex. (*Id.* ¶¶ 52-54.)

On June 10, 2014, Plaintiffs filed a "first amended consolidated class action complaint," ("Amended Consolidated Complaint") (Dkt. No. 126 ("Am. Cons. Compl.")), which remains the operative Complaint in this case. The Amended Consolidated Complaint contains additional allegations concerning telemarketing calls made to Ms. Callentine by another of Amex's third party vendors, Alorica. The allegations relating to debt-collection calls, which are the subject of the instant

5

motion, are identical to those asserted in Plaintiffs' Consolidated Complaint.

## II.
## THE PARTIES' RELEVANT MOTION PRACTICE

On February 19, 2014, after the parties failed to agree on the proper scope of discovery, Plaintiffs moved to compel the production of "only a small subset of documents." (Dkt. No. 85 at 5). The motion sought categories of documents related to Amex's contracts with third party calling vendors, Amex's policies governing its own dialing practices, and—as relevant to the instant dispute—records of calls Amex itself made to Plaintiffs. (*Id.* at 10 (requesting "all records of telephone calls [Amex] made to Plaintiffs")).

At the hearing, the parties agreed that their dispute with regard to Amex's own dialing records to Plaintiffs was moot in light of Amex's "formal[ ]" denial that it had ever directly called any of Plaintiffs.[2] (*See* Dkt. No. 95-2 at 7:21-8:14, 13:2-3). Some discovery was allowed into Amex's contracts with third party vendors and its own internal policies, a decision Amex unsuccessfully appealed to Judge Lee. (*See* Dkt. Nos. 95, 97, 110).

On July 8, 2014, Amex filed intertwined motions for partial summary judgment and to strike Plaintiffs' class allegations. (Dkt. Nos. 140, 142). Amex's motion for partial summary judgment sought either (i) a ruling that Amex was not directly liable to Plaintiffs because the undisputed facts demonstrated that Plaintiffs were called only by West, or (ii) a factual finding pursuant to Rule 56(g) that Amex did not make any of the phone calls at issue. (Dkt. No. 144). Amex's motion to strike contended that Plaintiffs received only "wrong-party" calls and therefore could not represent a class

---

[2] Amex stated at the hearing that it had "informally" informed class counsel on numerous occasions that it had no record of ever calling the class representatives. (Dkt. No. 95-2 at 8:7-10).

that included Amex customers. (Dkt. No. 141 at 2). Amex also asserted that Plaintiffs, who alleged that they were called by Amex's third-party vendors, could not represent persons called by Amex, itself. (*Id.*)

On February 20, 2015, Judge Lee denied both motions. (Dkt. Nos. 247, 249). With regard to the debt-collection class, Judge Lee denied Amex's motion for partial summary judgment, not because Plaintiffs allege they were called by Amex itself (they do not), but because "whether [Amex] itself actually placed the calls at issue is irrelevant; '[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.'" (Dkt. No. 247 at 2 (quoting *Jamison* v. *First Credit Servs., Inc.*, 290 F.R.D. 92, 99 (N.D. Ill. 2013))(additional citations omitted)). Judge Lee's Order did not address Amex's "alternative" request for a Rule 56(g) finding that Amex itself did not make any of the phone calls at issue, at least with regard to the debt-collection class.

On June 3, 2015, following more motion practice not relevant to the current dispute and yet another discovery impasse, Plaintiffs filed the third motion to compel, seeking Amex's internal call records and related data.[3] (Dkt. No. 290). Amex filed its response on July 6, 2015, (Dkt. No. 295), arguing that the information sought is both irrelevant and overly burdensome to produce. Plaintiffs replied on July 20, 2015 and the motion is now ripe for ruling.

## III.
## THE STANDARDS FOR DECISION

The federal discovery rules have an expansive reach in order to assist in the preparation for

---

[3] Plaintiffs filed a second motion to compel on July 25, 2014, while Amex's potentially dispositive motions were pending before Judge Lee. (Dkt. No. 161.) This court largely declined to rule on that motion because Judge Lee's rulings had the potential to moot the issues presented in the motion. (*See* Dkt. No. 166.)

