# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER OSSOLA, JOETTA CALLENTINE, and SCOTT DOLEMBA on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 13 C 4836 |
| v. | ) ) | Judge John Lee |
| AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS CENTURION BANK, WEST ASSET MANAGEMENT, INC., and ALORICA INC., | ) ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is another one of the "surprisingly many" cases coming to federal court under the Telephone Consumer Protection Act ("TCPA"). *See Chapman v. First Index, Inc.*, 796 F.3d 783, 784 (7th Cir. 2015). The present dispute is over discovery on the issue of the arbitrability of the claims of one of the plaintiffs, Joetta Callentine. She has moved for a protective order prohibiting the defendants from pursuing subpoenas of her mother's account records from the Delaware County Bank in Delaware, Ohio, and of documents pertaining to her mother's funeral arrangements from the Snyder Funeral Home. The recipients of the subpoenas have not moved to quash them, although the funeral home apparently has informally voiced some objections to the subpoena to it, according to representations made by plaintiffs' counsel made during the oral argument on the motion.[1]

Ms. Callentine's mother, Joyce Honaker, was the holder of the credit card account in question

---

[1] It seems that the funeral home's counsel has written a letter to AMEX but a copy has not been provided either to the court or to plaintiffs' counsel. AMEX's counsel has agreed to send a copy of the letter to counsel for plaintiffs.

here – the calls that are the basis of Ms. Callentine's claims were made in order to collect debts on that account. [Dkt. # 126, ¶ 59]. Ms. Honaker's account agreement included a standard AMEX arbitration clause covering claims made by her and her "successors, assigns . . . and representatives." So, the question is, whether Ms. Callentine falls into that category. She has sworn in an affidavit that she "was never appointed executor of the estate of her" mother. But the defendant doesn't have to take her word for that; clearly they are entitled to discovery on the issue.[2] Moreover, "successors, assigns . . . and representatives" is a broader category than "appointed executor." But how much discovery should be allowed and how intrusive it can be, is another matter.

While it's not necessarily the case here, it seems that often in putative class actions, representative plaintiffs, at some point, become surprised at the burden of discovery and reluctant to participate in it fully. And it is also beginning to seem that, often, simple TCPA cases involving relatively minimal amounts of damages – $1500 per call and perhaps $4500 per call if defendants are shown to have acted willfully or knowingly – become discovery nightmares. Discovery in this case, for example, has already been ongoing for over two years. (Dkt. #21). While the scope of discovery under Fed.R.Civ.P 26(b) is quite broad, *Davis v. Duran,* 2011 WL 1792699, 2 (N.D.Ill. 2011), there is a proportionality aspect to it. That is, does the burden or expense of the proposed discovery "outweigh[] its likely benefit." Fed.R.Civ.P. 26(b)(1). In other words, is the book worth the candle? *See Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 WL 5026228, at *3 (N.D.

---

[2] When Judge Lee visited this issue pursuant to defendants' motion to compel arbitration several months ago, he denied the defendants' motion as they had submitted nothing to counter Ms. Callentine's Declaration. But he left the issue open for further discussion, noting that "at least at this stage in the proceeding, American Express has not met its burden to prove that there is not a factual dispute as to the existence of an enforceable arbitration agreement with Ms. Callentine." (Dkt. # 238, at 2).

Ill. 2015).[3] Plaintiffs, including Ms. Callentine, seek to pursue the case as a class action and not as an individual claim with significantly limited damages and attorneys' fees. For AMEX's part, the case ought not be here, or at least that portion of it not involving Ms. Callentine. *See Iowa Grain Co. v. Brown,* 171 F.3d 504, 510 (7th Cir. 1999). And so, the doctrine of proportionality, which is now an explicit component of Rule 26, *see* Rule 26(b)(1), is not a bar to the very limited third party discovery sought from Ms. Callentine's bank and the funeral home which buried her mother.

Ms. Callentine essentially takes two positions in arguing for a protective order barring further discovery. First, she says, "enough is enough." Defendants have already deposed her on this issue and she has answered a number of questions, some of them, in her view, highly personal and intentionally provocative and purposefully embarrassing. (The defendants deny any improper motivation). She doesn't want to be subjected to any further discovery on the topic, which she says is utterly irrelevant. Defendants do not raise this issue of whether Ms. Callentine has standing to object to the subpoenas to the bank and the funeral home. Generally, a party has standing to object to a subpoena to a non-party if the objecting party has a claim of privilege or the subpoena "infringes on their legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982);*Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 W L 5026228, at *4 (N.D. Ill. 2015); *Sunlust Pictures, LLC v. Does 1-75*, 2012 WL 3717768, at *2 (N.D. Ill. 2012).

