## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made by and among Joetta Callentine ("Plaintiff"), on behalf of herself and the Settlement Class (as defined below), on the one hand, and American Express Company and American Express Centurion Bank (together, "American Express"), on the other hand. Plaintiff, Class Counsel (as defined below) and American Express hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court (as defined below) of a Final Approval Order (as defined below), all claims of Plaintiff and the Settlement Class Members (as defined below) in the action entitled Jennifer Ossola, Joetta Callentine and Scott Dolemba v. American Express Company, et al., U.S.D.C. Northern District of Illinois, Case No. 1:13-CV-4836 (the "Action"), shall be settled, compromised and released upon the terms and conditions contained herein.

## I.     RECITALS

This Agreement is made with reference to and in contemplation of the following facts and circumstances:

A.    The Action alleges that American Express violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by having a third-party, Alorica Inc. ("Alorica"), place telemarketing calls, to cellular telephones through the use of an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of Plaintiff and the putative class members.

B.    American Express vigorously denies all claims asserted in the Action and denies all allegations of wrongdoing and liability. American Express desires to settle the Action on the terms set forth herein solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing these proceedings.

C.    This Agreement results from and is the product of extensive, good faith and arm's length negotiations. The Parties (as defined below) participated in a private, in-person

mediation before the Honorable Morton Denlow (Ret.) on April 14, 2016, as well as subsequent telephonic conferences with Judge Denlow.

D.     The Parties enter into this Agreement, subject to preliminary approval and final approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiff and the Telemarketing Settlement Class Members (as defined below) in exchange for American Express's agreement to pay the total amount of $8,250,000, inclusive of Settlement Costs and Settlement Awards as set forth below.

E.     The Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence except to enforce the terms of the settlement and is not an admission of wrongdoing or liability on the part of any Party to this Agreement.  It is the Parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, Plaintiff, on her behalf and on behalf of the Telemarketing Settlement Class, and American Express agree to the Telemarketing Settlement (as defined below), subject to approval by the Court, as follows:

## II.     DEFINITIONS

A.     In addition to the terms defined elsewhere within this Agreement, the following defined terms apply throughout this Agreement and the attached exhibits:

1.     "Action" means the action entitled Jennifer Ossola, Joetta Callentine and Scott Dolemba v. American Express Company, et al., U.S.D.C. Northern District of Illinois, Case No. 1:13-CV-4836.

2.     "Agreement" means this Settlement Agreement and Release and the attached exhibits.

2

3.      "Alorica" means Alorica Inc.

4.      "American Express" means American Express Company and American Express Centurion Bank.

5.      "American Express's Counsel" means Stroock & Stroock & Lavan LLP.

6.      "American Express TCPA Settlements" means this Telemarketing Settlement and the Debt Collection Settlement.

7.      "CAFA Notice" refers to the notice requirements imposed by 28 U.S.C. § 1715(b).

8.      "Claim Form" or "Claim" means the claim form to be submitted by Telemarketing Settlement Class Members in order to receive a Settlement Award pursuant to Section III.F of this Agreement, subject to approval by the Court, substantially in the form attached hereto as Exhibit 1.

9.      "Claim Period" means the period of time in which a Telemarketing Settlement Class Member must submit a Claim Form to be eligible to receive a Settlement Award as part of the Telemarketing Settlement.  As set forth in III.B.1, the last day of the Claim Period will be 90 days following the Notice Deadline.

10.     "Claims Administrator" means Kurtzman Carson Consultants ("KCC"). The Claims Administrator shall be responsible for providing the Class Notice as well as services related to administration of the Telemarketing Settlement.

11.     "Class Counsel" means Burke Law Offices, LLC, Keogh Law, Ltd., Lieff Cabraser Heimann & Bernstein, LLP, SmithMarco P.C. and/or Meyer Wilson Co., LPA to be appointed counsel for the Telemarketing Settlement Class.

12.     "Class Notice" means any type of notice that may be utilized to notify persons in the Telemarketing Settlement Class of the Settlement, including one or more of the following methods:  E-mail Notice, Mail Notice, Website Notice and any different or additional

notice that might be ordered by the Court. A description of the contemplated Class Notice is provided in Section III.E of this Agreement.

13. "Class List" means the list of 798,626 cellular telephone numbers identified as belonging to Telemarketing Settlement Class Members, and subject to confirmatory discovery, identified from reasonably available information belonging to Alorica.

14. "Class Period" means the period from July 3, 2009 through March 15, 2016.

15. "Court" means the United States District Court for the Northern District of Illinois.

16. "*Cy Pres* Distribution" means monies that may be distributed in connection with the Telemarketing Settlement pursuant to Section III.G.3 of this Agreement. *Cy Pres* will only be distributed for uncashed or undeposited checks and only then if a redistribution to those eligible Telemarketing Settlement Class Members is not feasible pursuant to Section III.G.2 of this Agreement.

17. "Debt Collection Settlement" means the separate class action settlement which American Express, West Asset Management, Inc. ("WAM") and plaintiffs Jennifer Ossola ("Ossola") and Scott Dolemba ("Dolemba") have entered to resolve the individual and putative class claims asserted by Ossola and Dolemba in the Action relating to debt collection calls by WAM on behalf of American Express. The terms of the Debt Collection Settlement are set forth in a separate agreement on file with the Court.

18. "Debt Collection Settlement Class Member" means any person who is a member of the settlement class in the Debt Collection Class Settlement.

19. "Effective Date" means the fifth business day after the last of the following dates:

a. All Parties, American Express's Counsel and Class Counsel have executed this Agreement;

b.      The Court has entered, without material change, the Final Approval Order;

c.      The Debt Collection Settlement has been finally approved; and

d.      The final disposition of any related appeals, including without limitation appeals of persons who have objected to the Debt Collection Settlement and/or Telemarketing Settlement, and in the case of no appeal or review being filed, expiration of the applicable appellate period.

Notwithstanding the foregoing, at any time after entry of the Final Approval Order, American Express shall have the right to declare that the Effective Date has occurred.

20.     "E-mail Notice" means the notice that will be provided pursuant to Section III.E.1 of this Agreement, subject to approval by the Court, substantially in the form attached hereto as Exhibit 2.

21.     "Final Approval Hearing" means the hearing during which the Court considers the Parties' request to enter the Final Approval Order granting final approval of the Telemarketing Settlement and to determine the amount of fees, costs and expenses awarded to Class Counsel and the amount of the service awards to Plaintiff.

22.     "Final Approval Order" means the order and judgment that the Court enters upon finally approving the Telemarketing Settlement, the proposed form of which is attached hereto as Exhibit 6.  "Final Approval" occurs on the date that the Court enters, without material change, the Final Approval Order.

23.     "Mail Notice" means the postcard notice that will be provided pursuant to Section III.E.1 of this Agreement, subject to approval by the Court, substantially in the form attached hereto as Exhibit 3.

24.     "Notice Deadline" shall have the meaning set forth in Section III.B.1 of this Agreement.

5

25.     "Opt-Out and Objection Deadline" shall have the meaning set forth in Section III.B.1 of this Agreement.

26.     "Parties" means Plaintiff and American Express.

27.     "Plaintiff" means Joetta Callentine.

28.     "Preliminary Approval Order" means the order that the Court enters upon preliminarily approving the Telemarketing Settlement, the proposed form of which is attached hereto as Exhibit 5.  "Preliminary Approval" occurs on the date that the Court enters, without material change, the Preliminary Approval Order.

29.     "Redistribution" means monies that may be distributed as described in Section III.G.2. below.

30.     "Released Claims" means all claims to be released as set forth in Section III.H of this Agreement.  The "Releases" means all of the releases contained in Section III.H of this Agreement.

31.     "Released Parties" means those persons and entities released as set forth in Section III.H of this Agreement.

32.     "Releasing Parties" means Plaintiff and each and all Telemarketing Settlement Class Members, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns, any other person or entity claiming through them and, if applicable, any additional cardmember, co-signer, co-buyer or authorized user, as set forth in Section III.H of this Agreement.

33.     "Settlement Award" means a cash award that may be available to eligible Telemarketing Settlement Class Members pursuant to Section III.F of this Agreement.

34.     "Settlement Costs" means: (i) any award of attorneys' fees and costs to Class Counsel approved by the Court; (ii) any service awards to Plaintiff approved by the Court; (iii) all costs of printing and providing notice to persons in the Telemarketing Settlement Class

6

(including, but not limited to, costs for Direct Notice and Settlement Website and as agreed to by the Parties); (iv) all costs of administering the Telemarketing Settlement through completion, including, but not limited to, the cost of printing and mailing settlement payments (including the cost of printing and mailing settlement payments following the redistribution of any amounts that remain from uncashed checks, as set forth in Paragraph 10(b)), Claim Forms and opt-out requests, the cost of obtaining and maintaining the URL for the Settlement Website, the cost of maintaining a designated post office box for receiving Claim Forms and the costs of processing opt-out requests; and (v) the fees, expenses and all other costs of the Claims Administrator incurred through completion of the Telemarketing Settlement.

35. "Settlement Website" means the website established by the Claims Administrator to aid in the administration of the Telemarketing Settlement.

36. "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.

37. "Telemarketing Settlement" means the settlement which the Parties have entered to resolve the Action and which is intended to resolve all Released Claims and all other claims asserted in the Action by or on behalf of the Telemarketing Settlement Class. The terms of the Telemarketing Settlement are set forth in this Agreement and the attached exhibits, which are incorporated by reference herein.

38. "Telemarketing Settlement Class" means: "All persons nationwide within the United States who, on or after July 3, 2009 through March 15, 2016, received a telemarketing call from Alorica Inc. (or its agents or affiliates) on behalf of American Express, in connection with the marketing of American Express small business charge and/or credit cards to potential customers, to a cellular telephone number through the use of an automatic telephone dialing system, predictive dialer and/or an artificial or prerecorded voice." Excluded from the Telemarketing Settlement Class are the Judge to whom the Action is assigned and any member

of the Judge's staff and immediate family, as well as all persons who are validly excluded from the Telemarketing Settlement Class.

39.    "Telemarketing Settlement Class Member" means any person in the Telemarketing Settlement Class who is not validly excluded from the Telemarketing Settlement Class.

40.    "Telemarketing Settlement Fund" means the amount of $8,250,000 to be paid by American Express as set forth in this Agreement.

41.    "Toll-Free Settlement Hotline" means the toll-free telephone number established by the Claims Administrator to aid in the administration of the Telemarketing Settlement.

42.    "Website Notice" means the website notice provided pursuant to Section III.E.2 of this Agreement, substantially in the form attached hereto as <u>Exhibit 4</u>.  The Website Notice will be posted on the "Settlement Website."

## III.    <u>TERMS OF SETTLEMENT</u>

A.    <u>Conditional Certification of the Telemarketing Settlement Class</u>.  Solely for the purposes of providing Class Notice and implementing the terms of this Agreement, the Parties agree to certification of the Telemarketing Settlement Class.  If for any reason whatsoever this Telemarketing Settlement is not finalized or the Telemarketing Settlement as detailed in this Agreement is not finally approved by the Court, the certification of the Telemarketing Settlement Class shall be void and the Parties and the Action will return to the status quo as it existed prior to this Agreement, and no doctrine of waiver, estoppel or preclusion will be asserted in any proceedings, in response to any motion seeking class certification, any motion seeking to compel arbitration or otherwise asserted at any other stage of the Action or in any other proceeding.  No agreements, documents or statements made by or entered into by any Party in connection with the Telemarketing Settlement may be used by Plaintiff, any person in the proposed Telemarketing Settlement Class, American Express or any other person to

8

establish liability, any defense and/or any of the elements of class certification, whether in the Action or in any other proceeding.

    B.   <u>Preliminary Approval</u>.

    1.   <u>Preliminary Approval Motion.</u>  On or before June 30, 2016, or by such other date as agreed upon by the Parties and approved by the Court, Plaintiff will move the Court for entry of the Preliminary Approval Order, which shall specifically include provisions that: (a) preliminarily approve the Telemarketing Settlement reflected herein as fair, adequate and reasonable to the Telemarketing Settlement Class, and within the reasonable range of possible final approval; (b) conditionally certify the Telemarketing Settlement Class for settlement purposes only and appoint Class Counsel as counsel for the Telemarketing Settlement Class for settlement purposes only; (c) approve the forms of Class Notice and find that the Notice Program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Telemarketing Settlement Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (d) direct that notice be provided to the Telemarketing Settlement Class, in accordance with this Agreement, within thirty (30) days following entry of the Preliminary Approval Order (the "Notice Deadline"); (e) establish a procedure for Telemarketing Settlement Class Members to object to the Telemarketing Settlement or exclude themselves from the Telemarketing Settlement Class; (f) set a deadline sixty (60) days after the Notice Deadline, after which no one shall be allowed to object to the Settlement or exclude himself or herself from the Telemarketing Settlement Class or seek to intervene (the "Opt-Out and Objection Deadline"); (g) approve the Claim Form and the claims process described herein; (h) set the Claim Period for the submission of Claims to end ninety (90) days after the Notice Deadline; (i) establish a deadline for Class Counsel to move the Court for an award of attorneys' fees and costs to be paid to Class Counsel and for service awards to be paid to Plaintiffs; and (j) schedule a hearing to consider Final Approval of the Telemarketing Settlement, which shall be scheduled no earlier than thirty (30) days after the Opt-Out and Objection Deadline.

