**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER OSSOLA, JOETTA CALLENTINE and SCOTT DOLEMBA, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | Case No. 1:13-cv-04836 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS CENTURION BANK, AND WEST ASSET MANAGEMENT, INC. | ) ) ) ) | Hon. Judge John Z. Lee Hon. Mag. Judge Jeffrey Cole |
| Defendants. | ) | |

<u>**PLAINTIFFS OSSOLA AND DOLEMBA'S MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**</u>

## TABLE OF CONTENTS

Contents

I.    INTRODUCTION ........................................................................................................ 1

II.    STATEMENT OF THE FACTS .................................................................................. 3

   A.    Procedural Background ......................................................................... 3

   B.    Discovery ............................................................................................. 5

   C.    The Parties' Mediation ........................................................................ 5

   D.    The Proposed Settlement...................................................................... 6

       1.    The Debt Collection Settlement Class.................................... 6

       2.    Monetary Relief for Debt Collection Settlement Class Members ............................. 7

       3.    *Cy Pres* Distributions............................................................ 8

       4.    Debt Collection Settlement Class Release.............................. 8

       5.    Class Representative Service Award ...................................... 9

       6.    Attorneys' Fees and Costs ..................................................... 9

       7.    Administration and Notice..................................................... 9

III.    FINAL APPROVAL IS WARRANTED................................................................... 10

   A.    The Settlement Approval Process ....................................................... 10

   B.    The Debt Collection Settlement is Fair, Reasonable, and Adequate, and Should be Approved........................................................................................... 12

       1.    The Monetary Amount Offered in Settlement........................ 13

       2.    The Strength of Plaintiffs' Case ............................................ 15

       3.    Continued Litigation is Likely to be Complex, Lengthy, and Expensive .................. 17

       4.    The Class Response Is Positive ............................................. 18

       5.    Class Counsel Strongly Endorse the Settlement.................... 18

       6.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Final Approval ...................................................................... 19

IV.    CONCLUSION........................................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**

*Agne v. Papa John's International Inc. et al*
  2:10-cv-01139 (D. Wa.) ................................................................ 7

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
  No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ................... 17

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
  616 F.2d 305 (7th Cir. 1980) .................................................. 11, 12, 14

*Boggess v. Hogan*
  410 F. Supp. 433, 438 (N.D. Ill. 1975) ............................................. 10

*Chapman v. First Index, Inc.,*
  No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556 (N.D. Ill. March 4, 2014) ................ 16

Connor v. JPMorgan Chase Bank, N.A.
  No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015) ................................... 14

*Felzen v. Andreas,*
  134 F.3d 873 (7th Cir. 1998) ....................................................... 11

*G.M. Sign, Inc. v. Brinks Manufacturing Co.,*
  No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084 (N.D. Ill. March 4, 2014) ................. 16

*Goldsmith v. Technology Solutions Co.*
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, (N.D. Ill. Oct. 10, 1995) ............... 10

*In re AT&T Mobility Wireless Data Servs. Sales Litig.,*
  270 F.R.D. 330 (N.D. Ill. 2010) .................................................... 13

*In re Mexico Money Transfer Litig.,*
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) .............................................. 19

*Isby v. Bayh,*
  75 F.3d 1191 (7th Cir. 1996) ................................................... 11, 12

*Kolnek v. Walgreen Co.*
  311 F.R.D. 483 (N.D. Ill. 2015) ..................................................... 7

*Kramer v. Autobytel,*
  No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ............. 14

*Malta v. Fed. Home Loan Mortg. Corp.,*
  No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) ................ 14

*McKinnie v. JP Morgan Chase Bank, N.A.,*
  678 F. Supp. 2d 806 (E.D. Wis. 2009) ............................................... 18

*North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.*
  1:13-cv-06897 (N.D. Ill.) ........................................................... 7

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.*
  1:13-cv-03105 (N.D. Ill.) ........................................................... 7