trial and settlement of litigated disputes. *Bond* v. *Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). But they are not without limits, and relevancy is perhaps the most important of those limits. *See Herbert v. Lando,* 441 U.S. 153 (1979); *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 (1978); *Hallett v. Morgan,* 296 F.3d 732, 751 (9th Cir.2002); *Uppal v. Rosalind Franklin University of Medicine and Science,* 2015 WL 5026228 (N.D.Ill. 2015). The 2000 Amendments to Rule 26(b)(1) narrowed the definition of relevancy so that today parties may obtain discovery regarding any non-privileged matter that is "relevant to any party's claim or defense ...." "The rule change signal[ed] to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings." Fed. R. Civ.P. 26(b)(1), Advisory Committee Notes to 2000 Amendments (West 2002). Relevant information need not be admissible at the trial, if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

In the context of motions to compel, the court "may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c),...may fashion a ruling appropriate for the circumstances of the case." *Gile* v. *United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). As with all discovery matters, district courts have broad discretion in deciding motions to compel and deciding relevancy questions. *See Peals* v. *Terre Haute Police Dept.*, 535 F.2d 621, 629 (7th Cir. 2008); *Ryan v. Hatfield,* 578 F.2d 275, 276 (10th Cir. 1978). Exercise of that discretion is reviewable for abuse, which occurs only "when no reasonable person could take the view of the district court." *United States v. Re,* 401 F.3d 828, 832 (7th Cir.2005). *Accord, Paske v. Fitzgerald,* 785 F.3d 977, 983 (5th Cir. 2015).

## IV.
## ANALYSIS

Our initial task is to determine what documents and data Plaintiffs seek to compel Amex to produce. Plaintiffs' motion requests "merely" that Amex identify Amex customers and non-customers in its Call Related Data, which Plaintiffs define as Amex's "call logs, dialer notes, customer databases, and other relevant call data sources." (Dkt. No. 290 at 1-2). Since Plaintiffs do not yet have the Call Related Data, it is assumed they want that too. Plaintiffs apparently believe this court has already twice ordered Amex to produce the Call Related Data, but, as Amex notes in its response, Plaintiffs do not identify the specific discovery requests defining Call Related Data or the court orders requiring its production.[4] A more precise definition of the information sought might be found by untangling the extensive email correspondence attached to Plaintiffs' motion. (*See* Dkt. No. 291). But to do so would frustrate the purpose of briefing and, in this case, is ultimately unnecessary. It is apparent from Amex's response and Plaintiffs' reply that the Call Related Data Plaintiffs seek encompass any and all data or records related to calls Amex itself made to non-customers for debt-collection purposes.[5]

---

[4] The closest match for the Call Related Data appears to be Request No. 2 from Plaintiffs' first motion to compel, (Dkt. No. 85 at 10), which the parties agreed was moot in light of Amex's promise to represent "formally" that it had never called the Plaintiffs. Plaintiffs also point to this court's order compelling West to produce similar information, (Dkt. No. 297 at 3), an argument which obscures the crux of this dispute because Plaintiffs actually allege West called them.

[5] The opening paragraph of Plaintiffs' motion indicates that the instant request pertains to the putative debt-collection class, not the telemarketing class. If Plaintiffs seek Call Related Data in connection with their telemarketing allegations, they should file a separate motion.

## A.

## Plaintiffs' Allegations Concerning Amex's Own Dialing Practices

Amex's chief argument, the same one it has asserted throughout this case and most recently in its unsuccessful motion for partial summary judgment, is that Amex, itself, did not make any of the calls at issue, and its own dialing records are therefore irrelevant. However, the relevance analysis cannot be explored before testing Amex's assertion that it did not make any calls itself. Normally, when a plaintiff asserts factual allegations in the Complaint, discovery must be permitted so that the parties can prove or disprove the allegations. The problem here is that Plaintiffs, in their numerous Complaints and briefs, have obscured their contentions relating to Amex's dialing conduct in a series of, at least seemingly, contradictory allegations.

Ms. Ossola initially alleged that Amex "repeatedly called [her] cellular telephone," (Am. Cons. Compl. ¶ 30), only to later claim the two phone numbers associated with the 23 harassing phone calls belong to West (*id.* ¶¶ 45-46); Ms. Callentine likewise alleges first that "[Amex] repeatedly contacted [her] on her cellular telephone," (*id.* ¶ 50), but later concedes "[t]he debt collection calls made to [her] were placed by Defendant West Asset Management on behalf of [Amex]," (*id.* ¶ 58); Mr. Dolemba, by contrast, simply alleges that he received a call from West "for" Amex (*id.* ¶¶ 65, 67).