But where the objection by the party is based on claimed irrelevance of the information sought from the non-party, many courts have held that the objector does not generally have standing to object to a Rule 45 subpoena. *See e.g., Uppal*, 2015 WL 5026228, at *4 (collecting cases but not

---

[3] Prior to the 2014 Amendments to the Federal Rules of Civil Procedure, the requirement of proportionality was implicit. Now it is express.

deciding the issue); *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 2013 WL 238176, *1 (S.D.N.Y. 2013). Other cases have concluded that Rule 45 adopts the standards codified in Rule 26, and that a non-party subpoena may be quashed or modified by a party for the same reasons that would support a protective order under Rule 26. *See e.g., Tracey v. St. Jude Medical, Inc.*, 2015 WL 3505314, *2-3 (D.Neb. 2015); *In re C.R. Bard, Inc. Pelvic Repair Systems Product Liability Litigation*, 2014 WL 1660386, *2-3 (S.D.W.Va. 2014); *Mayhall v. Berman & Rabin, P.A.*, 2013 WL 4496279, *3 (E.D.Mo. 2013); *Johnson v. Guards Mark Security*, 2007 WL 1023309, *1 *(N.D.Ohio 2007)*).

We need not decide this issue since lack of standing is an argument that the defendants have failed to raise. It is thus waived. *Cf., United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006); *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir.2005); *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 921-22 (7th Cir.1997)(collecting cases); *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992).

Second, Ms. Callentine insists that, because she has not received letters of appointment from a probate court in Ohio,[4] she cannot be considered the executor of, or fiduciary for, her mother's estate. Ms. Callentine submits, not only that she was not executor of her mother's estate, but that "[t]here was no estate." (Callentine Dep., at 142). But her mother at least left money in a checking account, although Ms. Callentine can't recall how much was in it. (Callentine Dep., at 47). Some legal action had to have been taken, even if Ms. Honaker's estate qualified for small estate treatment

---

[4] Although she has chosen to litigate her TCPA claims in Illinois, Ms. Callentine is a citizen and resident of Ohio.

4

and release from administration. *See, e.g.,* Ohio Rev. Code Ann. § 2113.03.[5] And, surely, someone had to take responsibility for managing the decedent's remaining financial affairs – paying bills and settling debts like the balance on a credit card account. It's always an unpleasant business that is forced on us at the most inoppurtune of times, but it must be done. At her deposition Ms. Callentine said she couldn't remember if she was the one to have done that. The person who took care of it on behalf of Ms. Honaker could, perhaps, be considered her "successor" or her "assign" or her "representative." [6]

Since Ms. Callentine says she cannot remember whether that was her, the defendants seek to explore other avenues of information. It's not surprising – or irrelevant under the broad scope of Rule 26, or unduly burdensome (even if Ms. Callentine had standing to raise this objection) – for the defendants to subpoena Ms. Honaker's checking account records from her bank and records pertaining to other accounts Ms. Honaker might have had at her bank. Not so clear is why the defendants need documents relating to Ms. Honaker's funeral arrangements.

It is a commonplace occurrence that when one's mother dies, her children – if the father is not alive and often if he is – make the arrangements for the funeral. That is what happened here: Ms. Callentine and her sister dealt with the funeral home out of insurance policy proceeds. (Callentine Dep., at 67, 105-06). Defendants can make of that what they may, but there is no need

---

[5] At her deposition, Ms. Callentine seemed to indicate that her mother simply put everything in her brother's name before she died. (Callentine Dep., at 105).

[6] In her reply brief, Ms. Callentine seeks to litigate the substantive issue of the applicability of the arbitration clause. But this is a discovery dispute, and it is neither the time nor the place to resolve that issue –which Judge Lee left open in his ruling of February 6, 2015. Moreover, the fact that plaintiff did not raise and develop this issue until her reply brief results in her arguments being waived. *United States v. Kennedy,* 726 F.3d 968, 974 n.3 (7th Cir. 2013).

to go father and subpoena all the records from the funeral home, which may well include details of coffin and plot selection, personal details regarding the body, and other matters that plainly have nothing to do with any conceivable issue in this case. AMEX has conceded it has no interest in these and related matters but it also concedes that the subpoena as presently drafted would require the funeral home to produce any record of any kind relating in any way to any aspect of Ms. Callentine's mother's death. Given the admitted overbreadth of the subpoena, the motion for protective order is granted. If AMEX chooses to reissue the subpoena it can only seek information or documents that relate to Ms. Callentine's involvement, if any, in her mother's financial affairs and/or from which it could be argued that Ms. Callentine was the functional equivalent of an executor of her mother's estate or was acting in one of the capacities specified in the cardholder agreement between AMEX and Ms. Callentine's mother.[7]