2.  Stay/Bar of Proceedings.  All proceedings in the Action will be stayed following entry of the Preliminary Approval Order, except as may be necessary to implement the Telemarketing Settlement or comply with the terms of the Telemarketing Settlement.  Pending determination of whether the Telemarketing Settlement should be granted final approval, the Parties agree not to pursue any claims or defenses otherwise available to them, and further agree that the Final Approval Order shall include an injunction that no person who has not opted out of the Telemarketing Settlement Class and no person acting or purporting to act directly or on behalf of a Telemarketing Settlement Class Member, or acting on a representative basis or in any other capacity, will commence or prosecute against any of the Released Parties any action or proceeding asserting any of the Released Claims.  A similar injunction also must be included in the Final Approval Order, to apply to all Telemarketing Settlement Class Members.

C.  Settlement Consideration.

1.  The Telemarketing Settlement Fund.  Within thirty (30) days of the Effective Date, as full and complete consideration for the Telemarketing Settlement, American Express shall fund the Telemarketing Settlement Fund.  The Claims Administrator shall maintain the Telemarketing Settlement Fund in a segregated account at a financial institution with more than $10 billion in assets in an account or accounts insured by an agency or agencies of the United States government, with insurance that exceeds the amounts deposited.  The Telemarketing Settlement Fund shall be used to pay all of the following:  (a) Settlement Costs; (b) all Settlement Awards to claiming Telemarketing Settlement Class Members; and (c) any *Cy Pres* distribution pursuant to Section G.3.  The Telemarketing Settlement Fund, including any interest, shall be reduced by the Settlement Costs prior to paying any Settlement Awards to Telemarketing Settlement Class Members.  American Express's obligation to fund the Telemarketing Settlement Fund shall be reduced by American Express's payment or advancement of Settlement Costs prior to funding of the Telemarketing Settlement Fund, and American Express shall receive full credit against its funding obligation for all such payments or

10

advancements. In no event shall American Express's total financial obligation with respect to the Telemarketing Settlement exceed $8,250,000. American Express shall not, under any circumstances, be obligated to pay any amounts in addition to the Telemarketing Settlement Fund in connection with the Telemarketing Settlement.

2.      Return Of Telemarketing Settlement Fund In Event Of Termination. In the event that the Telemarketing Settlement is not approved, or is terminated, canceled or fails to become effective for any reason including, but not limited to, Section K.3 and/or K.4 below, the money remaining in the Telemarketing Settlement Fund (including accrued interest), less expenses and taxes incurred or due and owing and payable from the Telemarketing Settlement Fund in accordance with this Agreement, shall be returned to American Express within 15 days of the event that causes the Agreement to not become effective.

D.      Claims Administrator. The Claims Administrator shall administer various aspects of the Telemarketing Settlement as described herein, and perform other functions assigned to the Claims Administrator elsewhere in this Agreement, including, but not limited to: effectuating the Notice Program pursuant to Section E; calculating the amount of the Settlement Awards and distributing the Telemarketing Settlement Fund pursuant to Section III.G; and, in the event of termination of the Telemarketing Settlement, returning the Telemarketing Settlement Fund pursuant to Section C.2, along with any accrued interest or earnings, to American Express. The duties of the Claims Administrator, in addition to other responsibilities that are described in this Agreement, are as follows:

1.      Obtain from American Express, on a confidential basis, the list of cellular telephone numbers, for the period from July 3, 2009 through March 15, 2016, Alorica called in connection with the marketing of American Express small business charge and/or credit cards to potential customers, and who can be identified from Alorica's reasonably available computerized records and/or data;

11

2.      Perform reverse lookups as to any cellular telephone numbers that lack demographic information to obtain current e-mail addresses and/or direct mailing addresses, and update the addresses received through the National Change of Address database for the purpose of providing the Notice and later mailing Settlement Awards;

3.      Provide the Notice, as described herein and approved by the Court;

4.      Establish and maintain a Post Office box for requests for exclusion from the Telemarketing Settlement Class;

5.      Establish and maintain the Settlement Website;

6.      Establish and maintain an automated toll-free telephone line (which shall not have live operators) for persons in the Telemarketing Settlement Class to call with, and/or to leave questions or messages regarding, Settlement-related inquiries, to answer the questions of persons who call with or otherwise communicate such inquiries (except that the Claims Administrator shall not give, and shall not be expected to give, legal advice), and for persons in the Telemarketing Settlement Class to submit Claims via an interactive, automated IVR system;

7.      Process all claims and requests for exclusion from persons in the Telemarketing Settlement Class;

8.      Provide weekly reports and a final report to Class Counsel and American Express's Counsel that summarize the number of requests for exclusion received that period, the total number of exclusion requests received to date and other pertinent information, including claims information;

9.      In advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that verifies that the Notice Program directed by the Court has been effectuated, confirms the number of Valid Claims, and identifies each person in the Telemarketing Settlement Class who timely and properly requested exclusion from the Telemarketing Settlement Class; and

10.    Facilitate and process the payment from the Telemarketing Settlement Fund of the following: (a) all Settlement Costs; (b) all Settlement Awards to claiming Telemarketing Settlement Class Members; and (c) any *Cy Pres* Distribution.

E.    <u>Telemarketing Settlement Class Notice Program</u>. The Notice Program will be comprised of Direct Notice and a Website Notice on the Settlement Website, as described below. The Notices provided under or as part of the Notice Program will not bear or include the American Express logo or trademarks (except for the abbreviation "American Express"), the return address of American Express, the American Express colors or otherwise be styled so as to appear to originate from American Express. The Claims Administrator shall, by the Notice Deadline, provide:

1.    <u>E-mail or Mail Notice</u>. Within five (5) days following Preliminary Approval, American Express will provide to the Claims Administrator the Class List identifying the cellular telephone numbers identified from Alorica's reasonably available computerized records as belonging to possible Telemarketing Settlement Class Members, along with the name of the person or entity associated with the cellular telephone numbers, as reflected in Alorica's records, as well as the associated mailing address and (if available) e-mail address. The Claims Administrator will perform reverse look ups as to any cellular telephone numbers that lack demographic information to obtain current e-mail addresses and/or direct mailing addresses in an effort to identify persons in the Telemarketing Settlement Class and to determine their most recent email and/or mailing address information. The Claims Administrator shall rely on e-mail ("E-Mail Notice") to notify persons in the Telemarketing Settlement Class; direct mail ("Mail Notice") may be used to provide notice if the Claims Administrator cannot locate an e-mail address through the reverse lookup process, but is able to locate a mailing address, or if the Claims Administrator learns that an e-mail was undeliverable. To the extent necessary, the Claims Administrator will perform a search using the National Change of Address database and update its records prior to mailing. The E-Mail Notice and Mail Notice shall be in the form

attached hereto as Exhibits 2 and 3, respectively. The E-Mail Notice shall have a "return receipt" or other such function that permits the Claims Administrator to reasonably determine whether emails have been delivered and/or opened. The E-Mail Notice also shall have a hyperlink that Class Member recipients may click and be taken to a landing page on the Settlement Website. The E-Mail and Mail Notice will include a Claim Form which may be electronically submitted or mailed back to submit a claim upon the Telemarketing Settlement Fund for a settlement award. The E-Mail and Mail Notice will also include summary information pursuant to FRCP 23(c)(2)(B) on how to obtain, and submit, the Claim Form and also refer to the Toll-Free Settlement Hotline and the Settlement Website, which, as discussed below, will include information regarding the Telemarketing Settlement and also provide for online submission of the Claim Form and opt out requests.

            2.    <u>Website Notice</u>. The Claims Administrator will establish and maintain the Settlement Website, using a domain name selected by American Express and subject to approval by Class Counsel. If the selected URL for the Settlement Website is not available or is rejected by the Court, a new URL will be selected and agreed upon by the Parties, and presented to the Court for approval. The Settlement Website for the Telemarketing Settlement will be distinct from the website for the Debt Collection Settlement. By clicking a link users will be directed to the Website Notice in the form attached hereto as Exhibit 4, the Claim Form, a copy of this Agreement, the Preliminary Approval Order and the operative Complaint, in addition to other relevant case documents, will be available on the Settlement Website beginning five (5) days following the entry of the Preliminary Approval Order and remain until the Effective Date. The Settlement Website also shall provide for online submission of Claim Forms and provide for persons in the Telemarketing Settlement Class to update their contact information. The Parties agree that the selected domain name shall not include the name "American Express." In addition, the domain name shall not bear or include American Express's or any of its parents', affiliates' or subsidiaries' logo or trademarks. The Parties agree that the Settlement Website

shall not link to, or appear on, the website(s) of American Express and/or its parents, affiliates or subsidiaries. The Claims Administrator shall maintain and renew ownership of the Settlement Website URL for two (2) years post-Effective Date, after which the Claims Administrator shall allow ownership of the Settlement Website URL to lapse.

3. <u>CAFA Notice</u>. American Express shall be responsible for timely compliance with all CAFA notice requirements.

F. <u>Settlement Awards</u>.

1. <u>Awards</u>. Each Telemarketing Settlement Class Member will be entitled to make one claim upon the Telemarketing Settlement Fund for a settlement award per cellular telephone number called, regardless of the number of calls the Telemarketing Settlement Class Member received, which will be payable as a cash award, as described below. Each Telemarketing Settlement Class Member who submits a valid claim (subject to Section G.2. below) will be paid a Settlement Award on a pro rata basis, which shall be calculated by dividing the amount remaining in the Telemarketing Settlement Fund (after deducting all Settlement Costs) by the total number of valid claims (subject to Section G.2. below). If a Telemarketing Settlement Class Member is also a Debt Collection Settlement Class Member and he or she wishes to submit claims in both this Telemarketing Settlement and the Debt Collection Settlement, he or she must submit separate claims pursuant to each settlement.

2. <u>Claims-Made Basis</u>. Settlement Awards shall be made to eligible Telemarketing Settlement Class Members on a claims-made basis. To make a claim for a Settlement Award, Telemarketing Settlement Class Members must submit a valid and timely Claim Form, which shall include: (a) the Telemarketing Settlement Class Member's full name and address; (b) the cell phone number at which Alorica (or any of its agents or entities) allegedly contacted the Telemarketing Settlement Class Member; and (c) written, electronic, or oral affirmation (for mailed Claim Forms, Claim Forms submitted via the Settlement Website, or Claim Forms submitted via the Toll-Free Settlement Hotline, respectively) that the

15

Telemarketing Settlement Class Member, on or after July 3, 2009 and on or before March 15, 2016, received a telemarketing call on behalf of American Express to the Telemarketing Settlement Class Member's cellular telephone number. The Claim Forms may be submitted to the Claims Administrator by mail, via the Settlement Website or the Toll-Free Settlement Hotline. Only one valid Claim Form will be honored per Telemarketing Settlement Class Member per cellular telephone number called, regardless of the number of calls the Telemarketing Settlement Class Member received. American Express shall have the right to review and research the submitted Claim Forms and to suggest denial of claims if American Express has a good faith belief that such claims are improper or fraudulent. Any suggestion of denial of claims shall be provided to Class Counsel in writing. If the parties cannot agree upon which claims should be denied then they shall submit the issue to the Court for determination at final approval.

3. <u>Obligations of Telemarketing Settlement Class Members Unaffected By Settlement</u>. The Telemarketing Settlement shall not affirm, deny, increase, decrease, validate, void or otherwise debts owed by Telemarketing Settlement Class Members to American Express. All Telemarketing Settlement Class Members will remain fully obligated on any and all such debts to the same extent as they are or would be if the Settlement never occurred. Any payments issued pursuant to the Telemarketing Settlement will not re-start the statute(s) of limitations applicable to the collection of any debts.

G. <u>Distribution of Settlement Awards</u>.

1. <u>Settlement Award Payments</u>. Settlement Awards shall be paid by check. The Claims Administrator shall mail, by first-class mail, a check to each eligible, claiming Telemarketing Settlement Class Member receiving a check in payment of a Settlement Award within 30 days after the Effective Date. The Claims Administrator will perform skip tracing and re-mailing, as necessary; all costs of such work will be considered Settlement Costs. Checks will be valid for 180 days from the date on the check.

2.     Redistribution.  The amounts of any checks that remain uncashed more than 180 days after the date on the check will be redistributed where the residual amount of uncashed checks (net of anticipated administrative costs) exceeds $100,000, on a pro rata basis to (i) the eligible Telemarketing Settlement Class Members who cashed their first check, and (ii) Telemarketing Settlement Class Members who, prior to the first distribution of Settlement Awards (discussed in G.1. above), submitted untimely, but otherwise valid Claims. Telemarketing Settlement Class Members who do not cash their initial checks shall not be eligible for any Redistribution.  To the extent the residual amount of uncashed checks (net of anticipated administrative costs) is less than $100,000, the residual amount shall be distributed as part of the *Cy Pres* Distribution.  No money remaining in the Telemarketing Settlement Fund shall revert to or otherwise be paid to American Express.