*Phillips Randolph Enters., LLC v. Rice Fields,*
  No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007) ................. 17

*Savanna Group, Inc. v. Trynex, Inc.,*
  No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277 (N.D. Ill. Jan. 4, 2013) ................. 16

*Schulte v. Fifth Third Bank,*
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................... 17

*Spillman v. RPM Pizza, LLC*
  2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ................................. 7

*Steinfeld v. Discover Fin. Svcs.*
 12-cv-01118 (N.D. Cal.) ................................................................ 14
*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
 463 F.3d 646 (7th Cir. 2006) ........................................................ 13
*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*
 1:12-cv-00780, (N.D. Ill) ............................................................... 7

**Other Authorities**

Fed. R. Civ. P. 23(e)(2) ...................................................................... 12
H. Newberg, A. Conte, Newberg on Class Actions (4th ed. 2002) .................................. 10, 11, 12
*In re Rules Implementing the Tel. Consumer Prot. Act of 1991* 23 FCC Rcd 559 ....................... 15
*Manual for Complex Litigation* (Fourth) (2004) ........................................ 11

I.     **INTRODUCTION**

Plaintiffs Jennifer Ossola and Scott Dolemba (collectively, "Plaintiffs") respectfully move the Court for final approval of the nationwide class action settlement (the "Debt Collection Settlement"), which is attached hereto as Exhibit 1, reached between Plaintiffs and Defendants American Express Company and American Express Centurion Bank (collectively, "American Express") and West Asset Management, Inc. ("WAM") (together with American Express, "Defendants"). The proposed Debt Collection Settlement would resolve all Debt Collection claims in the above-entitled action.[1] Plaintiffs allege that American Express violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by having WAM place debt collection calls to cellular telephones through the use of an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of Plaintiffs and Class members.

Under the Debt Collection Settlement Agreement, American Express is required to pay $1,000,000 into a settlement fund ("Fund") for a class consisting of approximately 3,219 persons based upon unique cellular telephone numbers. Eligible Debt Collection Settlement Class Members who file timely and valid claims will receive a pro rata cash payment from this Fund. Not a single penny of the Fund will ever revert back to Defendants.

This action involves sharply opposing positions on many issues, including three critical ones. First, the parties disagreed whether, going forward, the Federal Communications

---

[1] Plaintiff Joetta Callentine and American Express have entered into a separate class action settlement (the "Telemarketing Settlement") to resolve the individual and putative class claims asserted by Plaintiff Callentine in the action relating to telemarketing calls by Alorica Inc. on behalf of American Express. Plaintiff Callentine is concurrently moving for final approval of the Telemarketing Settlement. Together, the Telemarketing and Debt Collection Settlements will resolve all claims asserted in the action against all defendants.

Commission (the "FCC") rulings as to the definition of an "automatic telephone dialing system" ("autodialer") under the TCPA will be upheld by the D.C. Circuit.

Second, the parties disagreed whether the claims of certain Debt Collection Class Members are subject to arbitration agreements that American Express maintains would extinguish Debt Collection Class Members' ability to pursue their TCPA claims outside of the arbitration process.

Finally, the parties also disagreed as to whether a class can be certified because of what American Express and WAM maintain are inherently individual issues among Debt Collection Settlement Class Members. Despite these disagreements, the parties were able to reach a settlement after several years of hard-fought litigation and a robust mediation before the Honorable Morton Denlow (Ret.) of JAMS and subsequent settlement discussions.

On July 6, 2016, the Court granted preliminary approval of the Settlement. Dkt. No. 358. Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated to 1329 Class Members.  *See* Declaration of Declaration of Eric Robin re: Notice Procedures, ¶ 3-4, Exhibit 2 ("Robin DC Decl.").  A state-of-the-art, user-friendly claims process allowed Class members to file claims through a simple claim form, an internet website, or a toll-free phone number. Robin DC Decl. ¶ 6-7.  To date 135 persons have submitted claim forms, no one has asked to be excluded, and there have been no objections filed to the settlement. *Id.* at ¶¶ 8-10. Plaintiffs respectfully submit that the lack of objectors and no exclusions speak to the effectiveness of the notice plan, and the ease and efficiency of the claims administration plan negotiated by Class counsel.