The fairest and most reasonable interpretation of the Ossola and Callentine allegations is that they should be read like Dolemba's: West did the dialing purportedly on behalf of Amex, but under the plaintiffs' theory, both were "contacted" or "called" by Amex acting through its agent, West. That was not how Plaintiffs intended their allegations to be read, however, at least in March 2014, when Plaintiffs argued that their Consolidated Complaint alleged that West and Amex both placed

the same phone calls. For example, in one brief before Judge Lee, Plaintiffs challenged Amex's assertion that Plaintiffs did not allege actual calls by Amex as "demonstrably false," and stated "[t]o the contrary, Plaintiffs *do* allege calls by [Amex]." (Dkt. No. 97 at 7 (emphasis original)). In support of their argument, Plaintiffs reproduced their Complaint allegations, asserting Ms. Callentine was "repeatedly contacted" by Amex, omitting reference to the subsequent paragraphs, which acknowledged the "contact" was by West, not Amex. (*Id.*)

Plaintiffs appear to have since abandoned such an untenable position because, in response to Amex's request for a Rule 56(g) finding that it did not actually place the calls itself, Plaintiffs did not argue that Amex physically placed any calls. Instead, they argued that Amex's own dialing conduct was unnecessary for TCPA liability and thus not a material fact subject to summary disposition. (*See* Dkt. No. 185 at 6-7.)

Nevertheless, because Plaintiffs' arguments call the court's initial interpretation of Plaintiffs' allegations into question, we must look further to resolve whether Plaintiffs do indeed allege that Amex, itself, placed improper phone calls, rather than through a vendor. We need not look further than the section of the Amended Consolidated Complaint addressing class definition. As described above, Plaintiffs propose a class of individuals who "received a debt collection call from [Amex] and/or [West] on behalf of [Amex]," and a West subclass for individuals who "received a debt collection telephone call from [West] on behalf of [Amex]." (Am. Cons. Compl. ¶¶ 74-75). Plaintiffs all claim membership in the West subclass and therefore implicitly acknowledge they were called by West rather than Amex. (*Id.* ¶ 75). If Plaintiffs truly allege that Amex called them as well, they should also be members of an Amex subclass. But there is no Amex subclass (yet) because none of the existing class representatives allege having been called by Amex itself—they were all called by

11

West.

In my view, Plaintiffs' proposed class definitions No. the issue: all of the Plaintiffs allege they were called by West on behalf of Amex, not by Amex, itself. In a last ditch effort to preserve their unalleged claims against Amex for direct calls, Plaintiffs argue that Judge Lee has already ruled that whether Amex itself placed calls is a disputed question of fact requiring discovery. (Dkt. No. 297 at 3-4). According to Plaintiffs, the question of whether Amex itself placed calls is an extant and disputed issue, thus discovery must be permitted. To support this thesis, the plaintiffs quote the Order of February 20, 2015, in which they contend Judge Lee "expressly stated that 'the parties currently are conducting discovery regarding the role that [Amex] played in the placement of these calls, and the scope of its role is disputed. Because discovery is Ms. Callentine to reveal information relevant to this inquiry, summary judgment as to this issue is inappropriate at this time.'" [Reply Brief, Dkt. No.297, at 3-4]. But the quotation is incomplete.

Even though "[s]trategic omissions do not" change the real meaning of quoted language, *Swanson v. Bank of America, N.A.,* 563 F.3d 634, 636 (7th Cir. 2009), the plaintiffs' Reply Brief has omitted from its quotation of Judge Lee's Order the qualifying, introductory phrase: "Next, as to whether [Amex] can be directly liable for telemarketing phone calls *made by third parties*...." (Dkt. No. 247 at 3)(emphasis supplied). Also omitted were Judge Lee's explanations, again without indicating by the use of ellipses or otherwise, that material had been omitted. Thus, properly quoted, this is what Judge Lee actually said – with the omissions in bold:

> **Next, as to whether American Express can be directly liable for telemarketing phone calls made by third parties,** the parties currently are conducting discovery regarding the role that American Express played in the placement of these calls, and the scope of its role is disputed. *See* **Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 9. This is important because "a seller generally does not 'initiate' calls placed by third-party telemarketers." [Citations omitted]. And, under the TCPA, "a person or entity**

12

> **'initiates' a telephone call when 'it takes the steps necessary to physically place a telephone call.'"** *Id.* **[citation omitted];** *see also Dish Network, LLC*, **28 F.C.C. Rcd. at 6583 (noting that a seller may be "so involved in the placing of a specific telephone call as to be directly liable for initiating it—by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example").** Because discovery is insert incomplete cite Ms. Callentine to reveal information relevant to this inquiry, summary judgment as to this issue is inappropriate at this time.