Returning to Ms. Callentine's claim that there has been enough discovery on this question – and that some of it has been intentionally abusive – it cannot be ignored that during her deposition her memory was uncertain and her answers equivocal. That understandably precipitated a longer and more intrusive line of questioning. Still some of the defendants' questioning was, at times, seemingly pointless. Why delve into Ms. Callentine's divorce, her moving in with her sister, and how many hours she spent taking care of her sister's children while her sister was at work? (Callentine Dep., at 90, 92). This type of questioning is perhaps what prompted Ms. Callentine to seek a protective

---

[7] Of course, the information that can permissibly be sought by a redrafted subpoena need not, itself, prove the point sought to be made by AMEX. It need only have the capacity to aid in that endeavor or to reasonably lead to other admissible evidence. As Dean McCormick has aptly phrased it, to be relevant, evidence need only be a brick, not a wall. *See also Huddleston v. United States,* 485 U.S. 681, 691 (1988) ("'[I]ndividual pieces of evidence insufficient in themselves to prove a point may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.'").

order and to insist that the deposition and the current discovery are designed to be harassing.

At her deposition, Ms. Callentine testified that her mother asked her to take care of her uncle – he was disabled and had been living with Ms. Honaker – by paying his bills. That's a piece of evidence that might suggest Ms. Callentine was acting as Ms. Honaker's representative, even if she was not "executor" of the estate. But beyond that, Ms. Callentine's memory mostly failed her. She didn't recall whether, when her mother died, her uncle brought her her mother's bills to pay as well as his. (Callentine Dep., at 42). It was "so difficult to remember." (Callentine Dep., at 43). Later she testified that she did not deal with her mother's bills – only her uncle's. (Callentine Dep., at 108). But she didn't give them to anyone else to take care of either. (Callentine Dep., at 108).

As for whether Ms. Callentine contacted companies about bills her mother received after she passed away, she said:

> I -- I don't remember if I made any calls. I do -- I do remember having conversations with maybe some of her -- some people that called -- called me maybe.
> I -- oh, gosh, I do remember I had to go to the bank –
> \*   \*   \*
> -- and let them know, and, you know, that I did in person. It was such a whirlwind.

(Callentine Dep., at 45-46; *see also* 109). Ms. Callentine knew "beyond a shadow of a doubt" that her mother had a checking account at Delaware County Bank, but beyond that, she could not say whether there were any other accounts. (Callentine Dep., at 46). She thought the checking account was "frozen", had no idea what happened next, but thought the account was still there. She didn't know how much money might be in the account. (Callentine Dep., at 47).

She knew her mother had some credit card accounts, but could not recall whether she took care of them after her mother died. (Callentine Dep., at 52). Oddly, despite the allegations in the Complaint, she testified that she could not remember whether her mother had an American Express

account. (Callentine Dep., at 175). Ms. Callentine didn't remember anything specific about any of the calls that form the basis of her TCPA claim. (Callentine Dep., at 68, 70, 126-27, 172). Not surprisingly, she couldn't remember the dates of the calls, but neither could she remember whether they all occurred in 2009. (Callentine Dep., at 98).

So, again, Ms. Callentine couldn't remember how her mother's bills were paid following her death or by whom. But that's not the end of things. There are other avenues to determine who was in charge of Ms. Honaker's finances, and bank records may be one of them. As has already been said, it is understandable that plaintiff might struggle with questions about what went on in the wake of her mother's death. That's a profoundly difficult time for children – even adult children. Discovery is no pleasure; it's rightly been called the bane of modern litigation. *Rosetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000)(Posner, J.). It is by its very nature, intrusive and invasive. *Bond v. Utreras,* 585 F.3d 1061, 1067 (7th Cir.2009); *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998). *See also Miller UK Ltd. v. Caterpillar, Inc.*, 2013 WL 474380, 1 (N.D.Ill. 2013); *Flentye v. Kathrein*, 2007 WL 2903128, 2 (N.D.Ill.2007)("Discovery is, like life itself, 'nasty [and] brutish ....' Hobbes, Leviathan, Chapter XIII. Unfortunately, it is not generally short."). But the decision to be participate in a lawsuit and perhaps be a class representative brings with it certain responsibilities. There being only a limited basis for judicial intervention under Rule 26(c), reasonable discovery in the areas being explored by Amex can proceed.

The plaintiff's motion for a protective order [Dkt. # 323] is granted in part (as to the subpoena to the funeral home) and denied in part (as to the subpoena to the bank.)

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 12/16/15