3.     *Cy Pres* Distribution.  If there is any money remaining in the Telemarketing Settlement Fund after payment of the Settlement Costs, awards to Telemarketing Settlement Class Members and any Redistributions, such monies will be distributed to non-profit charitable organizations.  The Cy Pres Distribution shall be made 240 days after completion of the distribution of Settlement Awards or, if necessary, after all Redistributions have been exhausted, whichever is later.  The Parties shall agree upon the proposed recipient(s) of the *Cy Pres* Distribution and shall submit a filing to the Court identifying such proposed recipient(s). The *Cy Pres* Distribution shall be made equally among the recipients designated by the Parties, subject to approval by the Court.  If, for any reason, the Parties and/or the Court determine that one or more proposed recipients are not or are no longer appropriate recipients, the Parties shall agree on replacement recipient(s) of such monies, subject to Court approval.  The Parties shall agree that the designated *Cy Pres* recipient(s) shall confirm in writing that funds will not be used for litigation or political advocacy, and that American Express's name will not be used without its consent.

17

H.   Releases.

1.   As of the Effective Date, Plaintiff and the Telemarketing Settlement Class

Members provide the following releases:

> Plaintiff and each and all Telemarketing Settlement Class
> Members, on behalf of themselves and their respective heirs,
> executors, administrators, representatives, agents, attorneys,
> partners, successors, predecessors-in-interest, assigns and any
> authorized users of their accounts, will be deemed to have fully
> released and forever discharged American Express Company,
> American Express Centurion Bank, American Express Travel
> Related Services Company, Inc. and Alorica Inc., and each and all
> of its and their present, former and future direct and indirect parent
> companies, affiliates, subsidiaries, agents, successors, and/or
> predecessors in interest and all of the aforementioneds' respective
> officers, directors, employees, attorneys, shareholders, agents,
> vendors and assigns (together, the "Released Parties") from any
> and all rights, duties, obligations, claims, actions, causes of action
> or liabilities, whether arising under local, state or federal law,
> whether by Constitution, statute, contract, rule, regulation, any
> regulatory promulgation (including, but not limited to, any opinion
> or declaratory ruling), common law or equity, whether known or
> unknown, suspected or unsuspected, asserted or unasserted,
> foreseen or unforeseen, actual or contingent, liquidated or
> unliquidated, punitive or compensatory as of the date of
> Preliminary Approval that arise out of or are related in any way to
> the actual or alleged use by Alorica Inc., or its agents or affiliates,
> of an artificial or prerecorded voice, predictive dialer and/or of any
> automatic telephone dialing system (to the fullest extent that those
> terms are used, defined or interpreted by the Telephone Consumer
> Protection Act, 47 U.S.C. § 227, et seq., relevant regulatory or
> administrative promulgations and case law) to make telemarketing
> calls on behalf of American Express, including, but not limited to,
> claims under or for violations of the Telephone Consumer
> Protection Act, 47 U.S.C. § 227, et seq., and any other state or
> federal statutory or analogous common law claim (including, but
> not limited to, for invasion of privacy) arising from the use of
> automatic telephone dialing systems, predictive dialer and/or an
> artificial or prerecorded voice (the "Released Claims") which have
> accrued on or before through the date of Preliminary Approval.

Without limiting the foregoing, the Released Claims specifically extend to claims that

Releasing Parties do not know or suspect to exist in their favor at the time that the Settlement and

LA 51998058

the releases contained therein become effective. This Paragraph constitutes a waiver of, without limitation as to any other applicable law, Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiff and the Telemarketing Settlement Class Members understand and acknowledge the significance of the waiver of California Civil Code Section 1542 and/or any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases. In connection with such waivers and relinquishment, Plaintiff and the Telemarketing Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the settlement, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

2.     Plaintiff also is a member of the class in the Debt Collection Settlement and subject to the terms of the settlement agreement in the Debt Collection Settlement, including specifically that Plaintiff is subject to the "Release" and hereby releases the "Released Claims" as those terms are defined in the settlement agreement in the Debt Collection Case.

I.     <u>Attorneys' Fees And Costs</u>.  Plaintiff shall move the Court for an award of attorneys' fees and costs to be paid to Class Counsel from the Telemarketing Settlement Fund. American Express reserves the right to oppose such a motion and the amount requested. Class Counsel may receive payment of the fees and costs awarded by the Court within five (5) business days following the Effective Date and the Court's entry of an order awarding fees and costs. Court approval of attorneys' fees and costs, or their amount, will not be a condition of

the Telemarketing Settlement. In addition, no interest will accrue on such amounts at any time. Class Counsel agree to provide W-9's and/or other documentation required by American Express to process and properly report to the taxing authorities any amounts paid.

J. <u>Service Awards</u>. Plaintiff shall move the Court for "Service Awards" to be paid out of the Telemarketing Settlement Fund, subject to Court approval. PLAINTIFF RECOGNIZES AND UNDERSTANDS THAT THE COURT MAY NOT APPROVE ANY SERVICE AWARD TO HER WHATSOEVER AND THAT HER SUPPORT OF THE TELEMARKETING SETTLEMENT IS IN NO WAY CONTINGENT ON ANY SERVICE AWARD. PLAINTIFF REPRESENTS AND WARRANTS THAT NO PROMISES OF ANY KIND HAVE BEEN MADE TO HER WITH RESPECT TO ANY SERVICE AWARD OR OTHERWISE. American Express shall not object to a Service Award to Plaintiff so long as such award does not exceed $10,000. Such Service Award shall be paid from the Telemarketing Settlement Fund and paid to Plaintiff at the same time as the attorneys' fees and costs payments to Class Counsel. No interest shall accrue on such amounts at any time. Neither Court approval nor the amount of the Service Awards is a condition of the Telemarketing Settlement.

K. <u>Opt-Out Right/Termination</u>.

1. <u>Opt-Out Requirements</u>. Persons in the Telemarketing Settlement Class may request exclusion from the Telemarketing Settlement by sending a written request to the Claims Administrator at the address designated in the Class Notice no later than the Opt-Out and Objection Deadline. Exclusion requests must: (a) be personally signed by the person in the Telemarketing Settlement Class who is requesting exclusion; (b) include the full name and address of the person in the Telemarketing Settlement Class requesting exclusion; and (c) include the following statement: "I/we request to be excluded from the Telemarketing Settlement in the <u>Callentine</u> action." No request for exclusion will be valid unless all of the information described above is included. No person in the Telemarketing Settlement Class, or any person

acting on behalf of or in concert or participation with that person (including, but not limited to, an attorney) in the Telemarketing Settlement Class, may exclude any other person or any group of persons from the Telemarketing Settlement Class. If a Telemarketing Settlement Class Member is also a Debt Collection Settlement Class Member and he or she wishes to opt out of both or either of this Telemarketing Settlement and/or the Debt Collection Settlement, he or she must submit separate exclusion requests pursuant to each settlement.

2.      <u>Retention of Exclusions</u>. The Claims Administrator will retain a copy of all requests for exclusion and will, upon written request, provide copies of any such requests to counsel for the Parties. Class Counsel will keep any such opt-out information confidential and use it only for purposes of determining whether a person in the Telemarketing Settlement Class has properly opted out.

3.      <u>Right To Terminate For Excessive Opt-Outs</u>. All Telemarketing Settlement Class Members will be bound by all determinations and judgments in the Action. In the event that the number of persons in the Telemarketing Settlement Class who validly and timely submit opt-out requests exceeds 500, American Express, in its sole discretion, retains the right, but not the obligation, to terminate the Telemarketing Settlement. American Express shall inform Class Counsel within thirty (30) days after it is advised in writing that the number of valid opt-out requests is higher than 500 as to whether it will exercise the right of termination. In the event that the Telemarketing Settlement is terminated pursuant to this provision, the Parties will be returned to the *status quo ante* as if no settlement had been negotiated or entered into.

4.      <u>Right To Terminate For Lack Of Approval Of Debt Collection Settlement</u>. Approval of the Telemarketing Settlement is not contingent upon the approval of the Debt Collection Settlement. However, American Express retains the right, but not the obligation, to terminate the Telemarketing Settlement in the event the Debt Collection Settlement is not final. In the event that the Telemarketing Settlement is terminated pursuant to this Agreement, the

LA 51998058

Parties will be returned to the *status quo ante* as if no settlement had been negotiated or entered into.

        L.    <u>Objections To The Telemarketing Settlement</u>.

        1.    <u>Right To Object</u>.  Any Telemarketing Settlement Class Member may appear at the Final Approval Hearing to object to the proposed Telemarketing Settlement and/or to the application of Class Counsel for an award of attorneys' fees and costs and/or a Service Award, but only if the Telemarketing Settlement Class Member has first filed a written objection with the Clerk of Court, in accordance with the requirements set forth below, by the Opt-Out and Objection Deadline.  Any Telemarketing Settlement Class Member who does not provide a written objection in the manner described in this Section shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Telemarketing Settlement or the award of any attorneys' fees and costs and/or Service Award.  Further, any Telemarketing Settlement Class Member who intends to appear at the Final Approval Hearing must file and serve on all parties a Notice of Intention to Appear with the Court.  If a Telemarketing Settlement Class Member is also a Debt Collection Settlement Class Member and he or she wishes to object to both or either of this Telemarketing Settlement and/or the Debt Collection Settlement, he or she must submit separate objections pursuant to each settlement.

        2.    <u>Objection Requirements</u>.  To be heard at the Final Approval Hearing, the Telemarketing Settlement Class Member must make any objection in writing and file it with the Court by the Opt-Out and Objection Deadline.  The objection must also be mailed to each of the following, postmarked no later than the last day to file the objection: (a) Class Counsel – LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, Daniel M. Hutchinson, 275 Battery Street, 29th Floor, San Francisco, CA 94111; and (b) American Express's Counsel – Julia B. Strickland, Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067.  An objection must:  (a) attach documents establishing, or provide information sufficient to allow the

22

Parties to confirm, that the objector is a Telemarketing Settlement Class Member, including providing the cellular telephone number called; (b) include a statement of such Telemarketing Settlement Class Member's specific objections; (c) state the grounds for objection, including that the objector is objecting to the Telemarketing Settlement, as well as identify any documents which such objector desires the Court to consider; and (d) if the Telemarketing Settlement Class Member is represented by an attorney, list all other cases in which the Class Member has filed an objection.

M.    <u>Final Approval</u>.  Following completion of the Class Notice process and within 30 days following expiration of the Opt-Out and Objection Period, Plaintiff shall request that the Court enter the Final Approval Order in the form attached hereto as <u>Exhibit 6</u>, which shall specifically include provisions that: (a) finally approve the Telemarketing Settlement as fair, reasonable and adequate to the Telemarketing Settlement Class; (b) find that the Class Notice as given was the best notice practicable under the circumstances, is due and sufficient notice to the Telemarketing Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (c) approve the plan of distribution for the Telemarketing Settlement Fund and any interest accrued thereon; (d) finally certify the Telemarketing Settlement Class; (e) confirm that  the Releasing Parties have released all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims against the Released Parties; and (f) dismiss the Action with prejudice, without costs to any party, except as provided in this Agreement, and subject to the Court retaining continuing jurisdiction over the Parties and the Telemarketing Settlement Fund for the purpose of enforcement of the terms of this Agreement.

N.    <u>Dismissal</u>.  Upon entry of the Final Approval Order, the Action shall be dismissed with prejudice as to Plaintiff and all Telemarketing Settlement Class Members.

O.    <u>Participation In Telemarketing Settlement Has No Effect On Right To Participate In Debt Collection Settlement</u>.  Being a Debt Collection Settlement Class Member, submitting

a claim in the Debt Collection Settlement, opting out of the Debt Collection Settlement or objecting to the Debt Collection Settlement does not prohibit the Telemarketing Settlement Class Member from submitting a claim, opting out or objecting with respect to this Telemarketing Settlement.

P.   No Admissions.   American Express expressly disclaims and denies any wrongdoing or liability whatsoever.  The American Express TCPA Settlements, and any and all negotiations, statements, documents, and/or proceedings in connection with the American Express TCPA Settlements, shall not be construed or deemed to be evidence of an admission or concession by the Released Parties of any liability or wrongdoing and shall not be construed or deemed to be evidence of an admission or concession that any person suffered compensable harm or is entitled to any relief.  Neither the American Express TCPA Settlements, nor any act performed or document executed pursuant to or in furtherance of the American Express TCPA Settlements:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing by or liability of the Released Parties; (b) is or may be deemed to be or may be used in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal as an admission or evidence of any fault or omission of the Released Parties; or (c) is or may be deemed to be a waiver of American Express's right to seek to enforce any arbitration provision in other cases or against persons in the Telemarketing Settlement Class who opt out of the American Express TCPA Settlements.  In addition, neither the fact of, nor any documents relating to, American Express' withdrawal from the American Express TCPA Settlements, any failure of the Court to approve the American Express TCPA Settlements and/or any objections or interventions may be used as evidence for any purpose whatsoever.  The Released Parties may file the Settlement Agreement and/or the judgment in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral

24

estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or any other defense or counterclaim.