The overwhelmingly positive reaction from Class Members also underscores the value the Class places on the obtained Settlement.  Defendant will pay the total sum of $1,000,000 into a

non-reversionary cash fund out of which claiming Class Members will be paid. Upon final approval, the net proceeds of the Settlement Fund will be distributed pro rata to every claimant; no money will revert back to Defendant. Plaintiffs respectfully submit that is a great result for the Class, particularly in view of the risks and delays involved in litigating the substantive merits of these claims, and the difficulties inherent in pursuing these claims individually for the overwhelming majority of Class Members.

For the foregoing reasons, and as detailed below, the Settlement meets the standards for final approval, and should therefore be approved.

## II.    STATEMENT OF THE FACTS

### A.    Procedural Background

On October 25, 2013, Plaintiffs filed an amended class action complaint against WAM, American Express Company and American Express Centurion Bank. Dkt. No. 34. Plaintiffs alleged that American Express, or agents working on behalf of American Express, made calls using an automatic telephone dialing system to their cell phones. Dkt. No. 34, ¶ 20 and ¶22. On December 17, 2013, the Court entered an Order consolidating cases 13-cv-4836 and 13-cv-5278, and ordering a Consolidated Complaint to be filed by January 24, 2014. Dkt. No. 70. On January 24, 2014, Plaintiffs filed a Consolidated Class Action Complaint. Dkt. No. 71.

On February 14, 2014, American Express filed its Answer and Affirmative Defenses to the Consolidated Class Action Complaint. Dkt. No. 81. Therein, American Express denied that it placed any telephone calls to Ossola or Dolemba. Dkt. No. 81. American Express also put forth defenses including that it had consent for any calls that were placed to the named Plaintiffs and members of the putative class, a constitutional challenge that TCPA damages violate the due

process clause, and a defense that any person purportedly in the Debt Collection Settlement Class is subject to a binding arbitration agreement.  Dkt No. 81, p. 24-25

On June 10, 2014 Plaintiffs filed an Amended Consolidated Class Action Complaint. Dkt. No. 126.On July 8, 2014, American Express filed a motion to Compel Arbitration of Plaintiff Callentine. Dkt. No. 138. This motion was denied on February 6, 2015. Dkt. No. 238. On July 8, 2014, American Express filed a motion to Strike the Class Allegations in the Consolidated Complaint. Dkt. No. 140. This motion was denied on February 20, 2015. Dkt. No. 249. On July 8, 2014, American Express filed a Motion for Partial Summary Judgment. Dkt. No. 142. This motion was denied on February 20, 2015. Dkt. No. 245. On March 24, 2015, Defendant West Asset Management filed a Motion to Stay on Primary Jurisdictional grounds pending a decision from the Federal Communications Commission. Dkt. No. 274. American Express joined in this motion on April 1, 2015. Dkt. No. 280. This motion was denied on May 12, 2015. Dkt. No. 286. On October 2, 2015, American Express filed a Motion to Stay pending the outcome of an appeal of the Federal Communication Commission's July 2015 Declaratory Ruling and Order. Dkt. No. 310. This motion was denied on December 15, 2015. Dkt. No. 330.

On July 6, 2016, the Court granted preliminary approval to the Debt Collection Settlement, conditionally certified the Debt Collection Settlement Class, approved the notice plan, set a final approval date, and appointed Plaintiffs' Attorneys as Class Counsel. Dkt. No. 358.  In doing so, the Court directed the issuance of notice to the Class Members to apprise them of the Debt Collection Settlement, its terms, and their rights in response to it.  That notice was sent, the Class Members responded to the Debt Collection Settlement, and now the Parties present the Debt Collection Settlement for the Court's final approval.