The selective quotation of only a portion of Judge Lee's Order without disclosing the selectivity renders the quotation "quite misleading." *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 322 (1985). It is a "highly questionable" tactic, *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1192, 1197 (1st Cir. 1995), that for obvious reasons is looked on with disfavor. *See Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC,* 626 F.3d 958, 966 (7th Cir.2010); *Cox v. CFTC*, 138 F.3d 268, 275 (7th Cir. 1998); *Pinkham v. Sara Lee Corp*, 983 F.2d 824, 833 (8th Cir. 1992); *United States v. Pacelli*, 491 F.2d 1108, 1120 (2nd Cir. 1974).

Judge Lee did not make a similar ruling with respect to the debt collection class, which is the one at issue in the pending motion. On that issue, he held that Amex was not entitled to summary judgment because whether Amex, itself, placed the calls was irrelevant to the question of Amex's liability under the TCPA. (Dkt. No. 247 at 2-3).

**B.**

**The Relevance of Amex's Call Related Data in Light of Plaintiffs' Allegations**

Since all three of the current Plaintiffs allege they were called by West, not Amex, it must now be determined whether Plaintiffs can nevertheless seek discovery of Amex's own dialing records to discover whether *Amex* made improper phone calls. Judge Lee ruled that Amex's own dialing practices are irrelevant for purposes of liability. (Dkt. No. 247 at 2). And Plaintiffs, themselves, have repeatedly asserted that Amex's own dialing practices have no bearing on the

success of their claims. (*See, e.g.*, Dkt. No. 185 at 7 ("The question of whether or not, in the colloquial sense, [Amex] 'placed the calls' at issue has no bearing on the outcome of this case under the TCPA."); Dkt. No. 183 at 19 ("there is *no distinction* between debt collection calls made by an entity and calls made by a third-party on that entity's behalf")(emphasis in original)).

In sum, the situation here is that none of the Plaintiffs allege having been called by Amex, itself, and both Judge Lee and the Plaintiffs agree that whether Amex placed calls itself is irrelevant under the TCPA. Consequently, it is difficult to conclude that discovery of Amex's own dialing records will lead to the discovery of information relevant to the Plaintiffs' existing claims.

As the party bringing the motion to compel, the Plaintiffs bear the burden of demonstrating the relevancy of Amex's dialing records. *See Sandoval v. Bridge Terminal Transport, Inc.*, 2015 WL 3650644 (E.D.Wis. 2015); *West*, 2006 WL 2349988, at *2. They do not attempt to explain the relevancy of the data in the face of their own assertions to the contrary, instead arguing that producing the requested information is "standard practice in TCPA" cases. (Dkt. No. 290 at 5). This argument misses the point. Call data is relevant, and thus produced as standard practice, only in cases where the defendant is the alleged dialer. *See, e.g.*, *Martin* v. *Bureau of Collection Recovery*, 2011 WL 2311869, at **3-5 (N.D. Ill. 2011); *Donnelly* v. *NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 503-04 (N.D. Ill. 2009). By contrast, when plaintiffs do not allege having received calls from the defendant, or do not allege having received a certain type of call from the defendant, granting broad discovery of call data is not "standard practice." *See, e.g.*, *Gusman* v. *Comcast Corp.*, 298 F.R.D. 592, 597 (S.D. Cal. 2014) (denying motion to compel dialer list of marketing calls because plaintiff received only collection calls).

In sum, because none of the existing Plaintiffs allege having been called directly by Amex,

and because Judge Lee accepted Plaintiffs' argument that Amex's own dialing practices are irrelevant to the outcome of the case, Amex's internal dialing records are not information relevant to the Ossola, Callentine, or Dolemba claims. And so, the discovery being sought by the Plaintiffs is inappropriate.

The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.,* 1994 WL 75055 at *2 (N.D.Ill.1994)(Moran, J.). "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Id.* Even before the limitation in Rule 26 that a party may obtain discovery on matters relevant to a claim or defense, *see supra* at 8, the Supreme Court had cautioned that the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and that "judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando,* 441 U.S. 153 (1979). *See also Oppenheimer Fund, Inc.,* 437 U.S. at 352.