       Q.    <u>No Publicity Beyond Notice Procedures</u>.  Unless the Parties agree otherwise in writing, and with the exception of a notation of the existence of the settlement on Class Counsel's respective websites and/or firm resumes, Class Counsel and/or Plaintiff agree not to issue press releases or initiate any public statements regarding the American Express TCPA Settlements, with the exception of the Notices.  No party shall make any statements of any kind to any third party regarding the American Express TCPA Settlements prior to filing a motion for preliminary approval with the Court, with the exception of the Claims Administrator.  The Parties may make public statements to the Court as necessary to obtain preliminary or final approval of the American Express TCPA Settlements and Class Counsel will not be prohibited from communicating with any person in the Telemarketing Settlement Class regarding the Action or the American Express TCPA Settlements.  In all communications, all Parties must comply with all confidentiality agreements in the Action and not disclose information that is not a part of the public record.  All Parties shall refrain from disparaging any of the other parties or counsel publicly or taking any public action designed or reasonably foreseeable to cause harm to the public perception of any of the Released Parties or counsel regarding any issue related in any way to the Action or the American Express TCPA Settlements.

## IV.    <u>GENERAL PROVISIONS</u>

       A.    <u>Settlement Conditioned Upon Approval</u>.  The Telemarketing Settlement is conditioned upon entry of the Preliminary Approval Order and Final Approval Order without material modification by the Court.  In the event of failure to obtain any of the required provisions of such orders, including, but not limited to, the denial of any motion seeking preliminary or final approval, the Parties will return, without prejudice, to the <u>status quo ante</u> as if no Telemarketing Settlement had been negotiated or entered into and this Agreement, the Telemarketing Settlement and their existence shall be inadmissible to establish any fact

relevant to any alleged liability of the Released Parties for the matters alleged in the Action or for any other purpose.

B. <u>Evidentiary Preclusion</u>. In order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, the Released Parties may file the Settlement Agreement and/or the judgment in any action or proceeding that may be brought against them.

C. <u>Confidentiality</u>. The terms of this Telemarketing Settlement, including the fact of the proposed Telemarketing Settlement, shall remain completely confidential until all documents are executed and a motion for preliminary approval of the Telemarketing Settlement is filed with the Court; provided, however, that the Parties may jointly report the pendency of the mediation and/or Settlement to the Court in the Action, and to potential claims administrators. American Express may, at its sole discretion, disclose the terms of this Telemarketing Settlement to its auditors and other parties as reasonably necessary to maintain normal business operations and have the Telemarketing Settlement internally effectuated.

D. <u>Future Changes In Laws Or Regulations</u>. To the extent Congress, the Federal Communications Commission or any other relevant regulatory authority promulgates different requirements under the Telephone Consumer Protection Act, 47 U.S.C. § 227, <u>et seq</u>., or any other law or regulatory promulgation that would govern any conduct affected by the Settlement, those laws and regulatory provisions shall control. However, the Parties agree that changes in law shall not provide any basis for any attempt to alter, modify or invalidate this Agreement.

E. <u>Destruction of Confidential Documents</u>. It is agreed that the originals and all copies of all confidential documents and/or information subject to all confidentiality agreements and the Protective Order ("Confidential Material") shall be returned to the producing party or destroyed within sixty (60) days after the Effective Date. To the extent

26

provided to Plaintiff, this obligation extends to the list of phone numbers identified by Alorica as belonging to possible members of the Telemarketing Settlement Class.

F.    No Construction Against Drafter.  This Settlement Agreement will be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter will not apply.

G.    Entire Agreement.  This Agreement contains the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement.  This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives and approved by the Court.  The provisions of the Agreement may be waived only in a writing executed by the waiving party.  The waiver by one party of any breach of this Agreement by any other party shall not be deemed a waiver, by that party or by any other party, of any other prior or subsequent breach of this Agreement.

H.    Authority.  Plaintiff and American Express represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiff and American Express to all terms of this Agreement.   Any person executing this Agreement in a representative capacity represents and warrants that he or she has done so freely and he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

I.    No Assignment.  No party to this Agreement has heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, or cause or causes of action disposed of by this Agreement.

J.    Receipt of Advice of Counsel.  Each Party acknowledges, agrees and specifically warrants that he, she or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering this Agreement

27

LA 51998058

and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases. Each Party to this Agreement warrants that he, she, or it is acting upon his, her or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement.

      K.    <u>Agreement Binding on Successors in Interest</u>. This Agreement is binding on and shall inure to the benefit of the respective heirs, successors and assigns of the Parties.

      L.    <u>Execution In Counterparts</u>. The Parties may execute this Agreement in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

      M.    <u>Notices</u>. All notices to counsel provided for herein shall be sent by e-mail with a hard copy sent by overnight mail to:

LA 51998058

As to Plaintiff and the Telemarketing Settlement Class:

BURKE LAW OFFICES, LLC
Alexander H. Burke
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601

SMITHMARCO
Larry P. Smith
205 North Michigan Ave., Suite 2940
Chicago, IL 60601

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
275 Battery Street, 29th Floor
San Francisco, CA 94111

MEYER WILSON CO., LPA
Matthew R. Wilson
1320 Dublin Road, Ste. 100
Columbus, OH 43215

KEOGH LAW, LTD.
Keith Keogh
55 W. Monroe, Ste. 3390
Chicago, IL 60603

As to American Express:

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland
jstrickland@stroock.com
Marcos D. Sasso
msasso@stroock.com
2029 Century Park East
Los Angeles, CA 90067-3086

N.    Retention of Jurisdiction.  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Telemarketing Settlement embodied in this Agreement.

O.    Retention of Rights Regarding Telemarketing Settlement Fund.  Notwithstanding American Express's agreement to fund the full Telemarketing Settlement Fund as set forth in this Agreement, American Express does so with full reservation of its rights to indemnity, contribution and/or apportionment from Alorica, any insurer of Alorica and/or any other person from whom Alorica is entitled to indemnity.  By entering into the Agreement, American

29

Express reserves its rights regarding indemnity or insurance contribution and/or apportionment with respect to the Telemarketing Settlement Fund.

      P.   <u>Confirmatory Discovery</u>.  The Parties agree that Plaintiff will be entitled to limited confirmatory discovery surrounding topics including, but not limited to, the estimated size of the Telemarketing Settlement Class and the method of determining any persons who will receive direct notice of the Telemarketing Settlement.  Plaintiff and Class Counsel agree to work cooperatively with American Express to assure that confirmatory discovery is timely completed, not overbroad and does not compromise the privacy of American Express's customers, employees or third parties.  American Express reserves all rights to object to the form or substance of any confirmatory discovery, as necessary.  The confirmatory discovery, responses thereto, and deposition testimony, shall be used only in connection with this settlement of the Action and shall not be used for any other purpose in connection with the Action or otherwise.  The Parties agree that the confirmatory discovery, responses thereto and deposition testimony are settlement communications within the meaning of Rule 408 of the Federal Rules of Evidence.

      IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as follows:

**PLAINTIFF:**

Joetta Callentine

Dated: June 29th, 2016

**AMERICAN EXPRESS CENTURION BANK:**

By: _____

Dated: June __, 2016

Its: _____

30

Express reserves its rights regarding indemnity or insurance contribution and/or apportionment with respect to the Telemarketing Settlement Fund.

      P.    <u>Confirmatory Discovery</u>.  The Parties agree that Plaintiff will be entitled to limited confirmatory discovery surrounding topics including, but not limited to, the estimated size of the Telemarketing Settlement Class and the method of determining any persons who will receive direct notice of the Telemarketing Settlement.  Plaintiff and Class Counsel agree to work cooperatively with American Express to assure that confirmatory discovery is timely completed, not overbroad and does not compromise the privacy of American Express's customers, employees or third parties.  American Express reserves all rights to object to the form or substance of any confirmatory discovery, as necessary.  The confirmatory discovery, responses thereto, and deposition testimony, shall be used only in connection with this settlement of the Action and shall not be used for any other purpose in connection with the Action or otherwise.  The Parties agree that the confirmatory discovery, responses thereto and deposition testimony are settlement communications within the meaning of Rule 408 of the Federal Rules of Evidence.

      IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as follows:

**PLAINTIFF:**


_____                      Dated: June ___, 2016
Joetta Callentine


**AMERICAN EXPRESS CENTURION
BANK:**


By: _____                    Dated: June 30, 2016

Its: _____

30

**AMERICAN EXPRESS COMPANY:**

By: _____     Dated: June 30, 2016

Its: _____

**APPROVED AS TO FORM AND
CONTENT:**

**CLASS COUNSEL**

Burke Law Offices, LLC

Dated: June ___, 2016

By: _____
    Alexander H. Burke

SMITHMARCO

By: _____     Dated: June ___, 2016
    Larry P. Smith

Lieff Cabraser Heimann & Bernstein, LLP

By: _____     Dated: June ___, 2016
    Daniel M. Hutchinson

Meyer Wilson Co., LPA

By: _____     Dated: June ___, 2016
    Matthew R. Wilson

31

**AMERICAN EXPRESS COMPANY:**

By: _____                          Dated: June ___, 2016

Its: _____

**APPROVED AS TO FORM AND
CONTENT:**

**CLASS COUNSEL**

Burke Law Offices, LLC

_____                          Dated: June 30, 2016

By:    Alexander H. Burke

SMITHMARCO

By: _____                          Dated: June ___, 2016
        Larry P. Smith

Lieff Cabraser Heimann & Bernstein, LLP

By: _____                          Dated: June ___, 2016
        Daniel M. Hutchinson

Meyer Wilson Co., LPA

By: _____                          Dated: June ___, 2016
        Matthew R. Wilson

31

**AMERICAN EXPRESS COMPANY:**

By: _____                    Dated:  June ___, 2016

Its: _____

**APPROVED AS TO FORM AND
CONTENT:**

**CLASS COUNSEL**

Burke Law Offices, LLC

    _____                    Dated:  June ___, 2016

By:   Alexander H. Burke

SMITHMARCO

By: _____                    Dated:  June ___, 2016
    Larry P. Smith

Lieff Cabraser Heimann & Bernstein, LLP

By: _____                    Dated:  June ___, 2016
    Daniel M. Hutchinson

Meyer Wilson Co., LPA

By: _____                    Dated:  June 2?, 2016
    Matthew R. Wilson

LA 51998058

Keogh Law, LTD.

By: _____          Dated:  June _30_ 2016
    Keith Keogh  Keith J. Keogh

**AMERICAN EXPRESS'S COUNSEL**

Stroock & Stroock & Lavan LLP

By:  _____          Dated:  June 30, 2016
    Julia B. Strickland

32

**EXHIBIT 1**

**CLAIM FORM**

*Ossola, et al. v. American Express Company, et al.*, U.S.D.C.
**Northern District of Illinois, Case No. 13-cv-04836**

_____, **Claims Administrator**          **Toll-Free Number: x-xxx-xxx-xxxx**
**PO Box [_____]**                                   **Website: www.xxxxxxxxxxxxxxx.com**
**[_____]**

**<<mail id>>**
**<<Name1>>**
**<<Name2>>**
**<<Address1>>**
**<<Address2>>**
**<<City>><<State>><<Zip>>**

## CLAIM FORM

**TO RECEIVE BENEFITS FROM THE TELEMARKETING SETTLEMENT, YOU MUST PROVIDE <u>ALL</u> OF THE INFORMATION BELOW AND YOU <u>MUST</u> COMPLETE THE AFFIRMATION.  IF THIS CLAIM FORM IS SUBMITTED ONLINE, YOU <u>MUST</u> SUBMIT AN ELECTRONIC SIGNATURE.**

**YOUR CLAIM FORM MUST BE <u>SUBMITTED ON OR BEFORE</u> _____.**

1. **CLAIMANT INFORMATION:**

   _____   _____   _____
   FIRST NAME                          MIDDLE NAME          LAST NAME

   _____
   ADDRESS 1

   _____
   ADDRESS 2

   _____   _____   _____  -  _____
   CITY                                                         STATE          ZIP           (optional)

   _____   _____
   TELEPHONE NUMBER(S) (where you received call(s))          E-MAIL ADDRESS (optional)

   _____
   CLASS MEMBER ID (if known)

2. **AFFIRMATION:**

   ☐       By checking this box and submitting this Claim Form, I certify that the information above is true and accurate and that, on or after July 3, 2009 through March 15, 2016, I received a telemarketing call from Alorica Inc. ("Alorica") on behalf of American Express to my cellular telephone number without my prior consent.  This Claim Form may be researched and verified by American Express and/or the Claims Administrator.