**B.**   **Discovery**

The Parties engaged in extensive discovery and conducted numerous discovery hearings before Judge Cole. *See* Dkt. Nos. 93, 113, 118, 122, 125, 166, 167, 195, 219, 222, 227, 235, 262/263, 267, 277, 283, 285, 288, 292, 294, 296, 304/305, 329/331. In addition, Plaintiffs filed three separate motions to compel production of discovery from American Express. Dkt. Nos. 85, 161, and 290.

Throughout the discovery process, Counsel held numerous discovery conferences with American Express's counsel related to discovery and other issues, as well as with WAM's counsel; many of the conferences with WAM are reflected in Judge Cole's discovery orders. The discussions were thorough and, at many points, contentious, as the parties addressed all facets of discovery as well as their respective views on class certification and Plaintiffs' class TCPA claims.[2]

**C.**   **The Parties' Mediation**

On April 14, 2016, the parties participated in an in-person mediation session before the Honorable Morton Denlow (Ret.) of JAMS.[3] Prior to the mediation, all parties submitted detailed mediation briefs to Judge Denlow, setting forth their respective views on the strengths of their cases.[4] At mediation, the parties discussed their relative views of the law and the facts and

---

[2] *See* Dkt. No. 354, Declarations of Keith J. Keogh ("*Keogh Decl.*") attached as Exhibit 2, ¶ 2, Daniel M. Hutchinson ("*Hutchison Decl.*") attached as Exhibit 3 ¶ 2, Alexander H. Burke ("*Burke Decl.*") attached as Exhibit 4, ¶ 10, and Declaration of Matthew Wilson ("*Wilson Decl.*") attached as Exhibit 5, ¶ 7.

[3] *Keogh Decl.* ¶ 23.

[4] *Id.*

potential relief for the proposed Class.[5] Although the parties negotiated the both settlements during the same mediation, the negotiations were kept separate. *Id.*

Counsel exchanged counterproposals on key aspects of the Debt Collection Settlement. At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length.[6] Although the parties reached an agreement in principle, it was not until months later and as a result of an additional mediator's recommendation from Judge Denlow on June 22, 2016, that this settlement was finalized.[7]

**D.    The Proposed Settlement**

The Settlement's details are contained in the Agreement signed by the parties, a copy of which is attached as Exhibit 1. The following summarizes the Agreement's terms:

**1.    The Debt Collection Settlement Class**

The Debt Collection Settlement Class is defined as follows:

All persons nationwide within the United States  who, on or after July 3, 2009 through December 31, 2013, received a call from West Asset Management, Inc. (or its agent or affiliate) in reference to a debt owed to American Express, to any of the 3,219 cellular telephone numbers on the Class List through the use of equipment alleged to be an automatic telephone dialing system, a predictive dialer and/or an artificial or prerecorded voice, where (i) the call was made in connection with the account of a "deceased customer" and/or (ii) the person called did not have a contractual relationship with American Express.

Debt Collection Agreement § II.A.17.[8]

---

[5] *Id.*

[6] *Id.* ¶ 5.

[7] *Id.* ¶ 4.

[8] Excluded from the Debt Collection Settlement Class are the Judge to whom the Actions are assigned and any member of the Judge's staff and immediate family, as well as all persons who are validly excluded from the Settlement Class. *Id.*

## 2.  Monetary Relief for Debt Collection Settlement Class Members

The Debt Collection Settlement requires American Express to create a non-reversionary Debt Collection Settlement Fund of $1,000,000.  Agreement § III.C.1.  Out of this Fund, eligible Debt Collection Settlement Class Members who file a timely and valid claim will receive a Cash Award in the form of a cash payment.  *Id.* § III.F.1.  The amount of each Debt Collection Settlement Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims.  *Id.* §§ III.F.1; II.F.2.  No amount of the Debt Collection Settlement Fund will revert to Defendant.  *Id.* § III.G.3.  Based on the number of claimants, Class Counsel estimates that each claimant will be paid approximately $4,461 after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration. There were 19 deficient claims, and the Claims Administrator sent out deficiency letters. If the deficiency letters are not responded to in time, the claim rate will go down but the rate will still be above the approvable rates found in other cases and claimants will receive a higher monetary benefit. [9]