Failure to exercise that control results in needless and enormous costs to the litigants and to the due administration of justice. Judicious use of the court's case-management authority during the litigation can help to check overlawyering, and appropriate limits on discovery can effectively channel the efforts of counsel *before* excessive time and resources are expended. *Montanez v. Simon,* 755 F.3d 547, 552 (7th Cir.2014). *Cf. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); Frank Easterbrook, *Discovery as Abuse,* 69 B.U.L.Rev. 635 (1989. *See also Hickman v. Taylor,* 329 U.S. 495, 507–508 (1947).

And so, courts frequently restrict discovery based on relevance objections. *See, e.g., Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir.2003);

15

*Kinkead v. Southwestern Bell Telephone* Co., 49 F.3d 454, 457 (8th Cir.1995); *Diak v. Dwyer, Costello, and Knox, P.C.,* 33 F.3d 809, 813 (7th Cir.1994); *Detweiler Bros., Inc. v. John Graham & Co.,* 412 F.Supp. 416, 422 (E.D.Wash.1976). That is the appropriate course to be followed here.

## C.

### Discovery of Amex's Call Related Data in the Absence of a Suitable Plaintiff

The final question is whether the court should grant discovery in the obvious absence of an adequate class representative, on the presumption that discovery may uncover a class representative suitable to represent the Amex subclass (which, unlike the West subclass, Plaintiffs have not yet proposed). Indeed, discovery of Amex's dialing records may uncover a plaintiff who, unlike the current three class representatives, can plausibly allege that he or she received a debt collection phone call actually made by Amex rather than West. And if such a plaintiff were in this case, discovery of Amex's dialing records would be relevant to that individual's claim as well as every individual similarly situated, *i.e.*, those called by Amex itself.

The problem here is that the named plaintiffs, having only been called by West, cannot serve as a representative of a class of individuals who had been called by Amex. Plaintiffs have not provided any authority—or even argument—demonstrating they are entitled to class discovery without a single adequate plaintiff, and the court's independent research has likewise revealed none. The unspoken truth, which the Plaintiffs' briefs avoid discussing, is that they need discovery to identify an appropriate representative. But it bears repeating that fishing for a client is not a permissible purpose of discovery. And so, a number of courts have refused to afford discovery for the purpose of finding an adequate class representative. *See Gawry* v. *Countrywide Home Loans,*

*Inc.*, 395 Fed. App'x 152, 160 (6th Cir.2010) ("Plaintiffs' counsel cannot use the Federal Rules of Civil Procedure as a device to force defendant to assist them in finding a plaintiff and establishing subject matter jurisdiction so they can sue defendant."); *Falcon* v. *Philips Elec. N.A. Corp.*, 304 Fed. App'x 896, 898 (2nd Cir. 2008) (affirming district court decision denying plaintiff's request to reopen discovery in order to 'go fishing' for another class representative); *Giannopoulos* v. *Iberia Líneas Aéreas de España, S.A.*, 2014 WL 2219143, at **2-3 (N.D. Ill. 2014)(refusing to permit plaintiffs' counsel to take discovery to identify additional named plaintiffs when there was no named plaintiff (or certified class) with a "live claim"); *Hauff* v. *Peterson*, 2009 WL 4782732, at *11 (D.N.M. 2009) ("Without a seemingly viable plaintiff, this court will not allow class discovery.").

Although these cases address reopening discovery after the existing class representative has discovered his or her own inadequacy, the principle that discovery is not to be used as a fishing expedition to discover a claim against a defendant, *Jackson v. City of Highland Park*, 2015 WL 3409013, 4 (E.D.Mich. 2015), applies equally in the present context.[6] If one cannot reopen discovery in the hope of finding a plaintiff because the object of that discovery is impermissible under Rule 26, it necessarily follows that one cannot embark initially on discovery that has the same object and end. This case has been pending for nearly three years, and for the majority of that time, Plaintiffs have known they cannot represent a class of individuals called directly by Amex, having not received

---

[6] *See also Todd by Todd v. Merrell Dow Pharmaceuticals, Inc.,* 942 F.2d 1173, 1178 (7th Cir.1991) ("Todd's speculation that Merrell Dow must possess unspecified additional information is not sufficient grounds to embark upon a virtually boundless fishing expedition."); *United States v. Bob Stofer Oldsmobile-Cadillac, Inc.,* 766 F.2d 1147, 1153 (7th Cir.1985); *United States v. Westmoreland,* 122 F.3d 431, 434 (7th Cir.1997); *American Airlines, Inc. v. United States,* 551 F.3d 1294, 1307 (Fed.Cir.2008); *FC Inv. Group LC v. IFX Markets, Ltd.,* 529 F.3d 1087, 1094 (D.C.Cir.2008); *Alexander v. Shan,* 161 Fed.App'x. 571, 577 (7th Cir.2005); *White v. Money Store,* 1997 WL 126847, 5 (N.D.Ill. 1997).

calls directly from Amex. Having been unable to find a suitable plaintiff to join their case, counsel for the current plaintiffs ask the court to allow them to "go fishing" for a plaintiff to represent the Amex side of the "and/or" in their proposed class definition. (*See* Am. Cons. Compl. ¶74 (individuals who received "a debt collection call from American Express *and/or* West Asset Management"))(emphasis added).