   Date: _____

**QUESTIONS? VISIT www.xxxxxxxxxxxxxxxxxxx.com OR CALL [_____]**

**EXHIBIT 2**

**MAIL NOTICE**

**Ossola, et al. v. American Express Company, et al. Settlement**
**c/o [CLAIMS ADMINISTRATOR]**
**[ADDRESS]**
**[ADDRESS]**

FIRST-CLASS
MAIL U.S.
POSTAGE PAID
PERMIT NO
1234

**NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT**

THE COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.

YOU MAY RECEIVE MONEY FROM A SETTLEMENT.

- **If you received automated telephone calls from Alorica about marketing of American Express small business charge cards on your cell phone between July 3, 2009 through March 15, 2016 your rights may be affected by this class action settlement.**
- **Plaintiff claims that these calls were improper. The court has not decided who is right or wrong. Instead the parties have agreed to settle the case to avoid the risk and cost associated with further litigation.**
- **Eligible class members who submit a valid claim form will receive a payment from the $8,250,000 settlement fund.**
- **Go to [WEBSITE] for more details.**



**John Q. Sample, Jr.**
123 Main Street
Apt. #4
New York, NY 12345-6789

**Class Member ID:** _____

**What is this?** This is a notice of a proposed settlement in a class action lawsuit *Jason Bennett v. American Express Co., et al.*, in the Northern District of Illinois, Case No. 13-cv-4836. This notice explains your legal rights.

**What is this lawsuit about?** The lawsuit alleges that between July 3, 2009 and March 15, 2016, Alorica Inc. ("Alorica") used an automatic telephone dialing system and/or an artificial or prerecorded voice to place non-emergency telemarketing phone calls to cell phones regarding the marketing of American Express small business charge and/or credit cards to potential customers. The lawsuit claims that these calls violated a law called the Telephone Consumer Protection Act and were made without the prior express consent of the persons called. American Express Company and American Express Centurion Bank (together, "American Express") deny these allegations and any wrongdoing. The Court has not ruled on the merits of Plaintiff's claims or American Express's defenses.

**Why am I getting this notice?** You were identified as someone who may be a member of the Telemarketing Settlement Class.

**What does the settlement provide?** American Express has agreed to pay a total of $8,250,000 into a Settlement Fund. The Settlement Fund will pay cash awards to Class Members who file a valid claim, pay Class Counsel's attorneys' fees and costs of up to $2,750,000 (subject to Court approval), pay Plaintiff's service award of $10,000 (subject to Court approval), pay settlement administration costs, and possibly pay a charitable contribution to _____ in the amount of any uncashed checks.

**Can I get money from the settlement?** Yes, each Class Member who submits a valid and timely Claim Form will receive a cash award. How much each Class Member receives will depend on how many people make claims that are approved. **Class Counsel estimates that the amount will be at least $50.**

**How do I get a payment?** You must complete and submit a valid Claim Form by [INSERT DATE]. The Claim Form is enclosed and available online at [INSERT URL]. You can also get a Claim Form mailed to you by calling the Settlement Administrator at 1-800-***-****. You can submit your Claim Form by mailing it to the Settlement Administrator at the address below or online at [INSERT URL].

**Do I have to be included in the settlement?** If you don't want to receive money from this settlement and you want to keep the right to sue or continue to sue American Express on your own, then you must exclude yourself from the settlement. You will not get any money

from this settlement if you exclude yourself. The Court will exclude any class member who properly requests exclusion by sending a letter requesting exclusion to the Settlement Administrator at the address in this postcard by [INSERT DATE] at the address below. That request must contain your name, address, signature and a statement that you wish to be excluded from the settlement.

**If I don't like something about the settlement, how do I tell the Court?** If you don't exclude yourself from the Telemarketing Settlement, you can object to any part of the Telemarketing Settlement. You must mail your written objection to the Court, Class Counsel and American Express's counsel by [INSERT DATE]. You may enter an appearance through an attorney if you wish, but you do not have to. Complete details about how to object are on the Settlement Website.

**What if I do nothing?** You will not be eligible for a payment. All Class Members who do not opt out will be bound by the Telemarketing Settlement and the decisions of the Court, and will release American Express and Alorica from liability for the calls.

**When is the Final Approval Hearing?** The Court will hold a hearing in this case to consider whether to approve the Telemarketing Settlement on _____, at _____, United States District Court, 219 South Dearborn Street, Chicago, Illinois, 60604. You may go to the hearing, but you do not have to.

**How do I get more information about the settlement?** This notice contains limited information about the Telemarketing Settlement. For more information, to view additional settlement documents, and to review information regarding your exclusion and objection rights and the final approval hearing, visit [INSERT URL], or call 1-800-***-****.

[INSIDE FRONT]

_____

*Mail To:*
**Ossola v. American Express
Company et al. Settlement**
c/o [CLAIMS ADMINISTRATOR]
[ADDRESS]
[ADDRESS]

Place
Stamp
Here

**CLAIM FORM**

**TO RECEIVE BENEFITS FROM THE TELEMARKETING SETTLEMENT, YOU MUST PROVIDE ALL OF THE INFORMATION BELOW AND YOU MUST COMPLETE THIS AFFIRMATION. IF THIS CLAIM FORM IS SUBMITTED ONLINE, YOU MUST SUBMIT AN ELECTRONIC SIGNATURE.**

**YOUR CLAIM FORM MUST BE <u>SUBMITTED ON OR BEFORE</u> [INSERT DATE]**
**(Claimants with privacy concerns may submit their claim online, or may mail this card in an envelope to the same address)**

1. **CLAIMANT INFORMATION:**

_____ _____ _____
FIRST NAME                MIDDLE NAME      LAST NAME

_____
ADDRESS 1

_____
ADDRESS 2

_____ _____ _____ - _____
CITY                                           STATE   ZIP           (optional)

_____ _____
TELEPHONE NUMBER(S) (where you received call(s))      E-MAIL ADDRESS (optional)

_____
CLASS MEMBER ID (if known)

2. **AFFIRMATION:**

☐        By checking this box and submitting this Claim Form, I certify that the information above is true and accurate and that, on or after July 3, 2009 through March 15, 2016, I received a telemarketing call from Alorica, Inc. ("Alorica") on behalf of American Express to my cellular telephone number without my prior consent. This Claim Form may be researched and verified by American Express and/or the Claims Administrator.

Date: _____

**QUESTIONS? VISIT [INSERT URL] OR CALL [INSERT TOLL-FREE NUMBER]**

**<u>EXHIBIT 3</u>**

**<u>E-MAIL NOTICE</u>**

EXHIBIT 3

## NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT
THE COURT AUTHORIZED THIS NOTICE.  THIS IS NOT A SOLICITATION FROM A LAWYER.

### YOU MAY RECEIVE MONEY FROM A SETTLEMENT.

- **If you received automated telephone calls  from Alorica about marketing of American Express small business charge cards on your cell phone between July 3, 2009 through March 15, 2016, your rights may be affected by this class action settlement.**
- **Plaintiff claims that these calls were improper.  The court has not decided who is right or wrong.  Instead the parties have agreed to settle the case to avoid the risk and cost associated with further litigation.**
- **Eligible class members who submit a valid claim form will receive a payment from the $8,250,000 settlement fund.**
- **Go to [WEBSITE] for more details.**

**What is this?** This is a notice of a proposed settlement in a class action lawsuit, _Ossola v. American Express Co., et al._, U.S.D.C., Northern District of Illinois, Case No. 13-cv-4836. This notice explains your legal rights.

**What is this lawsuit about?** The lawsuit alleges that between July 3, 2009 and March 15, 2016, Alorica Inc. ("Alorica") used an automatic telephone dialing system and/or an artificial or prerecorded voice to place non-emergency telemarketing phone calls to cell phones regarding the marketing of American Express small business charge and/or credit cards to potential customers.  The lawsuit claims that these calls violated a law called the Telephone Consumer Protection Act and were made without the prior express consent of the persons called.  American Express Company and American Express Centurion Bank (together, "American Express") deny these allegations and any wrongdoing.  The Court has not ruled on the merits of Plaintiff's claims or American Express's defenses.

**Why am I getting this notice?** You were identified as someone who may be a member of the Telemarketing Settlement Class.

**What does the settlement provide?**  American Express has agreed to pay a total of $8,250,000 into a Settlement Fund.  The Settlement Fund will pay cash awards to Class Members who file a valid claim, pay Class Counsel's attorneys' fees and costs of up to $2,750,000 (subject to Court approval), pay Plaintiff's service award of $10,000 (subject to Court approval), pay settlement administration costs, and possibly pay a charitable contribution to _____ in the amount of any uncashed checks.

**Can I get money from the settlement?**  Yes, each Class Member who submits a valid and timely Claim Form will receive a cash award.  How much each Class Member receives will depend on how many people make claims that are approved.  **Class Counsel estimates that the amount will be at least $50.**

**How do I get a payment?**  You must complete and submit a valid Claim Form by [INSERT DATE].  The Claim Form is enclosed and available online at [INSERT URL].  You can also get a Claim Form mailed to you by calling the Settlement Administrator at 1-800-***-****.  You can submit your Claim Form by mailing it to the Settlement Administrator at the address below or online at [INSERT URL].

**Do I have to be included in the settlement?**  If you don't want to receive money from this settlement and you want to keep the right to sue or continue to sue American Express on your own, then you must exclude yourself from the settlement. You will not get any money from this settlement if you exclude yourself.  The Court will exclude any class member who properly requests exclusion by sending a letter requesting exclusion to the Settlement Administrator at the address on this postcard by [INSERT

EXHIBIT 3

DATE] at the address below.  That request must contain your name, address, signature and a statement that you wish to be excluded from the settlement.

**If I don't like something about the settlement, how do I tell the Court?**  If you don't exclude yourself from the Telemarketing Settlement, you can object to any part of the Telemarketing Settlement.  You must mail your written objection to the Court, Class Counsel and American Express's counsel by [INSERT DATE].  You may enter an appearance through an attorney if you wish, but you do not have to. Complete details about how to object are on the Settlement Website.

**What if I do nothing?**  You will not be eligible for a payment. All Class Members who do not opt out will be bound by the Telemarketing Settlement and the decisions of the Court, and will release American Express and Alorica from liability for the calls.

**When is the Final Approval Hearing?**  The Court will hold a hearing in this case to consider whether to approve the Telemarketing Settlement on _____, at _____, United States District Court, 219 South Dearborn Street, Chicago, Illinois, 60604.  You may go to the hearing, but you do not have to.

**How do I get more information about the settlement?**  This notice contains limited information about the Telemarketing Settlement. For more information, to view additional settlement documents, and to review information regarding your exclusion and objection rights and the final approval hearing, visit [INSERT URL], or call 1-800-***-****.

**EXHIBIT 4**

**WEBSITE NOTICE**

LA 51988254
LA 51998058

*Ossola, et al. v. American Express Company, et al.*,
**United States District Court for the Northern District of Illinois,
Case No. 13-cv-4836**

**If you received automated calls to your cell phone on behalf of American Express from July 3, 2009 through March 15, 2016, you may be entitled to benefits under a class action settlement.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- **This notice concerns the Telemarketing Settlement that resolves claims in the lawsuit *Ossola v. American Express Co., et al.*, U.S.D.C., Northern District of Illinois, Case No. 13-cv-4836.**

- **The Telemarketing Settlement will provide a total of $8,250,000 (the "Telemarketing Settlement Fund") to fully settle and release claims of persons to whom calls were placed to their cell phones by Alorica Inc. ("Alorica") on behalf of American Express using an automatic telephone dialing system or prerecorded or artificial voice during the time period set forth above, where the call was regarding marketing of American Express small business charge and/or credit cards to potential customer (the "Telemarketing Settlement Class").**

- **Plaintiff Joetta Callentine ("Plaintiff") alleges that these calls violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). America Express Company and American Express Centurion Bank (together, "American Express") and its vendor, Alorica, deny Plaintiff's allegations and deny any wrongdoing whatsoever. By entering into the Telemarketing Settlement, American Express has not conceded the truth or validity of any of the claims against it.**

- **The Telemarketing Settlement Fund shall be used to pay all amounts related to the Telemarketing Settlement, including awards to Telemarketing Settlement Class Members who submit a valid and timely claim form to receive payment ("Claim Form"), attorneys' fees and costs to attorneys representing Plaintiff and the Telemarketing Settlement Class ("Class Counsel"), any service award to Plaintiff and the costs of notice and administration of the Telemarketing Settlement. Monies remaining in the Telemarketing Settlement Fund if checks are uncashed will be distributed to _____ , a charity approved by the Court only if subsequent distributions to Telemarketing Settlement Class Members are not economically feasible. No amount of the Telemarketing Settlement Fund will revert to American Express.**

- **Your rights and options relating to the Telemarketing Settlement, and the deadlines to exercise them, are explained in this Notice. Your legal rights are affected whether you act or don't act. Read this Notice carefully.**

YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:

LA 51998037

EXHIBIT 4

| | |
|---|---|
| SUBMIT A CLAIM FORM | If you are eligible to submit a Claim and submit a valid Claim Form by _____, you will receive a payment and will give up your rights to sue American Express, Alorica and/or any other released parties on a released claim. Claim Forms may be submitted by mail to _____, through the settlement website by clicking _____ or by calling _____. |
| EXCLUDE YOURSELF OR "OPT-OUT" OF THE SETTLEMENT | If you ask to be excluded, you will not receive a payment. This is the only option that allows you to pursue your own claims against American Express, Alorica and/or other released parties in the future. The deadline for excluding yourself is _____. |
| OBJECT TO THE SETTLEMENT | Write to the Court about why you believe the settlement is unfair in any respect. The deadline for objecting is _____. To obtain a benefit from the Telemarketing Settlement, you must still submit a Claim Form. If you submit only an objection, you will not receive any benefit from the Telemarketing Settlement and you will give up your rights to sue American Express, Alorica and/or any other released parties on a released claim. |
| DO NOTHING | If you do nothing, you will not receive any monetary award and you will give up your rights to sue American Express and/or any other released parties on a released claim. |
| GO TO THE FINAL APPROVAL HEARING | Ask to speak in Court about the fairness of the Telemarketing Settlement. To speak at the Final Approval Hearing, you must file a document which complies with the requirements set forth on the Settlement Website. |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court still has to decide whether to approve the Telemarketing Settlement. Payments will be made if the Court approves the Telemarketing Settlement and after any appeals are resolved. Please be patient.