Checks for Cash Awards will be mailed within 30 days of the Effective Date,[10] and will be valid for 180 days from the date of the check.  § III.G.1.  If, after the expiration date of the

---

[9] The claim rate of 4.1% is consistent with other class action settlements under the TCPA, many of which have claim rates of less than 1%. *See Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) (finally approving TCPA Settlement and finding claim rate .07% to be "consistent with other TCPA class action settlements"); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.,* 1:13-cv-03105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.,* 1:13-cv-06897 (N.D. Ill.) (.53% of the class made claims);*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, 1:12-cv-00780, (N.D. Ill) (1.97 % of the class made claims); *Agne v. Papa John's International Inc. et al*, 2:10-cv-01139 (D. Wa.) (1.52% of the class made claims); *Kolnek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (final approval where claim rate was 2.5% of the class).

[10] The Effective Date is the fifth business day after 1) the execution of the agreement; 2) the Court enters the Final Approval Order, without material change; 3) the Telemarketing Settlement has been finally

settlement payment checks to Debt Collection Settlement Class Members, there remains money in the Debt Collection Settlement Fund in an amount that exceeds $10,000, a Second Distribution shall be made to each Debt Collection Settlement Class Member who cashed his or her original check, on a pro-rata basis. *Id.* § III.G.2.

### 3. *Cy Pres* **Distributions**

Money in the Debt Collection Settlement Fund that remains undistributed after redistribution, including money not distributed because there is not enough to justify a redistribution (which will be less than $10,000 in any case), will be distributed *cy pres* to the Electronic Frontier Foundation. (Dkt. No. 361). Accordingly, no amount of the Debt Collection Settlement Fund will revert to Defendants. *Id.* § III.G.3.

### 4. **Debt Collection Settlement Class Release**

In exchange for the benefits allowed under the Debt Collection Settlement, Debt Collection Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims that "arise out of or are related in any way to the actual or alleged use by WAM, or its agents or affiliates, of an artificial or prerecorded voice and/or of any automatic telephone dialing system and/or predictive dialer (to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., relevant regulatory or administrative promulgations and case law) to make calls in reference to an American Express account." *Id.* § III.H.

---

approved; and 4) final disposition of any related appeals, including without limitation appeals of persons who have objected to the Debt Collection Settlement and/or Telemarketing Settlement, and in the case of no appeal or review being filed, expiration of the applicable appellate period. Agreement § II.A.19.

### 5.    Class Representative Service Award

The Debt Collection Settlement Agreement provides that Plaintiffs may petition the Court for a service award, and American Express has agreed not to object so long as the award sought does not exceed $5,000 each. *Id.* § III.J.  The Service Award shall be paid out of the Debt Collection Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the Service Award is a condition of the Debt Collection Settlement. *Id.*  In light of the fact that Plaintiffs were not customers of American Express, that they passed on individual offers to settle, that they were deposed and fully cooperated and participated in this litigation, Ossola and Dolemba request an incentive award of $5,000 each.  The Class Notice advised the Debt Collection Settlement Class of Plaintiffs' request.

### 6.    Attorneys' Fees and Costs

On September 2, 2016 Class Counsel filed with the Court Plaintiffs' Motion and Memorandum in Support of Attorneys' Fees, Costs and Service Award with Respect to Debt Collection Settlement. (Dkt. No. 365). Plaintiffs respectfully request that the Court approve attorneys' fees of $333,333.33 and costs of $19,380.19, as well as a service award of $5,000 each to Plaintiffs Ossola and Dolemba.