Although the term, "fishing expedition," is a shibboleth routinely appearing in defendants' oppositions to motions to compel, it is nonetheless true that "without some reason to conclude that the pond might be stocked, one cannot demand to 'fish.'" *Sirazi* v. *Panda Express, Inc.*, 2009 WL 4232693, at *3 (N.D. Ill. 2009). In a class action, all that is necessary to conclude the pond might be stocked is a single plaintiff with on point allegations. That single plaintiff is absent here, at least with regard to Amex's pond, and the existing Plaintiffs are therefore not entitled to fish in Amex's call data for a plaintiff to make their current class definition tenable.

**D.**

**Amex's Undue Burden Argument**

Although we need not reach Amex's undue burden argument since we have concluded that Amex's Call Related Data are not relevant to the existing Plaintiffs' claims and thus not discoverable, it is appropriate to make some observations on Amex's arguments concerning the claimed undue burden of trying to identify non-customer, wrong-party cell calls within its larger Call Related Data.

According to Amex, it "must pull and match data from different internal systems, as well as engage outside vendors to perform various tasks to create the data Plaintiffs seek." (Dkt. No. 295 at

5). Matching data from different internal systems is commonplace in modern litigation, especially when a long-established company (like Amex) has multiple legacy systems. It is one of the reasons why companies like Cornerstone—Amex's chosen consultant in this case—exist.

The affidavit submitted by the Cornerstone expert, Jennifer McCabe, confirms that there is nothing especially complicated about this particular task: it is a matter of cleaning and matching datasets using readily available "merge by" data fields. Moreover, since Amex has already produced a sample of the data to the Plaintiffs, most of the necessary programming—presumably in SAS or Stata—has already been done; revisions to accommodate the entire datasets may be required, but the labor intensive work is finished.

In truth, the massive "burden" Amex claims seems to arise from the purported necessity to confirm manually for each record that Amex's employees properly coded the results of each call (*e.g.*, wrong party or wrong number). No doubt improper data entry occurs from time to time; but it is a problem that afflicts every company's data systems, and, if a court were to accept Amex's argument, it would nearly always preclude discovery of large databases. Amex's argument would appear to be mooted by Plaintiffs' offer to conduct most of the manual review themselves if Amex were to produce the underlying data. (Dkt. No. 297 at 2). And if Amex's own dialing records were relevant to the claims of the existing class representatives, the argument for undue burden might well not be a compelling one. But, we need not decide these issues.

## E.

### The Data Necessary to Interpret West's Call Related Data

As discussed earlier, the court has interpreted Plaintiffs' request for the ill-defined Call

Related Data as a request for any and all data or records related to calls Amex itself made to non-customers for debt-collection purposes. One paragraph of Plaintiffs' reply brief, however, hints that Plaintiffs may require data from Amex, such as information on an individual's customer status, in order to interpret Call Related Data from West. West has already been ordered to produce similar Call Related Data because, unlike Amex, the existing Plaintiffs actually allege being called by West. Amex itself has acknowledged that it may be liable—directly or indirectly—for calls made by West on its behalf. It follows that if West's data are not useful without additional data from Amex, that additional data may be relevant and discoverable. If Plaintiffs do indeed require data from Amex in order to interpret call data from West, they must file a separate motion requesting, with specificity, the information required.

## CONCLUSION

The three existing class representatives allege they were called by West, not Amex, and have insisted that whether Amex, itself, made any phone calls is irrelevant to Amex's liability under the TCPA. Judge Lee has agreed. Thus, without a plaintiff who can properly allege having been called by Amex, itself, Amex's own dialing records are not relevant to any of the existing Plaintiffs' claims and thus not discoverable. Plaintiffs' motion to compel [290] is denied.

ENTER:

_____
JEFFREY COLE
Magistrate Judge

Date: September 3, 2015