EXHIBIT 4
**BASIC INFORMATION**

## 1. What is the purpose of this Notice?

The purpose of this Notice is to inform you that a proposed Telemarketing Settlement has been reached in the lawsuit entitled *Ossola, et al. v. American Express Company, et al.*, U.S.D.C. Northern District of Illinois, Case No. 13-cv-4836 (N.D. Il.). Because your rights will be affected by this Settlement, it is extremely important that you read this Notice carefully.

## 2. What does it mean if I received an email or postcard about this settlement?

If you received an email or postcard describing the Telemarketing Settlement, it is because Alorica's records indicate that you may be a member of the Telemarketing Settlement Class in this action.

## 3. What is this class action lawsuit about?

In a class action, one or more people called class representatives (here, Plaintiff) sue on behalf of people who allegedly have similar claims. This group is called a class and the persons included are called class members. One court resolves the issues for all of the class members, except for those who exclude themselves from the class.

Here, Plaintiff claims American Express and its vendor, Alorica, violated the TCPA by having Alorica place calls on behalf of American Express to cellular telephones between July 3, 2009 and March 15, 2016, through the use of an automatic telephone dialing system, predictive dialer or an artificial or prerecorded voice without your express consent. American Express denies these allegations and denies any claim of wrongdoing. The Court has conditionally certified the Telemarketing Settlement Class for settlement purposes only. The Honorable John Z. Lee is in charge of this action.

## 4. Why is there a settlement?

The Court has not decided in favor of Plaintiff or American Express. Instead, both sides agreed to the Telemarketing Settlement, thereby avoiding the risk and cost of further litigation and ensuring Telemarketing Settlement Class Members will receive some compensation for their claims. Plaintiff and Class Counsel think the Telemarketing Settlement is best for all persons in the Telemarketing Settlement Class.

## WHO IS IN THE TELEMARKETING SETTLEMENT CLASS?

## 5. How do I know if I am a part of the Telemarketing Settlement Class?

The Court has certified a Telemarketing Settlement Class for settlement purposes only. The Telemarketing Settlement Class is defined as:

All persons nationwide within the United States who, on or after July 3, 2009 through March 15, 2016, received a telemarketing call from Alorica Inc. (or its agents or

EXHIBIT 4

affiliates) on behalf of American Express, in connection with the marketing of American Express small business charge and/or credit cards to potential customers, to a cellular telephone number through the use of an automatic telephone dialing system, predictive dialer and/or an artificial or prerecorded voice.

"Telemarketing Settlement Class Member" is defined as any person in the Telemarketing Settlement Class who is not validly excluded from the Telemarketing Settlement Class.  If you are still not sure whether you are included, you can visit other sections of the Settlement Website, www.***.com, you may write to the Claims Administrator at ***, c/o _____, or you may call the Toll-Free Settlement Hotline, 1-_____, for more information.

## THE LAWYERS REPRESENTING YOU

### 6.  Do I have lawyers in this case?

The Court has appointed the law firms of Burke Law Offices, LLC, Keogh Law, Ltd., Lieff Cabraser Heimann & Bernstein, LLP, SmithMarco P.C. and Meyer Wilson Co., LPA, as Class Counsel to represent you and the other persons in the Telemarketing Settlement Class.  You will not be personally charged by these lawyers.

### 7.  How will Class Counsel be paid?

Class Counsel will ask the Court to approve payment of up to $2,750,000 (33-1/3%) of the $8,250,000 Telemarketing Settlement Fund to them for attorneys' fees, plus actual litigation expenses.  Class Counsel also will ask the Court to approve payment of up to $10,000 to Plaintiff for her services as Class Representative.  The Court may award less than these amounts.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 8.  What does the settlement provide?

**Telemarketing Settlement Fund**.  American Express will pay the total amount of $8,250,000 into a the Telemarketing Settlement Fund, which will cover:  (1) cash payments to Telemarketing Settlement Class Members who submit timely and valid Claim Forms; (2) an award of attorneys' fees and costs to Class Counsel, in an amount not to exceed $2,750,000 (33-1/3%) of the Settlement Fund plus actual litigation expenses, as approved by the Court; (3) a service award to Plaintiff, in an amount not to exceed $10,000, as approved by the Court; (4) the costs of notice and administration of the Telemarketing Settlement in an amount not to exceed $697,000; and (5) if there are any uncashed checks, a charitable contribution, approved by the Court.

**Cash Payments**.  All Telemarketing Settlement Class Members are eligible to submit a Claim Form and receive a cash payment.  To submit a Claim Form, follow the procedures described under Question 11 below.

EXHIBIT 4

**No Portion of the Telemarketing Settlement Fund Will Return to American Express**. Any money remaining in the Telemarketing Settlement Fund after paying all valid and timely claims to Telemarketing Settlement Class Members, attorneys' fees and costs to Class Counsel, any service award to Plaintiff and the costs of notice and administration of the Telemarketing Settlement will be paid either: (1) in a second distribution to Telemarketing Settlement Class Members (i) who submitted valid and timely Claim Forms and whose initial payments were cashed, and (ii) who, prior to the first distribution, submitted untimely, but otherwise valid Claims; or (2) if there are not enough funds to justify a second distribution, the remaining funds will be donated to _____, a *cy pres* recipient approved by the Court. No portion of the Telemarketing Settlement Fund will return to American Express.

## 9. How much will my payment be?

Your share of the Telemarketing Settlement Fund will depend on the number of valid Claim Forms that Telemarketing Settlement Class Members submit. **Class counsel estimates that the amount will be at least $50.**

## 10. What am I giving up to stay in the Telemarketing Settlement Class?

Unless you exclude yourself from the Telemarketing Settlement, you will be part of the Telemarketing Settlement Class and will be bound by the release of claims in the Telemarketing Settlement. This means that if the Telemarketing Settlement is approved, you cannot rely on any Released Claim to sue or continue to sue, on your own or as part of any other lawsuit, American Express, Alorica and/or any other Released Parties, as explained in the settlement agreement. It also means that all of the Court's orders will apply to you and legally bind you. Unless you exclude yourself from the Telemarketing Settlement, you will agree to release American Express, Alorica and any other Released Parties, as defined in the settlement agreement, from any and all claims that arise from the automated calls to your cellular telephone at issue in this action.

In summary, the Release includes, without limitation, all claims that arise out of the use by American Express or any of its agents or affiliates, acting for or on their behalf, of an "automatic telephone dialing system" and/or an "artificial or prerecorded voice" to make "calls" to a cellular telephone (to the fullest extent that those terms are used, defined or interpreted by the TCPA, relevant regulatory or administrative promulgations and case law) to make collection calls to a cellular telephone number, by or on behalf of the Released Parties, including, but not limited to, claims under or for violation of the TCPA, and the regulations promulgated thereunder and relevant case law, and all claims for violation of any other state or federal statutory or common law that regulates, governs, prohibits or restricts the making, placing or initiating of calls using an automatic telephone dialing system and/or an artificial or prerecorded voice.

If you have any questions about the Release or what it means, you can speak to Class Counsel, listed under Question 6, for free, or you can, at your own expense, talk to your own lawyer. The Release does not apply to persons potentially in the Telemarketing Settlement Class who timely exclude themselves.

EXHIBIT 4

**HOW TO OBTAIN A PAYMENT**

| **11. How can I get a payment?** |
|---|

To receive a payment, you must submit a Claim Form.  You may get a Claim Form on the Settlement Website, www.***.com, or by calling the Toll-Free Settlement Hotline, _____.  **Read the instructions carefully, fill out the form completely and accurately and submit it**.  To be valid, the Claim Form must be completed fully and accurately and submitted timely.  The Claim Form must also include the written, electronic or oral affirmation set forth on the Claim Form.  A Claim Form may be submitted by mail to the Claims Administrator at: ***, c/o _____, or via the Settlement Website [click here].

If you are submitting your claim via the Settlement Website, it must be submitted no later than ***.  If you are mailing your Claim Form to the Claims Administrator, it must be postmarked by that date.

**WHEN WILL I RECEIVE MY SETTLEMENT PAYMENT?**

| **12. When would I receive a settlement payment?** |
|---|

The Court will hold a Final Approval Hearing on *** to decide whether to approve the Telemarketing Settlement.  If the Court approves the Telemarketing Settlement, after that, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Everyone who sends in a Claim Form will be informed of the progress of the settlement through information posted on the Settlement Website at www.***.com.  Please be patient.

**EXCLUDING YOURSELF FROM THE SETTLEMENT**

| **13. How do I get out of the settlement?** |
|---|

If you want to keep the right to sue or continue to sue American Express, Alorica or a Released Party, as defined in the settlement agreement, then you must take steps to get out of the Telemarketing Settlement Class.  This is called excluding yourself from, or opting-out of, the Telemarketing Settlement Class.

To exclude yourself from the Telemarketing Settlement, you must send an exclusion request to the claims administrator.  To be valid, an exclusion request must:  (i) be signed by the person in the Telemarketing Settlement Class who is requesting exclusion; (ii) include the full name and address of the person in the Telemarketing Settlement Class requesting exclusion; and (iii) include the following statement: "I/we request to be excluded from the Telemarketing Settlement in the Ossola action."  No request for exclusion will be valid unless all of the information described above is included.  No person in the Telemarketing Settlement Class, or any person acting on behalf of or in concert or participation with that person in the Telemarketing Settlement Class, may exclude any other person or any group of persons from the Telemarketing Settlement Class.

LA 51998037

EXHIBIT 4

**To be valid, you must mail your exclusion request postmarked no later than \*\*\* to the Claims Administrator at \*\*\*, c/o _____.**

### 14. If I do not exclude myself, can I sue American Express, and/or Alorica for the same thing later?

No. If you do not exclude yourself, you give up any right to sue (or continue to sue) American Express, Alorica or any Released Parties for the claims that the Telemarketing Settlement resolves.

### 15. If I exclude myself, can I get a benefit from this settlement?

No. If you ask to be excluded, you will not be able to submit a Claim Form for a settlement payment and you cannot object to the Telemarketing Settlement.

## OBJECTING TO THE SETTLEMENT

### 16. How do I tell the Court that I do not think the settlement is fair?

If you are in the Telemarketing Settlement Class, you can object to the Telemarketing Settlement or any part of the Telemarketing Settlement that you think the Court should reject, and the Court will consider your views. If you do not provide a written objection in the manner described below, you shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Telemarketing Settlement or the award of any attorneys' fees and costs and/or service awards.

To object, you must make your objection in writing, stating that you object to the Telemarketing Settlement in Ossola, et al. v. American Express Company, et al. To be considered by the Court, the written objection must: (a) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Telemarketing Settlement Class Member, including providing the cellular telephone number called; (b) include a statement of such Telemarketing Settlement Class Member's specific objections; (c) state the grounds for objection, as well as identify any documents which the objector desires the Court to consider; and (d) if the Telemarketing Settlement Class Member is represented by an attorney, list all other cases in which the Telemarketing Class Member has filed an objection.