### 7.    Administration and Notice

All costs of notice and claims administration were advanced by American Express, and credited against the Debt Collection Settlement Fund. *Id.* § III.C.1.  Pursuant to the Preliminary Approval Order, the Claims Administrator, Kurtzman Carson Consultants ("KCC") (1) issued Class Notice and claim forms; (2) set up and maintained the settlement website; (3) accepted and processed claim forms; (4) will issue and distribute settlement payments (if the settlement is granted final approval).  §§ II.A.10; III.D; III.E.1; III.E.2.  Pursuant to the agreement, WAM

9

provided KCC the list of telephone numbers it identified for KCC to perform a reverse look up to identify possible Debt Collection Settlement Class Members. Robin DC Decl. ¶3. Defendants were responsible for timely compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(b) and it completed sending CAFA notices on July 8, 2016. No governmental entity has objected to the settlement.

Further, the Claims Administrator on August 3, 2016 established and maintained a Settlement Website – www.TCPADebtCollectionSettlement.com. Robin DC Decl. ¶ 3. The Settlement Website provides for online submission of claims and also includes general information such as the Debt Collection Settlement Agreement; Website Notice; the Preliminary Approval Order; Claim Form for anyone wanting to print a hard copy of and mail in the Claim Form; and the operative Complaint. *Id.* ¶7. The Claims Administrator also maintained an 800 number that allowed Class Members to make a claim via their telephone by using a claim id that was included in the notice. *Id.* ¶ 6.

## III.     FINAL APPROVAL IS WARRANTED

### A.     The Settlement Approval Process

Under Fed. R. Civ. P. 23(e)(2), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and adequate." There is a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experiences." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. Thus, the Debt Collection Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

11

> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

The first two steps in this process have occurred. With this motion, Plaintiffs respectfully request that the Court take the third and final step in the process and grant the final approval of the Debt Collection Settlement.

### B.   The Debt Collection Settlement is Fair, Reasonable, and Adequate, and Should be Approved

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a settlement is ultimately fair, reasonable and adequate at the final approval stage, courts in this Circuit consider the following factors:

> (1) the strength of plaintiff's case compared to the terms of the proposed settlement;
>
> (2) the likely complexity, length, and expense of continued litigation;
>
> (3) the amount of opposition to settlement among affected parties;
>
> (4) the opinion of competent counsel; and
>
> (5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Isby*, 75 F.3d at 1199. In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Armstrong*, 616 F.2d at 315).

### 1.    The Monetary Amount Offered in Settlement

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

The Debt Collection Settlement requires American Express to pay $1,000,000 into the Debt Collection Settlement Fund. Out of this fund, all eligible Debt Collection Settlement Class Members to make a valid and timely claim will receive their *pro rata* share of cash payments. Agreement § III.F.1; III.F.2. The Debt Collection Settlement Fund is non-reversionary, ensuring that nearly all monetary benefits will go to Debt Collection Settlement Class Members—none of the Debt Collection Settlement Fund will return to American Express. The Debt Collection Settlement Fund created by the Debt Collection Settlement is better than many similar TCPA settlements

Class Counsel acknowledge that the $1,000,000 Fund does not constitute the full measure of statutory damages potentially available to the Debt Collection Settlement Class. This fact, however, should not weigh against final approval. "Because settlement of a class action, like

13

settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Debt Collection Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after extensive arm's-length negotiations presided by an experienced mediator and former judge. Further, the Debt Collection Settlement compares favorably to other TCPA class actions settlements. Courts have approved other TCPA class action settlements involving similarly large putative classes that achieved much smaller *pro rata* monetary recoveries.[11]

Indeed, courts have found TCPA class action settlements that provided much less to each class member to meet the standards for preliminary approval and, as well as final approval. *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015)[12] (entering final approval of settlement providing $11,268,058 to slightly fewer than 2.5 million accounts ); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each class member would be awarded $39.66) (Holderman, J.); and

---

[11] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

[12] *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS, Final Judgment and Order of Dismissal, Dkt. No. 160 (S.D. Cal. Feb. 5, 2015).

*Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) (granting final approval of $46.98 to each claimant).

Moreover, the Debt Collection Settlement provides Debt Collection Settlement Class Members with substantial monetary relief, despite the fact that this is a purely statutory damages case in which Class Members incurred nominal economic damages or whose actual damages (such as to the invasion of their privacy) are difficult or impossible to quantify. For all of the above reasons, the monetary amount recovered through the Settlement—on par with TCPA settlements found to be fair, adequate, and reasonable—is a great result for the Class.

### 2. The Strength of Plaintiffs' Case

Plaintiffs continue to believe that their claims against Defendants have merit and that they would make a compelling case if their claims were tried. Nevertheless, Plaintiffs concede that if litigation were to continue, they, along with members of the Debt Collection Settlement Class, would face a number of difficult challenges carrying the potential to result in diminished relief for the Class, or no relief at all.

American Express and WAM maintain, based on information produced by WAM, the automatic telephone dialing system used by WAM during the Class Period does not qualify as an ATDS under the TCPA and, therefore, none of the calls at issue violate the TCPA. American Express further maintains that that certain individuals within the class are American Express customers who are bound by arbitration agreements. American Express maintains that such agreements extinguish these individuals' ability to pursue their TCPA claims outside of the arbitration process.

15

In 2015, the FCC issued an order that provided a fairly broad view of what constitutes an ATDS. *In re Rules Implementing the Tel. Consumer Prot. Act of 1991* 23 FCC Rcd 559 at 566-67 ("2015 Order"). The 2015 Order is currently on appeal and oral argument took place in October 2015. At this point, it is unclear how the D.C. Circuit will ultimately rule. An adverse ruling was a serious risk that Class Plaintiffs faced if this litigation continued.

The parties also disagree as to whether a class can be certified because of what WAM and American Express maintain are inherently individual issues among Class Members. This includes whether certification would be appropriate in the face of issues relating to arbitration agreements and prior express consent. While Plaintiffs continue to believe that class certification would be achievable, Defendants assert that class certification would be inappropriate due to the question of whether Class Members consented to the calls at issue. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556, at *6-7 (N.D. Ill. March 4, 2014) (citing cases). For example, in *Savanna Group, Inc. v. Trynex, Inc.,* No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277, at *49 (N.D. Ill. Jan. 4, 2013), the court granted class certification and rejected the defendant's argument that questions of consent caused individual issues to predominate, noting that the defendant had not offered evidence tending to show that any particular class member consented to the faxes at issue, whereas in *G.M. Sign, Inc. v. Brinks Manufacturing Company*, No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084, at *7-10 (N.D. Ill. March 4, 2014), the court declined to certify a class, finding that the defendant offered evidence illustrating that consent could not be shown with common proof. If Defendants were able to present convincing facts to support its

16

position, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiffs to pursue their individual claims.

At least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Finally, there remains a risk of losing a jury trial. And, even if Plaintiffs did prevail at trial, any judgment could be reversed on appeal.

Given these significant hurdles as compared against the settlement amount and comparable TCPA settlements described above that were granted final approval, the strength of this case versus settlement weighs in favor of final approval.

### 3.    Continued Litigation is Likely to be Complex, Lengthy, and Expense

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in significant discovery efforts, continued litigation would involve extensive motion practice, including Plaintiffs' motion for class certification and renewed motions by

17

American Express to compel arbitration and for summary judgment. Any judgment in favor of Debt Collection Settlement Class Members could be further delayed by the appeal process. Instead of facing the uncertainty of a potential award in their favor years from now, the Debt Collection Settlement allows Plaintiffs and Debt Collection Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). This factor weighs in favor of final approval.