**To be considered, you must file your objections with the Court and mail your objections to the addresses below no later than \*\*\*.**

For Plaintiffs:                                              For American Express:

Lieff Cabraser Heimann Bernstein, LLP     Stroock & Stroock & Lavan LLP
Daniel M. Hutchinson, Esq.                         Julia B. Strickland, Esq.
275 Batter Street, 29th Floor                        2029 Century Park East
San Francisco, CA 94111                             Los Angeles, CA 90067-3086

EXHIBIT 4

**Even if you timely and properly object, to obtain a benefit from this settlement, you must submit a Claim Form. If you object but fail to submit a Claim Form, you will not receive any monetary award.**

| **17. What is the difference between objecting and excluding yourself?** |
| --- |

Objecting is telling the Court that you do not like something about the Telemarketing Settlement. You can object only if you stay in the Telemarketing Settlement Class. Excluding yourself means that you do not want to be part of the Telemarketing Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## IF YOU DO NOTHING

| **18. What happens if I do nothing at all?** |
| --- |

If you do nothing, you will not receive any monetary award and you will give up your rights to sue American Express, Alorica and/or any other Released Parties on a Released Claim. For information relating to what rights you are giving up, see Question 10.

## THE FINAL APPROVAL HEARING

| **19. When and where will the Court decide whether to approve the settlement?** |
| --- |

The Court will hold a Final Approval Hearing at *** a/p.m. on *** at the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, 60604, Courtroom 1225. At this hearing, the Court will consider whether the Telemarketing Settlement is fair, reasonable and adequate. If there are valid objections that comply with the requirements in Question 14 above, the Court also will consider them and will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel and Plaintiff.

The Final Approval Hearing may be moved to a different date or time without additional notice, so it is a good idea to check the Settlement Website for updates.

| **20. Do I have to come to the hearing?** |
| --- |

No. Class Counsel will appear on behalf of the Telemarketing Settlement Class. But, you are welcome to come, or have your own lawyer appear, at your own expense.

| **21. May I speak at the hearing?** |
| --- |

You may ask the Court for permission to speak at the Final Approval Hearing, but only in connection with an objection that you have timely submitted to the Court according to the procedure set forth in Question 16 above. To speak at the Final Approval Hearing, you must also file a document with the Court stating your intention to appear. For this document to be

EXHIBIT 4

considered, it must include your name, address, telephone number and your signature. The document must be filed with the Court no later than ***. You cannot speak at the hearing if you exclude yourself from the Telemarketing Settlement.

## GETTING MORE INFORMATION

**22. How do I get more information?**

This notice is only a summary of the proposed settlement. You can get a copy of the settlement agreement by visiting the Settlement Website, www.***.com, or you can write to the address below or call the Toll-Free Settlement Hotline, _____. You can also contact Class Counsel with any questions at *** or ***.

**DO NOT CALL OR WRITE TO THE COURT, THE CLERK OF THE COURT, AMERICAN EXPRESS OR AMERICAN EXPRESS'S COUNSEL, ALORICA OR ALORICA'S COUNSEL ABOUT THE TELEMARKETING SETTLEMENT.**

# **EXHIBIT 5**

# **PRELIMINARY APPROVAL ORDER**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER OSSOLA, JOETTA CALLENTINE and SCOTT DOLEMBA, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:13-cv-04836 **[PROPOSED] ORDER (1) CONDITIONALLY CERTIFYING TELEMARKETING SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION TELEMARKETING SETTLEMENT, (3) APPROVING NOTICE PLAN AND (4) SETTING FINAL APPROVAL HEARING FOR TELEMARKETING SETTLEMENT** |
| Plaintiffs, | | |
| vs. | | |
| AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS CENTURION BANK, AND WEST ASSET MANAGEMENT, INC. | | |
| Defendants. | | |

This matter came before the Court on Plaintiff's Motion for Preliminary Approval of the proposed class action settlement (the "Telemarketing Settlement") in the case entitled <u>Ossola, et al. v. American Express Company, et al.</u>, United States District Court for the Northern District of Illinois Case No. 13-04836 (the "Action"). The Action is brought by plaintiff Joetta Callentine ("Plaintiff"), individually and on behalf of all others similarly situated, against defendants American Express Company, American Express Centurion Bank (together, "American Express") and West Asset Management, Inc. ("WAM" and, together with American Express and Plaintiff, the "Parties"). Based on this Court's review

of the Parties' Settlement Agreement and Release (the "Telemarketing Agreement"), Plaintiff's Motion for Preliminary Approval of Telemarketing Settlement, and the arguments of counsel, THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:

1.  <u>Settlement Terms</u>.  Unless otherwise defined herein, all terms in this Order shall have the meanings ascribed to them in the Telemarketing Agreement.

2.  <u>Jurisdiction</u>.  The Court has jurisdiction over the subject matter of the Action, the Parties, and all persons in the Telemarketing Settlement Class.

3.  <u>Scope of Telemarketing Settlement</u>.  The Telemarketing Agreement resolves all claims for the Telemarketing Class alleged in the Class Action Complaint filed in the Northern District of Illinois on July 3, 2013, as amended on October 25, 2013, January 24, 2014 and June 10, 2014.  <u>See</u> Dkts. 1, 34, 71 and 126.

4.  <u>Preliminary Approval of Proposed Telemarketing Settlement</u>.  The Court has conducted a preliminary evaluation of the Telemarketing Settlement as set forth in the Telemarketing Agreement.  Based on this preliminary evaluation, the Court finds that:  (a) the Telemarketing Settlement is fair, reasonable and adequate, and within the range of possible approval; (b) the Telemarketing Agreement has been negotiated in good faith at arm's length between experienced

2

attorneys familiar with the legal and factual issues of this case; and (c) with respect to the forms of notice of the material terms of the Telemarketing Settlement to persons in the Telemarketing Settlement Class for their consideration (Exs. 2, 3 and 4 to the Agreement), that notice is appropriate and warranted. Therefore, the Court grants preliminary approval of the Telemarketing Settlement.

5. <u>Class Certification for Settlement Purposes Only</u>. The Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, conditionally certifies, for purposes of this Telemarketing Settlement only, the following Telemarketing Settlement Class:

> All persons nationwide within the United States who, on or after July 3, 2009 through March 15, 2016, received a telemarketing call from Alorica Inc. (or its agents or affiliates) on behalf of American Express, in connection with the marketing of American Express small business charge and/or credit cards to potential customers, to a cellular telephone number through the use of an automatic telephone dialing system, predictive dialer and/or artificial or prerecorded voice.

6. In connection with this conditional certification, the Court makes the following preliminary findings:

(a) The Telemarketing Settlement Class appears to be so numerous that joinder of all members is impracticable;

3

(b)     There appear to be questions of law or fact common to the Telemarketing Settlement Class for purposes of determining whether the Telemarketing Settlement should be approved;

(c)     Plaintiff's claims appear to be typical of the claims being resolved through the Telemarketing Settlement;

(d)     Plaintiff appears to be capable of fairly and adequately protecting the interests of all members of the Telemarketing Settlement Class in connection with the Telemarketing Settlement;

(e)     For purposes of determining whether the Telemarketing Settlement is fair, reasonable and adequate, common questions of law and fact appear to predominate over questions affecting only individual persons in the Telemarketing Settlement Class; accordingly, the Telemarketing Settlement Class appears to be sufficiently cohesive to warrant settlement by representation; and

(f)     For purposes of the Telemarketing Settlement, certification of the Telemarketing Settlement Class appears to be superior to other available methods for the fair and efficient settlement of the claims of the Telemarketing Settlement Class.

4

7.　　<u>Class Representative</u>.  The Court appoints Plaintiff to act as class representative of the Telemarketing Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

8.　　<u>Class Counsel</u>.  The Court appoints Burke Law Offices, LLC, Keogh Law, Ltd., Lieff Cabraser Heimann & Bernstein, LLP, SmithMarco P.C. and Meyer Wilson Co., LPA as Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure.

9.　　<u>Final Approval Hearing</u>.  At _____ _.m. on _____, 2016, in Courtroom 1225 of United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, 60604, or at such other date and time later set by Court Order, this Court will hold a Final Approval Hearing on the fairness, adequacy and reasonableness of the Telemarketing Agreement and to determine whether (a) final approval of the Telemarketing Settlement embodied in the Telemarketing Agreement should be granted, and (b) Class Counsel's application for attorneys' fees and expenses, and service award to Plaintiff, should be granted, and in what amount.  No later than _____, 2016, which is thirty (30) days prior to the Opt-Out and Objection deadline, Plaintiff must file papers in support of Class Counsel's application for attorneys' fees and expenses and the service award to Plaintiff.  No later than _____, 2016, which is fourteen (14) days prior to the

Final Approval Hearing, papers in support of final approval of the Telemarketing

Settlement and response to any written objections must be filed.

10.     Settlement Claims Administrator.   Kurtzman Carson Consultants is

hereby appointed as the Claims Administrator and shall be required to perform all

the duties of the Claims Administrator as set forth in the Telemarketing Agreement

and this Order.

11.     Class Notice.  The Court approves the proposed plan for giving notice

to the Telemarketing Settlement Class directly (using e-mail and post cards) and

establishment of a Settlement Website, as more fully described in Plaintiff's

Motion and the Agreement ("Notice Plan").  The Notice Plan, in form, method and

content, complies with the requirements of Rule 23 of the Federal Rules of Civil

Procedure and due process, and constitutes the best notice practicable under the

circumstances.  The Court hereby directs the Parties and the Claims Administrator

to complete all aspects of the Notice Plan no later than _____, 2016

("Notice Deadline").

12.     The Claims Administrator will file with the Court by no later than

_____, 2016, which is fourteen (14) days prior to the Final Approval

Hearing, proof that notice was provided in accordance with the Telemarketing

Agreement and this Order.

6

13.     To the extent any person in the Telemarketing Settlement Class is also a member of the separate class action settlement which American Express, WAM and plaintiffs Jennifer Ossola ("Ossola") and Scott Dolemba ("Dolemba") have entered to resolve the individual and putative class claims asserted by Ossola and Dolemba in the Action relating to debt collection calls by WAM on behalf of American Express (the "Debt Collection Settlement"), that person is not precluded by submitting a claim from participating in the Debt Collection Settlement, including submitting a claim, requesting exclusion or objecting to the Debt Collection Settlement, pursuant to the conditions described in the Settlement Agreement and Release in the Debt Collection Settlement.

14.     <u>Opt-Out and Objection Deadline</u>.  Persons in the Telemarketing Settlement Class who wish to either object to the Telemarketing Settlement or request exclusion from the Telemarketing Settlement Class must do so by _____, 2016, which is sixty (60) calendar days after the Notice Deadline. Persons in the Telemarketing Settlement Class may not both object and opt-out.  If a person both requests to opt-out and objects, the request to opt-out will control.

15.     <u>Exclusion from the Telemarketing Settlement Class</u>.  To request exclusion from the Telemarketing Settlement Class, a person in the Telemarketing Settlement Class must follow the directions in the Class Notice and send a

compliant request to the Claims Administrator at the address designated in the Class Notice by the Opt-Out and Objection Deadline.  Exclusion requests must:  (i) be personally signed by the person in the Telemarketing Settlement Class who is requesting exclusion; (ii) include the full name and address of the person in the Telemarketing Settlement Class requesting exclusion; and (iii) include the following statement:  "I/we request to be excluded from the Telemarketing Settlement in the <u>Ossola</u> action."  No request for exclusion will be valid unless all of the foregoing information is included.  No person in the Telemarketing Settlement Class, or any person acting on behalf of or in concert or participation with that person in the Telemarketing Settlement Class, may exclude any other person or any group of persons from the Telemarketing Settlement Class.

16.     The Claims Administrator will retain a copy of all requests for exclusion.  Not later than fourteen (14) days before the Final Approval Hearing, the Claims Administrator will file under seal with the Court a declaration that lists all of the exclusion requests received.

17.     If a timely and valid exclusion request is made by a person in the Settlement Class, then the Telemarketing Agreement and any determinations and judgments concerning the Telemarketing Settlement will not bind the excluded person.

8

18.     All Telemarketing Settlement Class Members will be bound by all determinations and judgments concerning the Telemarketing Settlement.

19.     <u>Objections to the Telemarketing Settlement</u>.  To object to the Telemarketing Settlement, Telemarketing Settlement Class Members must follow the directions below and in the Class Notice and file a written objection with the Court by the Opt-Out and Objection Deadline.  Telemarketing Settlement Class Members also must mail the objection by the Opt-Out and Objection Deadline to each of the following:  (i) Class Counsel –Lieff Cabraser Heimann & Bernstein, LLP, Daniel M. Hutchinson, 275 Battery Street, 29th Floor, San Francisco, CA 94111; and (ii) American Express's Counsel – Julia B. Strickland, Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067.  In connection with an objection, the Telemarketing Settlement Class Member must: (a) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Telemarketing Settlement Class Member, including providing the cellular telephone number called; (b) include a statement of such Telemarketing Settlement Class Member's specific objections; (c) state the grounds for objection, as well as identify any documents which such objector desires the Court to consider; and (d) if the Telemarketing Settlement Class Member is represented by an attorney, list all other cases in which the

9

Telemarketing Class Member has filed an objection. The Court will not consider an objection unless the objection includes all of the foregoing information.