### 4. The Class Response Is Positive

Debt Collection Settlement Class Members' response to the Debt Collection Settlement has been overwhelmingly positive. The deadline for Class Members to submit claims was November 01, 2016. 135 persons have submitted claims and not a single person requested to be excluded from the settlement. Robin DC Decl. ¶¶ 8 and 10. Moreover, there were no objections to the Debt Collection Settlement. Robin DC Decl. ¶ 9. These factors therefore favor final approval.

### 5. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiffs strongly endorse this Settlement.[13] Class Counsels' opinion on the Debt Collection Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases)[14]; (2) Class Counsel litigated this case for several years, and in doing so, engaged in formal and informal discovery and exhaustively evaluated the claims[15]; and (3) the

---

[13] *See* Dkt. No. 354, *Keogh Decl.* ¶ 9, *Hutchison Decl.* ¶ 2, *Burke Decl.* ¶ 10, *Wilson Decl.* ¶ 7.

[14] *Keogh Decl.* ¶¶ 15-25, *Hutchison Decl.* ¶¶ 6-7, *Burke Decl.* ¶¶ 3-6, *Wilson Decl.* ¶ 3.

[15] *Keogh Decl.* ¶¶ 2-5.

Debt Collection Settlement was reached at arm's length through negotiations between experienced counsel, after a robust mediation session before an experienced mediator and former judge.[16]  *See McKinnie v. JP Morgan American Express Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").  This factor therefore weighs in favor of final approval.

### 6.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Final Approval

The Debt Collection Settlement was reached after almost three years of litigation and just two months before the close of discovery.  As noted above, discovery has been contentious and robust.  At the time of the settlement, Class Counsel had the information necessary to confirm that the Debt Collection Settlement is fair, reasonable, and adequate.[17]   Accordingly, the final terms of the Debt Collection Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through the exchange of both informal and formal discovery and participated in lengthy arm's length negotiations. This factor also weighs in favor of the final approval.

## IV.    CONCLUSION

This Debt Collection Settlement provides substantial benefits for all Debt Collection Settlement Class Members, it was negotiated at arm's length by experienced counsel after

---

[16] *Id.* ¶¶ 3-4.

[17] *See* Dkt. No. 352, *Keogh Decl.* ¶ 9.

19

mediation, extensive discovery and litigation, it easily falls within the range of possible approval, and there are no objections.  Thus, the Debt Collection Settlement is fair, reasonable and adequate, and Plaintiffs respectfully request that this Court enter an order granting the Debt Collection Settlement final approval.  Prior to the final approval hearing, Plaintiffs' counsel will submit a form of Final Order and Judgment for the Court's consideration.

Dated: November 16, 2016

Respectfully Submitted,

By:   *s/ Keith J. Keogh*

KEOGH LAW, LTD.

KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
Timothy Sostrin
Email: Tsostrin@Keoghlaw.com
Michael S. Hilicki
Email: MHilicki@Keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Phone: 312-265-3258
Fax: 312-726-1093

BURKE LAW OFFICES, LLC
Alexander H. Burke
Email: ABurke@BurkeLawLLC.com
155 N. Michigan Avenue, Suite 9020
Chicago, IL  60601
Telephone:  (312) 729-5288
Facsimile:   (312) 729-5289

SMITHMARCO P.C.,
Larry P. Smith
Email: lsmith@smithmarco.com
David M. Marco
Email: dmarco@smithmarco.com
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
(312) 222-9028
(888) 418-1277(fax)


LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
Jonathan D. Selbin (*pro hac vice*; admitted to the
N.D. Ill. general bar)
Email: jselbin@lchb.com
Douglas I. Cuthbertson (*pro hac vice*; admitted to
the N.D. Ill. general bar)
Email: dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
Daniel M. Hutchinson (*pro hac vice*; admitted to the
N.D. Ill. general bar)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No. 0072925;
admitted to the N.D. Ill. general bar)
Email: mwilson@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiff and the Proposed Class*