20.     Any Telemarketing Settlement Class Member who fails to comply with Paragraph 19 will not be permitted to object to the Telemarketing Settlement at the Final Approval Hearing, will be foreclosed from seeking any review of the Telemarketing Settlement by appeal or other means, will be deemed to have waived his, her or its objections, and will be forever barred from making any objections in the Action or any other related action or proceeding. All Telemarketing Settlement Class Members will be bound by all determinations and judgments in the Action, whether favorable or unfavorable to the Telemarketing Settlement Class.

21.     For any objection filed, the Clerk of the Court is ordered to redact any social security number, the street address, telephone number and last name except first letter of last name in order to protect the objector's privacy. The objector's first name and city, state and zip code, as well as the objection, will not be redacted.

22.     If for any reason whatsoever this Telemarketing Settlement is not finalized or the Telemarketing Settlement as detailed in the Telemarketing Agreement is not finally approved by the Court, the certification of the

Telemarketing Settlement Class shall be void and the Parties and the Action will return to the status quo as it existed prior to the Telemarketing Agreement, and no doctrine of waiver, estoppel or preclusion will be asserted in any proceedings, in response to any motion seeking class certification, any motion seeking to compel arbitration or otherwise asserted at any other stage of the Action or in any other proceeding. No agreements, documents or statements made by or entered into by any Party in connection with the Telemarketing Settlement may be used by Plaintiff, any person in the proposed Telemarketing Settlement Class, American Express or any other person to establish liability, any defense and/or any of the elements of class certification, whether in the Action or in any other proceeding.

23. In the event that the Telemarketing Settlement is not approved, or is terminated, canceled or fails to become effective for any reason, the money remaining in the Telemarketing Settlement Fund (including accrued interest), less expenses and taxes incurred or due and owing and payable from the Settlement Fund in accordance with the Telemarketing Agreement, shall be returned to American Express within 15 days of the event that causes the Telemarketing Agreement to not become effective.

24. <u>No Admission of Liability</u>. The Telemarketing Agreement and any and all negotiations, documents, and discussions associated with it, will not be

deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation or principle of common law or equity, or of any liability or wrongdoing by American Express, or the truth of any of the claims. Evidence relating to the Telemarketing Agreement will not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding, except for purposes of demonstrating, describing, implementing or enforcing the terms and conditions of the Telemarketing Agreement, this Order and the Final Approval Order.

25. <u>Reasonable Procedures to Effectuate the Telemarketing Settlement</u>. Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Telemarketing Settlement that are not materially inconsistent with this Order or the Telemarketing Agreement, including making, without further approval of the Court, minor changes to the form or content of the Class Notice and Claim Form and other exhibits that they jointly agree are reasonable and necessary. The Court reserves the right to approve the Telemarketing Agreement with such modifications, if any, as may be agreed to by the Parties without further notice to persons in the Telemarketing Settlement Class.

26. <u>Schedule of Future Events</u>. Accordingly, the following are the deadlines by which certain events must occur:

12

| | |
|---|---|
| **_____, 2016**<br>[30 days after the date of this Order] | Deadline for notice to be provided in accordance with the Agreement and this Order (Notice Deadline) |
| **_____, 2016**<br>[30 days after the Notice Deadline] | Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Costs and Service Awards |
| **_____, 2016**<br>[60 days after the Notice Deadline] | Deadline to file objections or submit requests for exclusion (Opt-Out and Objection Deadline) |
| **_____, 2016**<br>[90 days after the Notice Deadline] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| **_____, 2016**<br>[14 days prior to Final Approval Hearing ] | Deadline for Parties to file the following:<br>(1) List of persons who made timely and proper requests for exclusion (under seal);<br>(2) Proof of Class Notice; and<br>(3) Motion and memorandum in support of final approval, including responses to any objections. |
| **____, 2016 at .m.**<br>[No earlier than 135 days from the entry of this Order] | Final Approval Hearing |

IT IS SO ORDERED.

Dated:_____          _____
                                        Hon. John Z. Lee
                                        United States District Judge

13

**EXHIBIT 6**

**FINAL APPROVAL ORDER**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER OSSOLA, JOETTA CALLENTINE and SCOTT DOLEMBA, on behalf of themselves and all others similarly situated, | ) ) ) ) | Case No. 1:13-cv-04836 |
| | ) ) | |
| Plaintiffs, | ) ) | **[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL** |
| vs. | ) ) | |
| AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS CENTURION BANK, and WEST ASSET MANAGEMENT, INC., | ) ) ) ) ) | |
| Defendant. | ) ) ) ) | |

The Court having held a Final Approval Hearing on *** -.m., notice of the Final Approval Hearing having been duly given in accordance with this Court's Order (1) Conditionally Certifying A Telemarketing Settlement, (2) Preliminarily Approving Class Action Telemarketing Settlement, (3) Approving Telemarketing Settlement Notice Plan, and (4) Setting Final Approval Hearing for Telemarketing Settlement ("Preliminary Approval Order"), and having considered all matters submitted to it at the Final Approval Hearing and otherwise, and finding no just

reason for delay in entry of this Final Judgment and good cause appearing therefore,

It is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.      The Telemarketing Settlement Agreement and Release, including its exhibits, fully executed on June _____, 2016 (the "Telemarketing Agreement"), and the definitions contained therein are incorporated by reference in this Order.  The terms of this Court's Preliminary Approval Order (Dkt. No. ***) are also incorporated by reference in this Order.

2.      This Court has jurisdiction over the subject matter of this Action and over the Parties pursuant to 28 U.S.C. § 1332, including all members of the Telemarketing Settlement Class certified for settlement purposes in this Court's Preliminary Approval Order.

3.      The Telemarketing Settlement Class means all persons nationwide within the United States who, on or after July 3, 2009 through March 15, 2016, received a telemarketing call from Alorica Inc. (or its agents or affiliates) on behalf of American Express, in connection with the marketing of American Express small business charge and/or credit cards to potential customers, to a cellular telephone number through the use of an automatic telephone dialing system, predictive dialer and/or an artificial or prerecorded voice.  Excluded from the Telemarketing

2

Settlement Class are the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family, as well as all persons who are validly excluded from the Telemarketing Settlement Class. All Persons who validly excluded themselves from the Telemarketing Settlement Class are not Telemarketing Settlement Class Members as that term is defined and used herein, and shall not be bound by this Final Approval Order or any release provided herein. A list identifying all Persons who validly excluded themselves from the Telemarketing Settlement Class has been filed under seal with the Court (see Dkt. No. ___).

4.     The Court has considered and hereby overrules all objections to the Telemarketing Settlement. After consideration of all relevant factors, the Court finds that none of them is well-founded and that the Telemarketing Settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

5.     The Court hereby finds that the Telemarketing Agreement is the product of arm's-length settlement negotiations between Plaintiff and Class Counsel, on the one hand, and American Express and its respective counsel on the other hand.

6.     The Court hereby finds and concludes that Class Notice was disseminated to members of the Telemarketing Settlement Class in accordance

3

with the terms set forth in Section III.E of the Telemarketing Agreement and this Court's Preliminary Approval Order (Dkt. No. ***).

7.      The Court hereby finds and concludes that the Notice Program and claims submission procedures fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, and constitute the best notice practicable under the circumstances.  The Court further finds that the Notice Program provided individual notice to all members of the Telemarketing Settlement Class who could be identified through reasonable effort and supports the Court's exercise of jurisdiction over the Telemarketing Settlement Class as contemplated in the Telemarketing Settlement and this Order.

8.      This Court hereby finds and concludes that the notice provided by American Express pursuant to 28 U.S.C. § 1715 fully satisfied the requirements of that statute.

9.      The Court finds that the Telemarketing Settlement's terms constitute, in all respects, a fair, reasonable, and adequate settlement as to all Telemarketing Settlement Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure, and directs its consummation pursuant to its terms and conditions. Plaintiff, in her role as Class Representative, and Class Counsel adequately represented the Telemarketing Settlement Class for purposes of entering into and

4

implementing the Telemarketing Agreement. Accordingly, the Telemarketing Agreement is hereby finally approved in all respects, and the Parties are hereby directed to perform its terms. The Parties and Telemarketing Settlement Class Members who were not excluded from the Telemarketing Settlement Class are bound by the terms and conditions of the Telemarketing Agreement.

10. The Court hereby finds that the Settlement Class Members have been adequately represented by Class Counsel. The Court specifically approves Class Counsel's application for attorneys' fees and costs of $_____, which the Court finds to be fair and reasonable. Accordingly, Class Counsel is hereby awarded $_____, such amounts to be paid from the Telemarketing Settlement Fund pursuant to and in the manner provided by the terms of the Telemarketing Agreement.

11. The Court finds the payment of a service award in the amount of $10,000 to the Telemarketing Settlement Class Representative Joetta Callentine to be fair and reasonable. Accordingly, the Telemarketing Settlement Class Representative is hereby awarded $10,000, such amounts to be paid from the Telemarketing Settlement Fund pursuant to and in the manner provided by the terms of the Telemarketing Agreement.

5

12.     The Telemarketing Settlement Class described in paragraph 3 above is hereby finally certified, solely for purposes of effectuating the Telemarketing Settlement and this Order and Final Judgment.

13.     The requirements of Rule 23(a) and (b)(3) have been satisfied for settlement purposes, for the reasons set forth herein.  The Telemarketing Settlement Class is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the class; the claims of the Class Representative are typical of the claims of the Telemarketing Settlement Class; the Class Representative will fairly and adequately protect the interests of the class; the questions of law or fact common to class members predominate over any questions affecting only individual members; and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy between the Telemarketing Settlement Class Members and American Express.

14.     This Court hereby dismisses, with prejudice, without costs to any party, except as expressly provided for in the Agreement, this Action.

15.     The Claims Administrator is directed to distribute the consideration to the Telemarketing Settlement Class pursuant to the terms of the Telemarketing Agreement.

6

LA 51998050

16.     Plaintiff and each and every one of the Telemarketing Settlement Class Members unconditionally, fully, and finally release and forever discharge the Released Parties from the Released Claims as provided for in the Telemarketing Agreement.  In addition, any rights of the Telemarketing Settlement Class Representatives and each and every one of the Telemarketing Settlement Class Members to the protections afforded under Section 1542 of the California Civil Code and/or any other similar, comparable, or equivalent laws, are terminated.

17.     Each and every Telemarketing Settlement Class Member, and any person actually or purportedly acting on behalf of any Telemarketing Settlement Class Member(s), is hereby permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral, or other forum, against the Released Parties.  This permanent bar and injunction is necessary to protect and effectuate the Telemarketing Agreement, this Final Judgment and Order of Dismissal, and this Court's authority to effectuate the Telemarketing Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

LA 51998050

18.     The Telemarketing Agreement (including, without limitation, its exhibits), and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation, or principle of common law or equity, of any liability or wrongdoing, by American Express, or of the truth of any of the claims asserted by Plaintiff, and evidence relating to the Telemarketing Agreement shall not be discoverable or used, directly or indirectly, in any way, whether in this Action or in any other action or proceeding, except for purposes of enforcing the terms and conditions of the Telemarketing Agreement, the Preliminary Approval Order, and/or this Order.

19.     In the event that any provision of the Telemarketing Settlement or this Final Judgment and Order of Dismissal is asserted by American Express or Alorica as a defense in whole or in part to any claim, or otherwise asserted (including, without limitation, as a basis for a stay) in any other suit, action, or proceeding brought by a Telemarketing Settlement Class Member or any person actually or purportedly acting on behalf of any Telemarketing Settlement Class Member(s), that suit, action or other proceeding shall be immediately stayed and enjoined until this Court or the court or tribunal in which the claim is pending has determined any issues related to such defense or assertion.  Solely for purposes of such suit, action, or other proceeding, to the fullest extent they may effectively do so under

8

applicable law, the Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court, or that the Court is, in any way, an improper venue or an inconvenient forum. These provisions are necessary to protect the Telemarketing Agreement, this Order and this Court's authority to effectuate the Telemarketing Settlement, and are ordered in aid of this Court's jurisdiction and to protect its judgment.

20.    By incorporating the Telemarketing Agreement and its terms herein, the Court determines that this Final Judgment complies in all respects with Federal Rule of Civil Procedure 65(d)(1).

21.    Finding that there is no just reason for delay, the Court orders that this Final Judgment and Order of Dismissal shall constitute a final judgment pursuant to Rule 54 of the Federal Rules of Civil Procedure. The Court orders that, upon the Effective Date, the Telemarketing Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiff and each and every Telemarketing Settlement Class Member. The Clerk of the Court is directed to enter this Order on the docket forthwith.

22.    If an appeal, writ proceeding or other challenge is filed as to this Final Approval Order, and if thereafter the Final Approval Order is not ultimately

9

upheld, all orders entered, stipulations made and releases delivered in connection herewith, or in the Telemarketing Settlement or in connection therewith, shall be null and void to the extent provided by and in accordance with the Telemarketing Settlement.

23.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Telemarketing Settlement.

        IT IS SO ORDERED.


Dated:_____          _____
                                     Hon. John Z. Lee
                                     United States District Judge